IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| FORD MOTOR COMPANY | ) | CASE NO: 2:23-CV-11286 |
| | ) | |
| PLAINTIFF | ) | JUDGE: Hon. Linda V. Parker |
| | ) | |
| | ) | MAGISTRATE JUDGE: Hon. Elizabeth |
| | ) | A. Stafford |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| OF MICHIGAN MUTUAL | ) | |
| INSURANCE CO, et al., | ) | |
| | ) | |
| DEFENDANTS | ) | |

## PLAINTIFF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Ford Motor Co. ("Ford") by and through the undersigned counsel, files this response in opposition to Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss the complaint for failure to state a claim. In support of this opposition, Ford relies upon the authorities and arguments set forth in the incorporated brief.

Dated: September 21, 2023

Respectfully submitted,

/s/William A. Sherman, II
William A. Sherman, II
Sunni R. Harris
DINSMORE & SHOHL, LLP
801 Pennsylvania Avenue N.W.,
Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9100
william.sherman@dinsmore.com
sunni.harris@dinsmore.com
*Attorneys for Plaintiff Ford Motor Company*

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| FORD MOTOR COMPANY | ) | CASE NO: 2.23-CV-11286 |
| | ) | |
| PLAINTIFF | ) | JUDGE: Hon. Linda V. Parker |
| | ) | |
| | ) | MAGISTRATE JUDGE: Hon. Elizabeth |
| | ) | A. Stafford |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| OF MICHIGAN MUTUAL | ) | |
| INSURANCE CO, et al., | ) | |
| | ) | |
| DEFENDANTS | ) | |

**<u>PLAINTIFF FORD MOTOR COMPANY'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF ISSUES PRESENTED.................................................................. vi

CONTROLLING/MOST APPROPRIATE AUTHORITIES.................................... vii

INTRODUCTION .......................................................................................................1

STATEMENT OF FACTS ..........................................................................................1

LEGAL STANDARD..................................................................................................3

ARGUMENT ..............................................................................................................4

**I.**   FORD SUFFICIENTLY PLED ANTITRUST INJURY THROUGH ALLEGATIONS OF A NATIONWIDE HORIZONTAL CONSPIRACY TO DIVIDE THE COMMERCIAL HEALTH INSURANCE MARKET ........................................................................4

    **A.**   Ford's harm was not caused by Defendants' lawful exercise of trademarks...........6

**II.**   FORD PLED ANTICOMPETITIVE EFFECTS ................................................8

**III.**   FORD PLED MARKET POWER DESPITE NOT NEEDING TO.................................10

**IV.**   FORD'S CLAIMS ARE NOT TIME BARRED .........................................................11

    **A.** Defendants mischaracterize Ford's theory of antitrust injury as blocked entry, which sabotages their status of limitations analysis.................................................................11

    **B.** Ford's claims are timely, and the continuing violation doctrine applies.......................13

    **C.** Ford's claims are not precluded by laches.....................................................17

    **D.** Ford's ASO claims dating back to at least 2008 are timely ...........................................18

        i.   *Cerven* contemplated ASO claims as early as 2012 ...................................19

        ii.   Moreover, the MDL court contemplated ASO claims are early as 2012...20

    **E.** Dismissal based on the statute of limitations is premature.............................................21

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alaska Air Group, Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-RDP (N.D. Ala.) .................... *passim*

*Am. Pipe & Constr. Co. v. Utah* ("*American Pipe*"), 414 U.S. 538 (1974) ................................ 19

*Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332 (1982) ....................................... 9

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989) ........................................ 8

*Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74 (6th Cir. 1981) ........................... 14, 16

*Bed Bath & Beyond Inc. et al v. Anthem Inc et al.*, 2:22-cv-01256-RDP (N.D. Ala.) .......... *passim*

*Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007) ........................................................... 3

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ..................................... 14

*Bill Minielli Cement Contracting, Inc. v. Richter Concrete Corp.*, 62 F.R.D. 381
(S.D. Ohio 1973) ........................................................................................................... 16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 (1977) ........................................ 4, 6

*Burley v. Quiroga*, No. 16-cv-10712, 2019 U.S. Dist. LEXIS 125130
(E.D. Mich. June 6, 2019) ........................................................................................... 3

*Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772 (6th Cir. 2001). ..................................... 3

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012) ...................................................... 3

*Cerven v. Blue Cross and Blue Shield of North Carolina*, No. 5:12-cv-00017
(W.D.N.C. Feb. 7, 2012) ............................................................................................. *passim*

*Clark v. Stone*, 998 F.3d 287 (6th Cir. 2021) ......................................................................... 22

*Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50 (2d Cir. 1997) ...................................... 7

*Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752 (1984) ................................... 6, 9

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990) .......................................... 12

*Day v. DeLong*, No. 3:16-cv-00437, 2017 U.S. Dist. LEXIS 196570
(S.D. Ohio Nov. 30, 2017) .......................................................................................... 12

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ...................................................... 3

*DXS, Inc. v. Siemens Medical Sys.*, 100 F.3d 462 (6th Cir. 1996) .................................... 14

*Federal Express Corp. v. USPS*, 75 F. Supp. 2d 807 (W.D. Tenn. 1999) .................................. 17

*Geico Corp v. Autoliv, Inc.*, 345 F. Supp. 3d 799 (E.D. Mich. 2018) .......................................... 15

*Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617 (N.D. Ohio 2020) ................................... 22

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d
1231 (1968) ................................................................................................................ 14

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298 (6th Cir. 2001) .......... 17

*Hodges v. WSM, Inc*, 26 F.3d 36 (6th Cir. 1994) ......................................................................... 8

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms. Inc.*, 353 F. Supp. 3d 678
(M.D. Tenn. 2018) ................................................................................................ 10, 15

*In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 U.S. Dist. LEXIS
141515, at *34-35 (N.D. Ala. Aug. 9, 2022) ....................................................*passim*

*Jaffe v. Travelers Co., Inc.*, No. 1:22-cv-13157, 2023 U.S. Dist. LEXIS 78881, at *10
(E.D. Mich. Apr. 5, 2023) ...................................................................................... 22

*JetBlue Airways Corp. v. Anthem, Inc.*, No. 2:22-CF-558-RDP (N.D. Ala.) .....................*passim*

*Kaw Valley Elec. Co-op Co. v. Kansas Electric Power Coop., Inc.*, 872 F.2d
(10th Cir. 1989) ..................................................................................................... 12

*K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) ................................................. 14

*Kirkwood v. Vickery*, No. 4:17-cv-00086-JHM, 2018 U.S. Dist. LEXIS 36930, at *2
(W.D. Ky. Mar. 7, 2018) ....................................................................................... 22

*Klehr v. A.O. Smith Corp.*, 521 U.S. (1997) .............................................................................. 14

*La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re Cardizem CD Antitrust Litig.)*,
332 F.3d 896 (6th Cir. 2003) .......................................................................... 4, 5, 6

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743, 96 S. Ct. 1202, 47 L. Ed. 2d 435
(1976) ...................................................................................................................... 19

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) ...................................... 21

*Meijer, Inc. v. 3M*, CIVA. 04-5871, 2005 U.S. Dist. LEXIS 13995 19
(E.D. Pa. July 13, 2005) ........................................................................................ 13

*Modern Holdings v. Corning, Inc.*, 2020 U.S. Dist. LEXIS 166581 (E.D. Ky. 2020) ................ 19

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 109, 104 S. Ct. 2948, 82 L. Ed. 2d
70 (1984) ................................................................................................................ 10

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) ...............................9

