# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FORD MOTOR COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No: 2:23-cv-11286 |
| BLUE CROSS BLUE SHIELD OF ) | |
| MICHIGAN MUTUAL INSURANCE ) | Judge: Hon. Linda V. Parker |
| COMPANY ) | |
| ) | Magistrate Judge: Hon. Elizabeth A. |
| and ) | Stafford |
| ) | |
| THE BLUE CROSS BLUE SHIELD ) | **ORAL ARGUMENT** |
| ASSOCIATION, ) | **REQUESTED** |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
<u>FORD MOTOR COMPANY'S COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

ARGUMENT .................................................................................................................. 1

I.      Payment of Higher Prices Alone Does Not Restart the Limitations Period ................................................................................................................. 1

II.     Even Under the *Per Se* Standard, Ford Cannot Plead Its Prices Are an Antitrust Injury Because They Flow from Lawful Use of Trademarks .......... 4

CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                            **Page(s)**

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)..................................................................................................5

*Axis, S.p.A. v. Micafil, Inc.*,
   870 F.2d 1105 (6th Cir. 1989) ................................................................................4, 5

*In re Blue Cross Blue Shield Antitrust Litig.*,
   2022 WL 3221887 (N.D. Ala. Aug. 9, 2022) (ECF No. 19-5)..............................5

*Clorox Co. v. Sterling Winthrop, Inc.*,
   117 F.3d 50 (2d Cir. 1997) .....................................................................................6

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013)................................................................................................6

*Gumwood HP Shopping Partners v. Simon Prop. Grp.*,
   221 F. Supp. 3d 1033 (N.D. Ind. 2016) ................................................................2

*Hodges v. WSM, Inc.*,
   26 F.3d 36 (6th Cir. 1994) .................................................................................4, 5

*J.B.D.L. Corp. v. Wyeth-Ayerst Lab'ys, Inc.*,
   485 F.3d 880 (6th Cir. 2007) .................................................................................6

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)................................................................................................1

*La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re
   Cardizem CD Antitrust Litig.)*,
   332 F.3d 896 (6th Cir. 2003) ............................................................................5, 6

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
   734 F.2d 705 (11th Cir. 1984) ...............................................................................2

*New York v. Facebook, Inc.*,
   549 F. Supp. 3d 6 (D.D.C. 2021)..........................................................................2

*Peck v. Gen. Motors Corp.*,
   894 F.2d 844 (6th Cir. 1990) .............................................................................1, 2

*Shain v. Advanced Techs. Grp.*,
    2017 WL 768929 (E.D. Mich. Feb. 28, 2017) (Parker, J.) (ECF No.
    19-7) .......................................................................................................... 4, 5, 6

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2013 WL 2181185 (E.D. Tenn. May 20, 2013) ................................................... 2

*Timken Roller Bearing Co. v. U.S.*,
    341 U.S. 593 (1951) ............................................................................................. 6

*Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992) ................................................................................ 7

*U. S. v. E. I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) ............................................................................................. 7

## CONTROLLING/MOST APPROPRIATE AUTHORITIES

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989)

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994)

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)

*Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984)

*New York v. Facebook*, 549 F. Supp. 3d 6 (D.D.C. 2021)

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990)

*Shain v. Advanced Techs. Grp.*, 2017 WL 768929 (E.D. Mich. Feb. 28, 2017)

*Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468 (3d Cir. 1992)

*U. S. v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956)

*Valley Prods. Co. v. Landmark, a Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997)

BCBSM has been doing business in Michigan since the 1940s. Ford has been doing business with BCBSM for years, yet did not sue until 2023 (and has since renewed its contract).[1] That long delay means that Ford cannot collect damages for historical conduct and its injunctive claim is stale. Ford's argument that BCBSM was engaged in a continuing, *per se* antitrust violation does not save its complaint.