*NicSand, Inc. v.  3M Co.,* 507 F.3d 442 (6th Cir. 2007) ....................................................................5

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284
(1985) ....................................................................................................................................9

*Ohio ex rel. Brown v. Klosterman French Baking Co.*, 1976 U.S. Dist. LEXIS 14560
(S.D. Ohio 1976) .......................................................................................................................17

*Ohio v. Am. Express Co.,* 138 S. Ct. 2274 (2018) ...................................................................4

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990) ...................................................13, 17

*Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369 (6th Cir. 2021).................................................10

*Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) ............................................13

*Rose v. Bartle*, 871 F.2d 331 (3rd Cir. 1989).................................................................................12

*SFX React-Operating LLC v. Eagle Theater Entm't,*, 2017 U.S. Dist. LEXIS 134823
(E.D. Mich. 2017) (Hood, J.) .....................................................................................................15, 16

*Skelaxin Metaxalone Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70968
(E.D. Tenn. 2013) .....................................................................................................................14

*Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) ..............................15

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979
(E.D. Cal. Sept. 3, 2010)...............................................................................................................16

*Timken Roller Bearing Co. v. United States*, 341 U.S. 593 (1951) .......................................6, 7, 8

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430
(6th Cir. 2008)...............................................................................................................................3

*United States v. Carell*, 681 F. Supp. 2d 874 (M.D. Tenn. 2009) ...............................................22

*United States v. City of Loveland*, 621 F.3d 465 (6th Cir. 2010) ................................................17

*United States v. Socony-Vacuum Oil Co*., 310 U.S. 150 (1940)....................................................9

*United States v. Topco Assocs.*, 405 U.S. 596 (1972)....................................................................4

*Weston v. AmeriBank*, 265 F.3d 366 (6th Cir. 2001).................................................................19

*Wholesale Grocery Prods. Antitrust Litig. v. DeLuca's Market Corp. (In re Wholesale Grocery Prods. Antitrust Litig.)*, 752 F.3d 728 (8th Cir. 2014)................................................................24

*Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014) ...........................................14, 16

**Statutes**

15 U.S.C. § 1.................................................................................................................*passim*

15 U.S.C. § 15b......................................................................................................... 13

**Articles**

Kyle Graham, The Continuing Violations Doctrine, 43 Gonz. L. Rev. 271, 314

(2008)...................................................................................................................... 14

**STATEMENT OF ISSUES PRESENTED**

1. Should the Court deny Defendants' Motions to Dismiss because Ford sufficiently pled an antitrust injury?

   **Ford's Answer:** Yes

2. Should the Court deny Defendants' Motions to Dismiss because Ford sufficiently pled BCBSM's horizontal allocation of territory and customers with output restrictions, and anticompetitive harm (and allegations of competitors prevented from selling insurance products is not required)?

   **Ford's Answer:** Yes

3. Should the Court deny Defendants' Motions to Dismiss because Ford pled market power in the nationwide market for health insurance products and services even though it has no duty to do so?

   **Ford's Answer:** Yes

4. Should the Court deny Defendants' Motions to Dismiss because Ford's claims are not time barred?

   **Ford's Answer:** Yes

## CONTROLLING/MOST APPROPRIATE AUTHORITIES

*Alaska Air Group, Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-RDP (N.D. Ala.)

*Am. Pipe & Constr. Co. v. Utah* ("*American Pipe*"), 414 U.S. 538 (1974)

*Bed Bath & Beyond Inc. et al v. Anthem Inc et al*., 2:22-cv-01256-RDP (N.D. Ala.)

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 (1977)

*Cataldo v. U.S. Steel Corp*., 676 F.3d 542 (6th Cir. 2012)

*Cerven v. Blue Cross and Blue Shield of North Carolina*, No. 5:12-cv-00017

(W.D.N.C. Feb. 7, 2012)

*DXS, Inc. v. Siemens Medical Sys.*, 100 F.3d 462 (6th Cir. 1996)

*Geico Corp v. Autoliv, Inc.*, 345 F. Supp. 3d 799 (E.D. Mich. 2018)

*JetBlue Airways Corp. v. Anthem, Inc.*, No. 2:22-CF-558-RDP (N.D. Ala.)

*In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 U.S. Dist. LEXIS 141515, at *34-35 (N.D. Ala. Aug. 9, 2022)

*La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re Cardizem CD Antitrust Litig.)*, 332 F.3d 896 (6th Cir. 2003)

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 109, 104 S. Ct. 2948, 82 L. Ed. 2d 70 (1984)

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990)

*SFX React-Operating LLC v. Eagle Theater Entm't,*, 2017 U.S. Dist. LEXIS 134823 (E.D. Mich. 2017) (Hood, J.)

*Timken Roller Bearing Co. v. United States*, 341 U.S. 593 (1951)

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430

(6th Cir. 2008)

*United States v. City of Loveland*, 621 F.3d 465 (6th Cir. 2010)

*United States v. Socony-Vacuum Oil Co*., 310 U.S. 150 (1940)

*United States v. Topco Assocs.*, 405 U.S. 596 (1972)

*Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014)

## INTRODUCTION

Defendants Blue Cross Blue Shield Michigan's ("BCBSM") and Blue Cross Blue Shield Association's ("BCBSA") (collectively "Defendants") Motions to Dismiss exhibit an utter disregard of the allegations in Ford Motor Company's ("Ford") Complaint. According to Defendants' Motions, Ford fails to allege an antitrust injury; fails to allege that BCBSM prevented competitors from selling insurance products; and fails to allege that BCBSM has market power. In addition, Defendants argue that Ford's claims are time barred. Each of these arguments is fatally flawed. Defendants fail to demonstrate that no circumstances exist by which the Court could grant the relief requested by Ford when the Complaint's allegations are taken as true and construed in a light most favorable to Ford. For the reasons set forth herein, the Court should deny Defendants' Motions to Dismiss.

## STATEMENT OF FACTS

Defendants' Motions to Dismiss fail to grasp the breadth of Ford's Complaint. Ford is not seeking damages against Defendants solely because of BCBSM's illegal conduct in Michigan. Compl., PageID.33 (¶ 103). Ford is suing BCBSM and BCBSA, jointly and severally, for the damages Ford sustained as a result of the horizontal conspiracy between entities using the Blue Cross Blue Shield Trademark and licenses ("Blue Licensees"). *Id.* at PageID.37 (¶ 122). This conspiracy between BCBSA and the Blue Licensees exists to restrain trade and reduce competition. *Id.* at PageID.20-22 (¶¶ 60-67). This is a violation of Section 1 of the Sherman Act.

Specifically, Ford alleges a conspiracy amongst and between BCBSA and Blue Licensees to horizontally allocate territory through Exclusive Service Agreements ("ESAs"). *Id.* at PageID.13 (¶ 31). These ESAs prevent Blue Licensees from competing with each other by restricting each Blue Licensee's use of the Blue Cross Blue Shield Trademark to a defined territory.