## ARGUMENT

### I. Payment of Higher Prices Alone Does Not Restart the Limitations Period

Unless Ford plausibly pleads an additional Company could use the Blue Trademarks to bid for its national business during a permissible limitations period, its damages claim must be dismissed. Ford is wrong that its claim is timely because it allegedly continues to pay higher prices to BCBSM. Opposition ("Opp.") at PageID.523. The continuing violation doctrine does not permit recovery of *any* damages flowing from historical conduct. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 181 (1997). While the doctrine may permit the limitations period to begin again, it does so only when *additional conduct* occurs that causes new damage.[2] To state a timely claim, therefore, Ford must plausibly allege *both* the conduct causing its injury and any resulting damages occurred during the limitations period. Crucially,

---

[1] Capitalized terms have the meaning ascribed to them in BCBSM's opening brief in support of its motion to dismiss. ECF No. 19 ("Mot.").

[2] *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (even for a continuing violation "an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act"); Mot. at PageID.400-01.

1

then, Ford can only recover for its injuries caused by conduct that *began* within a permissible limitations period; it cannot recover damages for current consequences (allegedly higher prices) flowing from historical conduct. *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714-15 (11th Cir. 1984); *Gumwood HP Shopping Partners v. Simon Prop. Grp.*, 221 F. Supp. 3d 1033, 1044-45 (N.D. Ind. 2016).[3]

Ford argues that each time it paid an artificially inflated price during the limitations period, a new claim accrued. Higher prices *can* cause new claims to accrue, but that is not always correct, *Peck*, 894 F.2d at 849; *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 42-43 (D.D.C. 2021), and it is not correct here. It depends on the nature of the challenged conduct that allegedly caused such high prices. In both the price-fixing and pharmaceutical reverse payment cases Ford cites, the high prices themselves were manifestations of the price-fixing agreements at issue, and therefore both the injury and the higher prices from the challenged conduct were one and the same.[4] *See* Opp. at PageID.523-24 (citing *Geico* and *In re Skelaxin*).

---

[3] Ford says *Gumwood* has "no bearing" on its claim, but does not explain why and simply identifies superficial distinctions. Opp. at PageID.521-22. None of which change the principles of black letter law the case sets forth.

[4] The reverse payment cases are also different than this case because in each of those cases there was a ready, willing, able, and indeed, *declared* entrant to the market that would immediately step in and sell a competing product at a lower price absent the agreement. *See* Opp. at PageID.523-24; *see, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185, at *8 (E.D. Tenn. May 20, 2013).

2

The same is not true here; allegedly higher prices paid by Ford are not manifestations of the license agreements nor do they automatically flow from those agreements (which regulate use of the Blue Trademarks). Instead, Ford complains of a derivative harm from a hypothetical failure of one or more other Companies to use the Blue Trademarks to sell national insurance. As explained previously, Ford is not entitled to an additional Blue bidder as a matter of law. Mot. at PageID.394-95.

Nevertheless, to plead a timely claim, Ford must allege two circumstances *began* within a permissible limitations period: (1) a competing national Blue competitor would have materialized, but was prevented by the challenged agreements; and (2) higher prices to Ford resulted. While Ford quibbles about labeling its claim as one of "blocked entry," under its theory Ford cannot dispute that an additional bidder using the Blue brand would actually need to enter the national account market *to lower Ford's prices*. Without such an additional Blue competitor, Ford has no injury. Nowhere in Ford's complaint does it allege when that would have occurred (let alone that Company's identity or how it would have acquired the right to use the Blue brand nationally or in Michigan). And Ford certainly does not plausibly allege that this hypothetical additional bidder would or even could have developed during any applicable limitations period.[5]

---

[5] Ford's injunctive claim is also barred by laches for the reasons previously explained. Mot. at PageID.403-05. Because the Blues System has been open and public since its inception, Ford's argument that it did not have knowledge of its

3

## II. Even Under the *Per Se* Standard, Ford Cannot Plead Its Prices Are an Antitrust Injury Because They Flow from Lawful Use of Trademarks