*Id.* at PageID.13 (¶ 33).   Accompanying this horizontal allocation of territory are additional restrictions applicable to the conduct of Blue Licensees. *Id.* at PageID.16 (¶¶ 46-48). For example, Blue Licensees enforce output restrictions on each other through the Local Best Efforts Rule and the National Best Efforts Rule. *Id.* at PageID.20 (¶¶ 62-63). Each of these rules governs the amount of revenue that a Blue Licensee may generate via their non-Blue Cross Blue Shield trademarked businesses. *Id.* at PageID.15-16 (¶ 43-44). These restrictions further restrain competition by preventing Blue Licensees from offering non-trademarked products and services within their designated ESAs. *Id.* at PageID.21 (¶ 65). Lastly, the Blue Licensees control the termination of existing members to prevent other Blue Licensees from exiting the conspiracy. *Id.* at PageID.16-17 (¶ 48). A Blue Licensee may only exit the conspiracy via a ¾ vote of the other Blue Licensees. *Id.* Should a Blue Licensee depart without an affirmative vote, or otherwise violate the terms of the conspiracy, it is penalized with a massive monetary fine used to fund the incoming member that will take its place in the conspiracy. *Id.* at PageID.17 (¶ 50). The Blue Licensees are potential competitors that cloak their conspiracy to restrain trade as a simple trademarking scheme administered by BCBSA – an entity which the Blue Licensees collectively own and control. *Id.* at PageID.14 (¶¶ 36-37). In reality, BCBSA is the vehicle through which Blue Licensees conspire to restrain trade in violation of Section 1 of the Sherman Act. *Id.* at PageID.17-18 (¶ 51).

Ford has been damaged by this conspiracy since at least 2008 when it began contracting with, and purchasing commercial health insurance products and services from, the following five Blue Licensees: Defendant BCBSM; Blue Cross Blue Shield of Kansas City; Blue Cross Blue Shield of Tennessee; Elevance Health, Inc. f/k/a Anthem, Inc.; and Health Care Services Corporation (collectively "Blue Entities"). *Id.* at PageID.3, 20 (¶¶ 2, 60). As authorized by the Sherman Act, Ford is seeking to recover the entirety of its damages – trebled – that it suffered due

to the anticompetitive conspiratorial actions of these five Blue Entities from the two co-conspirators named in the Complaint: BCBSM and BCBSA. *Id.* at PageID.36-38 (¶¶ 120-123).

## LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In *Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007), the Supreme Court considered the pleading requirements for a claim brought under Section 1 of the Sherman Act and emphasized that there is no heightened pleading standard for antitrust actions. 550 U.S. at 570.  A claim survives a motion to dismiss if its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 555. "The moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

In addition to these general principles, the Sixth Circuit has emphasized that because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). This is because "plaintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations." *Burley v. Quiroga*, No. 16-cv-10712, 2019 U.S. Dist. LEXIS 125130, *59 n.28 (E.D. Mich. June 6, 2019). The defendant bears the burden to show the statute of limitations has run. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

**ARGUMENT**

I. **FORD SUFFICIENTLY PLED ANTITRUST INJURY THROUGH ALLEGATIONS OF A NATIONWIDE HORIZONTAL CONSPIRACY TO DIVIDE THE COMMERCIAL HEALTH INSURANCE MARKET**

Defendants[1] allege that Ford has not pled a restraint of trade resulting in antitrust injury. BCBSM Mot. to Dismiss, PageID.386-91. They are wrong.

The Supreme Court defines antitrust injury as, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977). However, "[t]here are certain agreements or practices which because of their pernicious effect on competition . . . are conclusively presumed to be unreasonable and therefore illegal . . ." *United States v. Topco Assocs.*, 405 U.S. 596, 607 (1972). "One of the classic examples of a per se violation of [Section 1 of the Sherman Act] is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition." *Topco Assocs.,* 405 U.S. at 608. *See also Ohio v. Am. Express Co.,* 138 S. Ct. 2274, 2283-84 (2018).

Here, Ford alleges a *per se* violation of Section 1 of the Sherman Act through horizontal allocation of territory via ESAs, accompanied by output restrictions. Compl., PageID.10, 29-30, 36-27 (¶¶ 22, 89, 120). The Sixth Circuit, in *La. Wholesale Drug Co.*, demonstrated how horizontal restraints of trade nearly always demonstrate antitrust injury when claims are brought by a customer. "A naked, horizontal restraint of trade [is] *per se* illegal because it is presumed to have

---

[1] Although BCBSM and BCBSA filed separate motions to dismiss, they each adopted the other's arguments. *See* BCBSM Mot. to Dismiss, PageID.381 (1), and BCBSA Mot. to Dismiss, PageID.480-81 (1-2). Thus, Ford responds to both motions herein and does not distinguish which party made which argument.

the effect of reducing competition in the market . . . to the detriment of consumers." *La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re Cardizem CD Antitrust Litig.)*, 332 F.3d 896, 911 (6th Cir. 2003). In *La. Wholesale Drug Co.*, plaintiffs challenged a horizontal restraint of trade in which a competitor paid another to refrain from entering a product market and increasing competition – plaintiffs alleged the restraint resulted in paying higher prices due to a lack of competition in the market. *Id.* The Sixth Circuit held "there is no question that the alleged injury . . . is the type of injury that can . . . flow from the anticompetitive effects of the Agreement (a horizontal market allocation agreement)." *Id.* Ultimately, the Sixth Circuit upheld the district court's denial of the defendants' motion to dismiss and concluded that the plaintiffs had properly alleged an antitrust injury. *Id.* at 916.

Moreover, the antitrust injury requirement exists so that "one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition." *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 450 (6th Cir. 2007). Ford is not a competitor seeking to abuse the Sherman Act for financial gain. Ford is a customer and consumer in the commercial health insurance market. Ford has been damaged by the illegal conspiracy to allocate markets between competitors as described in its Complaint. Compl, PageID.37-38 (¶ 122). Ford is alleging a violation of Section 1 of the Sherman Act stemming from a horizontal territorial market division and output restrictions on Blue Licensees that consequently decreased competition in the health insurance market. *Id.* at PageID.36-37 (¶ 120). These output restrictions include the National and Local Best Effort Rules. *Id.* at PageID.15-16 (¶¶ 43, 44). They also include penalties for a Blue Licensee terminating its trademark allocation, preventing its exit from the conspiracy and requiring the funding of a new conspiracy member. *Id.* at PageID.16 (¶ 45). Ford suffered an antitrust injury by being forced to pay supra-competitive premiums. *Id.* at PageID.6 (¶ 10). The conspiracy among Blue Licensees

5

reduced competition in the market for National Accounts. *Id.* at PageID.30 (¶ 90). Without the conspiracy to horizontally allocate territories, Blue Licensees such as Anthem would have been free to enter into the geographic territories of other Blue Licensees and increase competition in the market. *Id.* at PageID.30-31 (¶ 92). These facts allege "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp.*, 429 U.S. at 489.

All of these allegations demonstrate that Ford satisfies the antitrust injury requirement, and satisfies the standard to defeat a motion to dismiss. "Under these circumstances, dismissal would be appropriate only if the plaintiffs' allegations, taken as true and construed in their favor, somehow precluded the possibility that their injury flowed from the anticompetitive effects of the Agreement and payment." *La. Wholesale Drug Co.,* 332 F.3d at 911. Defendants have not met their burden to require dismissal.

### A.   Ford's harm was not caused by Defendants' lawful exercise of trademarks.

Defendants counter Ford's allegation of antitrust injury by arguing that any injury to Ford was caused by the lawful use of trademarks; thus, Ford has not suffered a cognizable injury. BCBSM Mot. to Dismiss, PageID.387-91 (7-11). However, relying on trademarks to attempt to circumvent Section 1 of the Sherman Act is not new. "Nor can the restraints of trade be justified as reasonable steps taken to implement a valid trademark licensing system." *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 598 (1951). In *Timken*, the Supreme Court held against a corporation that conspired with two other corporations through a trademark licensing scheme.[2] *Id.* at 593. The corporations used a trademarking scheme to divide territory, enforce territorial agreements, reduce competition and fix prices within those territories. Defendants in *Timken*

---

[2] *Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752 (1984) partially overruled the standard for *Timken,* but only with respect to a parent corporation and its wholly-owned subsidiary.

argued that the restraints on competition were ancillary to the otherwise legitimate trademarking

joint venture. The Court disagreed and summarized the illegal trademarking scheme as such:

> That the trade restraints were merely incidental to an otherwise legitimate "joint venture" is, to say the least, doubtful. The District Court found that the dominant purpose of the restrictive agreements into which appellant, British Timken and French Timken entered was to avoid all competition either among themselves or with others. Regardless of this, however, appellant's argument must be rejected. Our prior decisions plainly establish that agreements providing for an aggregation of trade restraints such as those existing in this case are illegal under the [Sherman] Act.