A plaintiff can establish an antitrust injury only if its allegedly higher prices flowed from unlawful conduct. Ford's generalized claim that it suffered an injury because it alleges a *per se* antitrust violation does not meet this standard. Controlling Sixth Circuit precedent holds that a plaintiff cannot establish antitrust injury if the higher prices it paid flowed from some other lawful source, such as property rights or legal regulations. *See, e.g.*, *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111 (6th Cir. 1989); *Hodges v. WSM, Inc.*, 26 F.3d 36, 39 (6th Cir. 1994); *see also Shain v. Advanced Techs. Grp.*, 2017 WL 768929, at *5 (E.D. Mich. Feb. 28, 2017) (Parker, J.) (collecting cases) (ECF No. 19-7).

Here, Ford does not seriously argue that any Company ever had the right to use the Blue Trademarks nationwide, much less that multiple Companies would have that right.[6] Instead, Ford sheepishly buries in a footnote an unpleaded (and unfounded) "belie[f]" that there is some undefined issue with BCBSM's historical trademark use.[7] Opp. at PageID.517 n.4. Regardless, Ford can never plausibly allege

---

claim, Opp. at PageID.526-27, is particularly implausible and undercuts the argument that Ford suffered any injury at all. Mot. at PageID.382-83, 405.

[6] BCBSM's opening brief focuses on Michigan because that is where BCBSM operates and Ford is headquartered (meaning Ford has many employees there), Mot. at PageID.382, but its arguments are likewise applicable elsewhere.

[7] Ford also misrepresents the MDL court's holding about common law trademarks. Ford cites the portion of the MDL court's opinion stating it was unnecessary to determine the "exact nature or extent of the Blue Plans' common law rights," but

4

an antitrust injury because neither BCBSM nor any other Company has the right under trademark law to serve as an additional Blue bidder for Ford's nationwide business. A trio of on point Sixth Circuit cases finding no antitrust injury at the pleading stage (and under *more* extreme examples of supposed exclusion) mandate dismissal here.[8] Mot. at PageID.387 (citing *Hodges*, *Axis*, and *Valley*).

The remainder of Ford's arguments are easily rejected. *First*, Ford conflates the *per se* standard of review with the separate element of antitrust injury. Opp. at PageID.513. These are distinct inquiries and the Supreme Court has held the antitrust injury element should be given *more scrutiny* when the *per se* standard applies because even if conduct is determined to be *per se* unlawful, it does not necessarily follow that the plaintiff was injured by the violation. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344-45 (1990); *see Shain*, 2017 WL 768929, at *5.

---

omits that the court first held that "Plans had at least some sort of preexisting common law trademark rights to the Blue Marks before the License Agreements." *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 3221887, at *4, *6 (N.D. Ala. Aug. 9, 2022) (ECF No. 19-5).

[8] Ford's half-hearted attempt to brush aside these cases includes criticizing that their facts are not identical and stating *Axis* does not "concern" antitrust injury, despite it being a seminal Sixth Circuit case on antitrust injury. *See* Opp. at PageID.517; *see Axis*, 870 F.2d at 1105-11 (using the phrase "antitrust injury" 31 times). Even *In re Cardizem*, cited by Ford, acknowledges the same legal principle as these cases. *See* Opp. at PageID.515 (quoting *La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re Cardizem CD Antitrust Litig.)*, 332 F.3d 896, 911 (6th Cir. 2003)). Further, the *Cardizem* court acknowledged *Axis*, *Hodges*, and *Valley*, and does not cast doubt on those cases—it merely did not accept defendants' interpretation of them as applied to the facts of that case. *In re Cardizem*, 332 F.3d at 911-14.