*Timken*, 341 U.S. at 597-98.

The system that the Blue Licensees utilize substantially parallels those in *Timken*. The

Blue Licensees divide their territory through ESAs, cloaking them as a valid trademark scheme.

Compl., PageID.12-13 (¶ 31). The Blue Licensees enforce the agreements through hefty financial

penalties. *Id.* at PageID.16-17 (¶ 48). The Blue Licensees further regulate the output of product in

their territories, and of any Blue Licensee operating under the trademarks through the Local and

National Best Efforts Rules. *Id.* at PageID.15-16 (¶¶ 43-44). The horizontal allocation of territory

for the sale of commercial health insurance products and services that the Blue Licensees engage

in violates Section 1 of the Sherman Act. The conspiracy cannot be legitimized by cloaking it as a

trademarking scheme.

The MDL Court has already held as much. In reliance on *Clorox Co. v. Sterling Winthrop,*

*Inc.*, 117 F.3d 50, 55-56 (2d Cir. 1997), the MDL Court held that it is unnecessary to determine

the "exact nature or extent of the Blue Plans' common law rights in the marks." *In re Blue Cross*

*Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 U.S. Dist. LEXIS 141515, at *34-35

(N.D. Ala. Aug. 9, 2022). The court reminded the parties of its prior ruling that defendants'

trademark allocation (in combination with the output reducing National Best Efforts Rule) was *per se* illegal until April 2021. *Id.* at \*21. Thus, Defendants are not shielded by their use of trademarks.[3]

Defendants cite cases that they allege stand for the proposition that trademarking schemes may circumvent violations of Section 1 of the Sherman Act. BCBSM Mot. to Dismiss, PageID.390 (10). As seen in *Timken* – that is not the case. Defendants cite *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111(6th Cir. 1989) in support of this proposition, however *Axis* did not concern an antitrust injury at all. Further, in *Axis* the Sixth Circuit acknowledged that abuse of intellectual property could lead to an antitrust violation. *Axis, S.p.A.*, 870 F.2d at 1111 ("patent abuse may constitute an antitrust violation"). Similarly, *Hodges v. WSM, Inc*, is inapposite because it concerned an amusement park owner's right to exclude the plaintiff from their private property. *Hodges v. WSM, Inc*, 26 F.3d 36 (6th Cir. 1994). The injury in *Hodges* did not flow from a decrease in competition. *Id*. Here, by contrast, the Defendants' conduct went far beyond protection of their own property rights. The Defendants engaged in a conspiracy to allocate markets, decrease competition, and increase price. The Blue Licensees abused their trademarks to create a horizontal allocation of territory in violation of the Sherman Act.[4]

## II.      FORD PLED ANTICOMPETITIVE EFFECTS

Defendants argue that Ford fails to allege anticompetitive harm because it does not explain whether BCBSM prevented competitors from selling insurance products.[5] BCBSM Mot. to

---

[3] Notably, after April 2021 Defendants and other Blue Licensees ended the National Best Efforts Rule, but the other restrictions remain in place.

[4] Defendants make several factual arguments that are inappropriate at this stage, including that since the 1940s "BCBSM has been the only Company with the right to use the Blue brand in Michigan." BCBSM Mot. to Dismiss, PageID.389 (9). Ford believes discovery will illuminate that this is false.

[5] Defendants allege a lack of anticompetitive harm, but fail to define that term in their Motions. Ford must assume that Defendants meant the term "anticompetitive effects" as described in *Am. Express Co.*, 138 S. Ct. at 2274.

Dismiss, PageID.391-96 (11-16). However, anticompetitive effects are presumed under a *per se* standard and need not be proven. *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 226, n. 59 (1940); *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 351, (1982); *In re Cardizem CD Antitrust Litig.,* 332 F.3d at 909. "This *per se* approach permits categorical judgments with respect to certain business practices that have proved to be predominantly anticompetitive." *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985). "Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal *per se* without inquiry into the harm it has actually caused." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984). Here, Ford alleges a horizontal allocation of market territory. Compl., PageID.21 (¶¶ 65-66).

Nonetheless, Ford has adequately pled facts showing anticompetitive effect. Here, Ford identifies a relevant product market of "National Accounts" defined as large, multi-site employers or plans covering 5,000 or more employees. Compl., PageID.22-23 (¶ 69). Ford also identifies a relevant geographic market of the entire United States. *Id.* at PageID.25 (¶ 76). Ford has identified adverse effects on the market – an increase in fees and premiums stemming from the horizontal allocation of territory. *Id.* at PageID.31-32 (¶ 96).

Ford has adequately identified a relevant market, an adverse effect on competition, and sufficiently alleged a claim under Section 1 of the Sherman Act. Ford does not need to plead anything further.  A full analysis into anticompetitive effects is premature, inappropriate, and irrelevant during a 12(b)(6) motion to dismiss.

### III.     FORD PLED MARKET POWER DESPITE NOT NEEDING TO

Defendants argue that Ford has not adequately pled market power. BCBSM Mot. to

Dismiss, PageID.396-97 (16-17). However, market power is an unnecessary element under Section

1 of the Sherman Act when alleging a naked restriction on price or output.

> As a matter of law, the absence of proof of market power does not justify a naked
> restriction on price or output. To the contrary, when there is an agreement not to
> compete in terms of price or output, 'no elaborate industry analysis is required to
> demonstrate the anticompetitive character of such an agreement' . . . We have never
> required proof of market power in such a case.

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 109, 104 S. Ct. 2948, 82 L. Ed. 2d

70 (1984). Here, Ford alleges a horizontal allocation of market territory, which is in fact a naked

restriction on output. Compl., PageID.20 (¶ 61). Thus, an allegation of market power is

unnecessary.

Defendants misunderstand and misapply the holdings in *Found. for Interior Design Educ.

Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) and *Lie v. St.

Joseph Hosp.*, 964 F.2d 567, 569 (6th Cir. 1992). *Found. for Interior Design Educ. Research* did

not involve a naked restraint on output, and held that an antitrust injury alleged under the rule of

reason standard requires an accurate identification of the relevant market. 244 F.3d at 521. *Lie*

stands for the proposition that when a naked restraint on output has not been pled, evidence of

market power is required on **summary judgment**. 965 F.2d at 569-70. In fact, *Lie* supports Ford's

contention, and held that "[t]he Court does not demand this inquiry into market power in the

presence of a naked restriction on price or output, and thus does not allow failure to prove market

power to defeat a plaintiff's antitrust action in such a case." *Id.* at 569 (internal citation omitted).

These cases are inapplicable to Ford's claim because Ford sufficiently alleged a naked restraint on

output. Compl., PageID.21-22 (¶¶ 65-67).