5

*Second*, Ford claims the antitrust injury element exists so that "one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition." Opp. at PageID.514 (quoting *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007)). That certainly is *a* purpose of the antitrust injury requirement, but the requirement applies in all types of antitrust cases. *See, e.g.*, *J.B.D.L. Corp. v. Wyeth-Ayerst Lab'ys, Inc.*, 485 F.3d 880, 887 (6th Cir. 2007). Courts routinely dismiss antitrust claims made by customers against suppliers when the alleged harm flows from some other lawful source. *See, e.g.*, *Shain*, 2017 WL 768929, at *1.[9]

*Third*, Ford wrongly argues that the Supreme Court's *Timken* case supports its position. *Timken* had nothing to do with antitrust injury because it was a case brought by the government, which does not need to show antitrust injury. Furthermore, the issue in *Timken* was not that a trademark licensing agreement existed; it was that the trademark licensing agreement was a sham to disguise a worldwide price-fixing agreement and "provided for control of the manufacture and sale of antifriction bearings whether carrying the [trade]mark or not." *Timken Roller Bearing Co. v. U.S.*, 341 U.S. 593, 598-99 (1951); *cf. Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 60 (2d Cir. 1997) (distinguishing *Timken* as a case

---

[9] Ford's "competitor-cases-only" theory of antitrust injury is remarkable given that the primary case it relies for the application of the *per se* standard examines antitrust injury *in a consumer case*. *In re Cardizem*, 332 F.3d at 899-900. BCBSM also notes that the *Cardizem* court's *per se* holding was overruled by the Supreme Court in *FTC v. Actavis, Inc.*, 570 U.S. 136, 159 (2013).

6

involving trademarks that were "auxiliary to an underlying illegal agreement between competitors"). Nothing even close to that is, or could be, alleged here.

At its core, Ford is complaining about the regulation of a single brand, and it never pleads why having multiple Blue bidders is so important or better than any other brand of competitor.[10] Moreover, Ford cannot avoid that no Company has the right to use the Blue brand nationwide. Without such a Company, Ford cannot plead that its injury—necessarily predicated on the existence of multiple Blue-branded bidders for Ford's national account business—flowed from any *unlawful* conduct.

## CONCLUSION

Accordingly, BCBSM's motion to dismiss should be granted with prejudice.

Dated: October 12, 2023                                         Respectfully submitted,

SHEARMAN & STERLING LLP
By: */s/ Todd M. Stenerson*

---

[10] Ford's desire for multiple Blue-branded bidders, despite Ford admitting in its complaint that there are other interchangeable competitors with the Blues System in the national accounts market, means that Ford is really alleging harm in a market for *Blue-branded insurance*. This is fatal to Ford's claims (a) that there was any anticompetitive harm at all and (b) that BCBSM has market power in a properly defined market. Mot. at PageID.391-96; *see Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479-80 (3d Cir. 1992) ("The plaintiffs do not contend, nor seriously could they, that Chrysler's patents on several car components make Chrysler cars a one-brand market or give Chrysler any market power. . . . Despite Chrysler's trademark, GM, Ford, Toyota, Honda, and other auto manufacturers are perfectly capable of producing functionally similar and competitive products."); *U. S. v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 392-93 (1956) (stating that even if no one else makes a product of the same "quality or attractiveness," the power that "automobile or soft-drink manufactures have over their trademarked products" does not equate to illegal monopoly power).

7

Todd M. Stenerson (P51953)
Brian Hauser (*application for admission forthcoming*)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com
brian.hauser@shearman.com

Rachel Mossman Zieminski (*admitted in E.D. Mich.*, Texas Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777
rachel.zieminski@shearman.com

Susan Loeb (*admitted in E.D. Mich.*, New York Bar 5570940)
Sophie Copenhaver (*admitted in E.D. Mich.*, New York Bar 6004766)
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
susan.loeb@shearman.com
sophie.copenhaver@shearman.com

Sarah L. Cylkowski (P75952)
Alexandra C. Markel (P81705)
BODMAN PLC
6th Floor at Ford Field
1901 Saint Antoine Street
Detroit, Michigan 48226
(313) 392-1077
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ Todd M. Stenerson*
Todd M. Stenerson (P51953)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

*Attorney for Defendant Blue Cross Blue Shield of Michigan*