Moreover, Defendants concede that Ford alleges the market power of the collective Blue Licensees. BCBSM Mot. to Dismiss, PageID.396 (16). But Defendants suggest that this is not enough based on their mischaracterization of Ford's Complaint as only complaining about BCBSM's conduct. Rather, as reiterated *supra*, Ford alleges a nationwide conspiracy to horizontally allocate territory among all Blue Licensees. *See* Section I.A. Ultimately, despite it being unnecessary for Ford to allege market power in its Complaint, it has done so.

## IV.    FORD'S CLAIMS ARE NOT TIME BARRED

Defendants argue that Ford's claims are time barred for a myriad of reasons – Ford failed to allege blocked entry within the requisite time frame; the continuing violation doctrine does not apply; laches bars injunctive relief; Ford's administrative services only ("ASO") claims were not contemplated until 2020, *etc*. As explained below, these arguments are unavailing and Defendants' Motions to Dismiss must be denied.

### A.    Defendants mischaracterize Ford's theory of antitrust injury as blocked entry, which sabotages their statute of limitations analysis.

Defendants argue that "Ford's claim is barred by the statute of limitations because the alleged blocked expansion of any other Company using the Blue brand would have occurred decades ago [*i.e.,* the 1940s]." BCBSM Mot. to Dismiss, PageID.398 (18). This assertion, which Defendants refer to as the "blocked entry" theory, undergirds its argument that Ford's claims are untimely. However, Ford's Complaint does not merely involve "blocked entry" and Defendants are attempting to re-cast Ford's complaint in a manner convenient to its arguments. As explained at Section I, *supra*,[6] Ford alleges a conspiracy by Defendants and other identified conspiring Blue Licensees to horizontally allocate territory and customers and to restrict output. Moreover, Ford

---

[6] *See also*, Compl., PageID.5, 37-38 (¶¶ 9, 121).

alleges that it was harmed every time it paid a supra-competitive premium and fee because of this conspiracy. Compl., PageID.6, 36, 37 (¶¶ 10, 120, 122).  Under this theory, and as explained *infra* at Section IV.B., the statute of limitations is tolled to the last date on which a wrongful act is committed; here, Ford alleges that Defendants' violations are ongoing. Defendants are well aware that the court must construe Ford's complaint as it was pled – not as Defendants wish it to be. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990); *Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3rd Cir. 1989) ("Defendants essentially ask the Court to accept as true the version of the events they describe in their written reports[.] This is contrary to Rule 12(c)'s mandate that the facts alleged in [the] Complaint be taken as true and that [the] Complaint be construed in [plaintiff's] favor"); *Day v. DeLong*, No. 3:16-cv-00437, 2017 U.S. Dist. LEXIS 196570, at *20 (S.D. Ohio Nov. 30, 2017)

To support their flawed argument, Defendants rely on a single out-of-circuit district court case – *Gumwood HP Shopping Partners v. Simon Property Group* – for the proposition that "in a case about an alleged market division, the relevant date for statute of limitations is the date of blocked entry, not the payment of higher prices supposedly caused by that blocked entry." BCBSM Mot. to Dismiss, PageID.399 (19); 221 F. Supp. 3d 1033, 1044-45 (N.D. Ind. 2016).[7] However,

---

[7] In addition, Defendants reference several cases in footnote 25 of BCBSM's Motion to Dismiss regarding when a claim accrues under the blocked expansion theory. These cases are easily distinguished from Ford's claims. In *Midwestern Waffles, Inc. v. Waffle House, Inc*., the Eleventh Circuit affirmed partial summary judgment for antitrust defendants when the refusal to grant a franchise occurred more than four years prior to filing the complaint. 734 F.2d 705, 714-15 (11th Cir. 1984). However, BCBSM conveniently omits that the Eleventh Circuit only reached this conclusion after emphasizing that the plaintiffs could have proven the damages they sought with certainty when the defendants denied the franchise. *Id.* at 715. Ford could not have proven its damages in the 1940s, as it had not even contemplated contracting with BCBSM. Moreover, Defendants omit the court's analysis of plaintiff's tying claim and the court's holding that "each payment under a contract which constitutes an illegal tie is new injury." *Id.* at 714. *Kaw Valley Elec. Co-op Co. v. Kansas Electric Power Coop., Inc*., does not contemplate when a statute of limitations runs. 872 F.2d 931, 934 (10th Cir. 1989). Rather, it addressed whether continued

*Gumwood* is wholly dissimilar from Ford's claims. In *Gumwood*, the plaintiff did not purchase anything from the defendant at all. 221 F. Supp. 3d at 1033. A shopping mall complained that its competitor's unilateral anticompetitive conduct caused a "snowball" of damages before the limitations period, which in turn caused it to lose tenants before and during the limitations period. *Id.* at 1043–45. These issues were raised in the context of a *Daubert* motion to strike plaintiff's expert's damages calculations. *Id.* at 1036. Ultimately, the court concluded that portions of plaintiff's expert's opinion were unreliable because they could not provide a jury with the basis on which to evaluate the effect of the statute of limitations on the expert's damages opinion. *Id.* at 1045. This case has no bearing on Ford's claims.

**B.    Ford's claims are timely, and the continuing violation doctrine applies.** [8]

The statute of limitations in Sherman Act cases is four years, and runs from the time the defendant injures the plaintiff's business. 15 U.S.C. § 15b; *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1021 (6th Cir. 1999) ("cause of action accrues when a defendant commits an act that injures the plaintiff's business"). However, the continuing violation doctrine provides an exception to this rule.

A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded. *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990).[9] "When a continuing

---

refusals to deal renewed the statute of limitations under the continuing violation exception. Moreover, it does not contemplate purchases from the conspirators. *Id.* And, *Farbenfabriken Bayer, A.G. v. Sterling Drug, Inc.,* 153 F. Supp. 589, 593 (D.N.J. 1957) is a seventy year old district court case that addresses New Jersey's state statute of limitations for tort actions, and does not involve purchases from the defendant.

[8] Defendants concede in footnote 31 of BCBSM's Motion to Dismiss that if the statute of limitations is measured from 2008, then the *Cerven* and MDL complaints would toll Ford's claims. Thus, if the Court finds that the statute of limitations began to run from 2008, then Defendants have conceded that Ford's claims are timely.

[9] *See Meijer, Inc. v. 3M*, CIV.A. 04-5871, 2005 U.S. Dist. LEXIS 13995 (E.D. Pa. July 13, 2005) (claims were not barred when the initial act fell outside the statute of limitations but subsequent

13

antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." *Barnosky Oils, Inc. v. Union Oil Co. of California*, 665 F.2d 74, 81 (6th Cir. 1981). *Id.* The injury must be caused by an overt act, which is a new and independent act that inflicts a new and accumulating injury on the plaintiff. *DXS, Inc. v. Siemens Medical Sys.*, 100 F.3d 462 (6th Cir. 1996). The act must not be a mere "ripple" or "unabated inertial consequence" of the initial act. *Id.* at 467; *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014).

Ford alleges that the statute of limitations is tolled because Ford suffered continued violations each time the parties separately negotiated and executed yearly contracts and amendments for fees and services, each time paying supra-competitive premiums and fees for services. Compl., PageID.35-37 (¶¶ 114, 115, 120, 122). These allegations bring Ford within Supreme Court and Sixth Circuit precedent holding that: "[E]ach sale made to a consumer pursuant to a price-fixing or market-allocation conspiracy will give rise to a separate claim with its own limitations period, even if these sales were the completely predictable result of a notorious agreement to manipulate the market perfected outside of the limitations period." Kyle Graham, The Continuing Violations Doctrine, 43 Gonz. L. Rev. 271, 314 (2008) (*citing Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (discussing the applicability of the continuing violations doctrine to this type of claim); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004)).[10]

---

overcharges were sufficient to bring the defendants' anticompetitive conduct within the statute of limitations); *In re Skelaxin Metaxalone Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70968, at *102 (E.D. Tenn. 2013) ("even if most or all of the overt acts alleged as part of the continuing conspiracy occurred outside the limitations period—Plaintiffs have sufficiently alleged those acts resulted in Plaintiffs being overcharged . . . well into the limitations period").

[10] *See also Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968) (sales or refusals to sell may be accounted for when determining whether a continuing violation occurred); *In re Skelaxin Metaxalone Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70968, at *92 (holding that new sales resulting in overcharges during the course of a conspiracy

Several Michigan district court cases illustrate this. In *Geico Corp v. Autoliv, Inc.*, the plaintiff brought suit under the Sherman Act alleging that defendant auto part manufacturers and suppliers conspired to fix prices by allocating the market. 345 F. Supp. 3d 799, 808 (E.D. Mich. 2018) (Battani, J.). The court held that the defendants committed an overt act "each time they sold an Auto Part to [a vendor] and that 'for each such overcharge . . . a cause of action accrued, restarting the relevant statute of limitations.'" *Id.* at 837. *See also Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms. Inc.*, 353 F. Supp. 3d 678 (M.D. Tenn. 2018) (finding an overt act each time defendants sold plaintiffs prescriptions at inflated prices); *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 947 (E.D. Tenn. 2008) (yearly renewals of contracts executed after the original contract were overt acts that renewed the statute of limitations). Like in *Geico*, BCBSM committed an overt act each time it executed an agreement for services and fees and/or accepted payment from Ford for services and fees. Additionally, Defendants' participation in the nationwide conspiracy enabled the other Blue Entities to damage Ford each time they renegotiated or amended their contracts with Ford. Compl., PageID.3 (¶ 2).

Similarly, in *SFX React-Operating LLC v. Eagle Theater Entm't*, this court held that defendant Eagle Entertainment's Sherman Act counterclaims against React Presents, Inc. were not time-barred. 2017 U.S. Dist. LEXIS 134823, 14-15 (E.D. Mich. 2017) (Hood, J.). Eagle alleged that when React hired musicians it required the musicians to sign a radius clause preventing them from playing other shows in certain areas. *Id.* at 4. React coerced Eagle into contracting for the waiver of this clause in exchange for 50% of Eagle's profits, in violation of the Sherman Act. *Id.* at 6. The court held each execution of a contract with a radius clause was an overt act because each

---

were sufficient to restart the statute of limitations, and the overcharges were a continuing and accumulating harm that lasted well into the limitations period); *see also* Section IV.D., *infra*.

contract lasted only one year and was independent from the co-promotion agreement that React first coerced Eagle to sign. *Id.* at 12-13. Like in *SFX React-Operating LLC*, each of BCBSM's contracts were new and independent from BCBSM's original contract with Ford. Indeed, purchases at inflated prices (prices caused by the conditions of the original anticompetitive act) but unaccounted for at the time of the original anticompetitive act are overt acts that satisfy the continuing violation doctrine. *See also Bill Minielli Cement Contracting, Inc. v. Richter Concrete Corp.*, 62 F.R.D. 381, 390 (S.D. Ohio 1973) ("each time a plaintiff or potential class member bought at prices which, as a result of the alleged conspiracy, were illegally high, a cause of action against defendants would accrue. Also, the four-year statute would begin to run with respect to that purchase.").

Defendants cite no Sixth Circuit authority for their logic-defying proposition that a new and independent purchase is a mere consequence of an original purchase or initial market allocation. None of the out of circuit case law cited by Defendants provides grounds for the court to depart from this precedent.[11] For example, *New York v. Facebook*, cited by Defendants, is a Sherman Act Section 2 monopoly case brought in the District of Columbia by federal and state regulators. 549 F. Supp. 3d 6, 13 (D.D.C. 2021). Ford's claims are Sherman Act Section 1 restraint-of-trade claims brought in Michigan by a private party. Defendants argue that Ford's repeated

---

[11] The cases Defendants cite in the footnotes fare no better: *Z Tech. Corp.*, 753 F.3d at 600 (increases in price in the mergers and acquisitions context, without more, are not overt acts); *Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 81 (6th Cir. 1981) (enforcing a contract that violates antitrust law is not a continuing violation); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *16 (E.D. Cal. Sept. 3, 2010) (an out-of-circuit, unpublished, district court case which held new purchases of products after the unlawful formation of a monopoly were time-barred); *Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398, 434 (S.D.N.Y. Oct. 25, 2021) (an out-of-circuit district court case holding that, in a group boycott conspiracy, higher prices are not the conspiracy itself but rather the effects of the boycott agreement, and thus the charging of higher prices was not an overt act in furtherance of the conspiracy).

purchases of products from BCBSM are akin to Facebook's "continued ownership" of new acquisitions. BCBSM Mot. to Dismiss, PageID.401 (21). These actions are distinguishable because the first requires an intentional act while the other occurs without intervening action by the defendant. Finally, Defendants' invocation of *Peck* omits the court's narrow holding that employees losing their jobs and the plaintiffs' loss of a franchise were rippling effects caused by the original action. 894 F.2d at 849. The continuing violation doctrine thus preserves all of Ford's claimed damages.[12]

### C.     Ford's claims are not precluded by laches.

In the Sixth Circuit, a complaint is untimely on the ground of laches when the plaintiff exhibits a "negligent and unintentional failure to protect [their] rights." *United States v. City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010). Although trial courts generally have discretion over whether to apply laches,[13] parties asserting laches in the Sixth Circuit must show two elements: (1) lack of diligence by the party against whom laches is asserted, and (2) prejudice to the party asserting laches. *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). Defendants have failed to carry their burden to show either.

Ford has not lacked diligence in pursuing its claims against Defendants. Ford's earliest claim to damages is 2008.  Compl., PageID.20-21 (¶¶ 60, 66). Four years later – the laches period guideline suggested by Defendants – the first class action subscriber track ASO complaints were

---

[12] As argued in Section IV.D., *infra*, the pendency of the *Cerven* and MDL lawsuits are further, distinct, and separate grounds why Ford's claims tolled and were preserved dating back to 2008.

[13] *See Ohio ex rel. Brown v. Klosterman French Baking Co.*, 1976 U.S. Dist. LEXIS 14560, 13 (S.D. Ohio 1976) ("[T]he existence of laches is a question primarily addressed to the discretion of the trial court[.] . . . Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief"); *Federal Express Corp. v. USPS*, 75 F. Supp. 2d 807, 811 (W.D. Tenn. 1999) (the purpose of laches is to prevent negligent plaintiffs from causing unreasonable delay that prejudices the opposing party).

filed, to which Ford by class definition was a purported class member. *See* Section IV.D., *infra*. Ford maintained a watchful eye on the developments in this case. Shortly after the approval of the MDL settlement in 2020, which was approved in 2022, Ford: (1) executed tolling agreements with BCBSM and BCBS Kansas City in December of 2021, Compl., PageID.36 (¶ 116); (2) thoroughly investigated the merits, scope, and nature of its claims throughout 2022, *see* Compl. generally; and (3) filed the instant complaint in May of 2023, *id*. Ford has not delayed and the purpose of laches would not be furthered by dismissing Ford's claims.

Moreover, Defendants' argument that they will suffer prejudice if equitable relief is awarded now is misleading. Defendants make unverified claims (that have not been established through discovery) that they would suffer prejudice if the Court enjoined the use of ESAs because Defendants knowingly built a business around the ESAs. BCBSM Mot. to Dismiss, PageID.404-05 (24-25). Defendants have been on notice of the unlawful implications of the ESAs since at least 2012. *See* Section IV.D., *infra* (Defendants were put on notice of Ford's claims since the filing of the *Cerven* complaint). Defendants also argue that ESAs permit BCBSM to offer high quality products. However, as explained in Sections I-III, *supra*, BCBSM's ability to offer products through anticompetitive means cannot inoculate it from injunctive relief.

**D.     Ford's ASO claims dating back to at least 2008 are timely.**

Defendants argue that they lacked notice of Ford's ASO claims prior to the filing of the MDL Fourth Amended Complaint on November 2, 2020.  Defendants contend that neither the MDL nor earlier subscriber-track complaints, namely *Cerven et al v. Blue Cross and Blue Shield of North Carolina et al*, 2:12-cv-04169, Dkt. 1, Exh. 1, included ASO claims. BCBSA Mot. to Dismiss. PageID.484 (5). Thus, according to Defendants, given the four-year statute of limitations, Ford's claims prior to November 2, 2016 are barred by the statute of limitations.

18

Defendants' contentions are without merit. In reality, *Cerven* and the MDL extensively litigated ASO claims since their inceptions. According to the *American Pipe* tolling doctrine,[14] the filing of the *Cerven* complaint and the several amended MDL complaints placed Defendants on notice of Ford's ASO claims as early as 2012. Thus, the Clayton Act's statute of limitations permits Ford to recover damages dating as far back as 2008.

### i.   *Cerven* contemplated ASO claims as early as 2012

The 2012 *Cerven* complaint sought nationwide injunctive relief on behalf of all "persons or entities in the [U.S.] who are currently insured by any **health insurance plan** that is currently a party to a license agreement with BCBSA that restricts the ability of that health insurance plan to do business outside of any geographically defined area." *Cerven v. Blue Cross and Blue Shield of N.C.* Complaint, Dkt. 1, ¶ 20, Exh. 1 (W.D.N.C. Feb. 7, 2012) No. 5:12-cv-00017. The *Cerven* plaintiffs identified no exclusions to their nationwide injunctive relief class.

Defendants counter with two arguments. First, they contend that the *Cerven* Complaint's reference to "health insurance plan" necessarily precludes injunctive relief from ASO accounts, BCBSA Mot. to Dismiss, PageID.489-91 (10-12); however, this tortured interpretation of three

---

[14] In *Am. Pipe & Constr. Co. v. Utah* ("*American Pipe*"), the Supreme Court held that the commencement of a class suit tolls the running of the statute of limitations for all purported members of the class who would have been parties had the action been permitted to continue as a class action. 414 U.S. 538, 553 (1974). *American Pipe* tolling begins when the claims asserted placed the defendant on notice of the claims at issue in the individual action. *See Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 378-80 (6th Cir. 2021). Such notice exists if the class suit notified the defendants "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs[.]" *Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001) (quoting *Am. Pipe & Const. Co.*, 414 U.S. at 554-555). **Tolling applies to the claim regardless of the remedy sought**, as "the Supreme Court has found that multiple remedies based on the same operative facts comprise a single cause of action." *Modern Holdings v. Corning, Inc.*, 2020 U.S. Dist. LEXIS 166581, at *12 (E.D. Ky. 2020) (*citing Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743, 96 S. Ct. 1202, 47 L. Ed. 2d 435 (1976)); Fed. R. Civ. P. 8(a)(3) (A . . . claim is part of the same cause of action as a prior claim if it arises from the same operative nucleus of fact).

words – largely **not** considered to be a term of art – belies the substantial record (as explained at Section IV.B., *supra*.). The parties have always understood *Cerven* and the MDL to encompass ASO claims. Second, Defendants argue that the MDL Court "expressly considered and rejected the argument that the *Cerven* Complaint encompassed ASO claims." BCBSA Mot. to Dismiss, PageID.491 (12). This is untrue. The MDL court was not deciding how the statute of limitations should apply; rather, it was deciding what class period should apply to the ASOs for the purpose of certifying the class for **settlement purposes only and for approving a class settlement**. *In re BCBS*, 2:13-CV-20000-RDP, Dkt. 2931, 59-61, Exh. 2. This is further illustrated by Judge Proctor, the same judge that certified the class for settlement purposes only and approved the MDL settlement, specifically declining to grant the nearly identical Motion to Dismiss that Defendants filed with respect to other MDL opt out cases currently pending in the Northern District of Alabama. *See* Section IV.E, *infra*.

### ii.  Moreover, the MDL court contemplated ASO claims as early as 2012

After the ensuing flurry of similar complaints against Blue Licensees, including Defendants, the MDL was created with a subscriber track and a provider track.  The subscriber track sought relief in the form of damages and injunctive relief and clarified that the *Cerven* class included ASO claims. *In re Blue Cross Blue Shield Antitrust Litigation (MDL No. 2406)*, No. 2:13-CV-20000-RDP, Dkt. 85, ¶ 262-63, Exh. 3 (N.D. Ala. 2013) [hereinafter "*In re BCBS*"]. The parties' conduct demonstrates this understanding:

- In Defendants' 2013 motion to dismiss the subscriber class plaintiffs' complaint, Defendants admitted they understood that the nationwide subscriber injunctive relief class included "both large and small groups that self-insure." Brief in Support of Defendants' Motion to Dismiss, *In re BCBS*, Dkt. 120, 49 (Sept. 30, 2013), attached in relevant part as Exh. 4.

- Later, in 2015, Defendants began issuing subpoenas to large ASO customers seeking discovery from them. In numerous pleadings, correspondence exchanged between the parties, and in open court, the defendants stated that they needed discovery from these

"absent class members." Transcript of Status Conference before the Honorable T. Michael Putnam United States Magistrate Judge, *In re BCBS*, Dkt. 604, 56:11-77:1, Exh. ___ (N.D. Ala. April 28, 2016) ("The subscriber class is literally every . . . purchaser of Blue insurance nationwide from the smallest consumer to the hugest corporation"), attached hereto in relevant part as Exh. 5; Letter from W. Tucker Brown, Esq., Attorney for Defendants, *In re BCBS*, Dkt. 592-2 (April 8, 2016) (requesting discovery from absentee class member ASOs), attached hereto as Exh. 6.

- Class counsel also understood ASOs were in the MDL. In mid-2016, subscriber class counsel sent letters to some of these absent ASO class members (copying Defendants), to notify them of Defendants' efforts to take "absent class member" discovery. Class counsel represented to these ASO absent class members that "as counsel for **a putative class of Subscribers like you**, we have vigorously opposed the Blues' efforts to take discovery from you." Letter from Royal Cup, Inc. to Subscriber of Blue Cross Blue Shield Plan, *In re BCBS*, Dkt. 707-1 (July 7, 2016), attached hereto as Exh. 7.

- After BCBSA's attempt to obtain discovery from ASO "absent class members," plaintiff class counsel copied BCBSA on letters to ASO opt-outs notifying the ASOs of BCBSA's efforts to obtain discovery. *Id.* Class counsel stated that they acted as counsel for "a putative class of Subscribers like you [ASOs]." *Id.* The magistrate overseeing discovery in the MDL even referred to ASO customers as "potential class members." Amendment to Discovery Order No. 26, *In re BCBS*, Dkt. 641, 2, attached in relevant part as Exh. 8. In a January 13, 2017 brief relating to the absent class member discovery, Defendants stated: "In their Second Amended Complaint, Plaintiffs allege **two types** of classes: (i) an injunctive class and (ii) multiple damages classes. (Subscriber Track 2d Am. Comp. ¶ 305, ECF 897.) The relief sought by the alleged *injunctive* class has nationwide implications that could impact every Blue subscriber, big and small— **including ASO members**. This is why Defendants subpoenaed (and the Court allowed) discovery *from the ASO subscribers* in the initial wave." Defendants' Response to Plaintiffs' Motion to Quash Subpoenas to Proposed Class Members, *In re BCBS*, Dkt. 946, 6 (emphasis added) attached in relevant part as Exh. 9.

- Finally, in December 2022, several ASO class members who unsuccessfully objected to the class settlement appealed the MDL court's approval of the settlement to the Eleventh Circuit. In the course of this appeal, BCBSA stated that the Injunctive Relief Class definition "encompasse[d] both large and small groups that self-insure." *See* Brief of Appellants Topographic, Inc. and Employee Servs., Inc., *In re BCBS*, Dkt. 121, 9, Exh. 10.

In sum, all parties in the MDL, including Defendants, understood that the litigation contemplated ASO claims throughout the entire MDL process. Defendants were thus on notice that they were facing ASO claims since 2012 – long before November 2, 2020 and Ford is entitled to recover damages dating back to 2008.

### E.     Dismissal based on the statute of limitations is premature.

Sixth Circuit courts routinely deny motions to dismiss undergirded by statute of limitations arguments to the extent factual questions are present. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717

F.3d 459, 464 (6th Cir. 2013); *Jaffe v. Travelers Co., Inc*., No. 1:22-cv-13157, 2023 U.S. Dist. LEXIS 78881, at *10 (E.D. Mich. Apr. 5, 2023) (dismissal unwarranted when plaintiff can prove set of facts that claim is timely); *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 629-30 (N.D. Ohio 2020) ("Because [the defendant] raised the statute of limitations as an affirmative defense through a motion to dismiss . . . plaintiffs need not prove at this stage that the statute of limitations was tolled") (citing *Kirkwood v. Vickery*, No. 4:17-cv-00086-JHM, 2018 U.S. Dist. LEXIS 36930, at *2 (W.D. Ky. Mar. 7, 2018)); *United States v. Carell*, 681 F. Supp. 2d 874, 883 (M.D. Tenn. 2009) (motion to dismiss should be denied if facts are involved). Here, Ford's Complaint alleges the following facts, which have not been afforded the benefit of discovery: (1) Ford's claims are tolled by the parties' conduct in the MDL litigation, (2) Ford suffered continuing violations as a result of new, independent, and separately executed yearly contracts with BCBSM and other co-conspirators, and (3) an agreement between Ford and BCBSM tolled its claims. Compl., PageID.35-36 (¶¶ 114-116). Given these factual allegations, dismissal is premature.

This analysis is consistent with Judge Proctor's decision and opinion in three parallel litigation cases in the Northern District of Alabama addressing the timeliness of claims made by similarly-situated ASO opt-outs. In *Alaska Air Group, Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-RDP (N.D. Ala.), *JetBlue Airways Corp. v. Anthem, Inc.*, No. 2:22-CF-558-RDP (N.D. Ala.), and *Bed Bath & Beyond Inc. et al v. Anthem Inc et al*., 2:22-cv-01256-RDP (N.D. Ala.) [hereinafter "*AAG*," "*JetBlue*," and *"BBB"*], Defendants argued that *Cerven* and the MDL did not toll such claims until the Fourth Amended MDL Complaint was filed in 2020, *JetBlue Decision* at 2-3,[15]

---

[15] The Court may take judicial notice of the proceedings of other courts of record. *Clark v. Stone*, 998 F.3d 287, 297 n.4 (6th Cir. 2021). The combined decision denying defendants' motion to dismiss in *JetBlue* and *AAG* is attached hereto as Exh. 11. The decision denying defendants' motion to dismiss in *BBB* is attached hereto as Exh. 12 (adopting rationale from *JetBlue* and *AAG* decision).

and that damages prior to November 2, 2016 were time barred, *id.* at 9. Judge Proctor denied this argument as premature in all three cases. *Id.* at 8

Summarizing the procedural history of Blue-related antitrust litigation, the court noted the *Cerven* and MDL injunctive relief classes included "all persons or entities in the United States . . . insured by any health insurance plan that is currently a party to a license agreement with BCBSA." *Id.* at 3-5. The court also highlighted the substantial participation of ASOs in the MDL. *Id.*

It should be noted that the court emphasized that the commencement of the statute of limitations is a question of fact. *Id.* at 8 (quoting *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999)). The court stated that its analysis of the statute of limitations was "complicated by the fact the Opt Out Plaintiffs' claims were tolled for some period of time by the Subscriber class action cases in *In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406*." *Id.* at 9. As a result, the court found a genuine question as to when the statute of limitations began to run. *Id.* at 9. The court wrote:

> [I]t is not necessarily the complaint filed in a class action that determines for whom the statute of limitations is tolled. To the contrary, so long as a defendant is notified of the substantive claims being brought against them and the number and generic identities of the potential plaintiffs who may participate in the judgment, tolling is appropriate. . . . It would defy logic to conclude that, at least by the time they negotiated a settlement that included the ASOs, Defendants were not on notice of the claims alleged by the ASOs and that Defendants were not also informed of the number and "generic identities" of the ASOs. . . . At the very least, these facts raise a genuine issue of material fact as to the time period for which, and for whom, the statute of limitations was tolled by the Subscriber Track MDL under *American Pipe*. . . . Because it is not "apparent from the face of the complaint that [claims for damages before November 2, 2016 are] time-barred," "a Rule 12(b)(6) dismissal on statute of limitations grounds" is not appropriate. Moreover, at a minimum, there is a question of fact regarding the dates for which American Pipe tolling applies. Therefore, Defendants' Motions to Dismiss Certain Claims from Plaintiffs' Amended Complaints are DENIED.

*Id.* at 9-13 (internal citations omitted). Similarly, Ford's Complaint presents questions of fact making dismissal premature. Defendants' Motions to Dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Defendants have failed to meet their burden of showing that there exists no set of facts under which Ford would be entitled to relief. Ford pled antitrust injury in the form of a nationwide conspiracy to divide the market. Ford pled anticompetitive effects as a result of this conspiracy. Ford pled market power despite the fact that it is not required to. Moreover, Defendants' statute of limitations arguments would lead to absurd results in which antitrust defendants would be permanently immune from liability.[16] Ford respectfully requests that the Court deny Defendants' Motions to Dismiss.

Respectfully submitted,

/s/William A. Sherman, II
William A. Sherman, II
Sunni R. Harris
DINSMORE & SHOHL, LLP
801 Pennsylvania Avenue N.W.,
Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9100
william.sherman@dinsmore.com
sunni.harris@dinsmore.com
*Attorneys for Plaintiff Ford Motor Company*

---

[16] *Wholesale Grocery Prods. Antitrust Litig. v. DeLuca's Market Corp. (In re Wholesale Grocery Prods. Antitrust Litig.)*, 752 F.3d 728, 736 (8th Cir. 2014) ("If the [defendant's] logic were accepted, two parties could agree to divide markets for the purpose of raising prices, wait four years to raise prices, then reap the profits of their illegal agreement with impunity because any antitrust claims would be time barred. That is not the law.").

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2023, the foregoing document was filed with the Clerk of the Court via the Court's e-filing system, which will give notice of such filing to all parties of record.

/s/ William A. Sherman, II