UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

                                          Civil Case No. 23-11286

        Plaintiff,                       Honorable Linda V. Parker

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN MUTUAL
INSURANCE COMPANY and
THE BLUE CROSS BLUE
SHIELD ASSOCIATION,

        Defendants.

_____/

## <u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 19, 20) UNDER RULE 12(b)(6)</u>

These matters are before the Court on Blue Cross Blue Shield of Michigan

Mutual Insurance Company ("Defendant BCBSM") and The Blue Cross Blue

Shield Association ("Defendant BCBSA") (collectively "Defendants")'s motions

to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF

Nos. 19-20)[1] Plaintiff Ford Motor Company (hereinafter "Ford")'s complaint

which alleges violations of the Sherman Act, 15 U.S.C. §§ 1–7.

_____

[1] Defendant BCBSM incorporates the arguments asserted in Defendant BCBSA's
brief in support of dismissal.  (ECF No. 19 at PageID. 370-71.)  Additionally,
while neither Defendant BCBSM nor Ford attached to their filings certificates of
(cont'd …)

The motions have been fully briefed.  (ECF Nos. 19-20, 23-25.)[2]  Finding

the facts and legal arguments adequately presented in the parties' filings, the Court

is dispensing with oral argument pursuant to Eastern District of Michigan Local

Rule 7.1(f).  For the following reasons, the Court is granting in part and denying in

part Defendants' motions to dismiss.

## I.      Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of

the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  To survive a motion to dismiss, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if

it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

---

compliance with Local Rule 5.1, Ford's response brief (ECF No. 23) fails to
comply with Local Rule 5.1(a)(3)'s font size requirements.  *See* Local Rule
5.1(a)(3) ("Except for standard preprinted forms that are in general use, type size
of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-
proportional) or 14 point (proportional).")
[2] The Court also considered the supplement authority filed by the parties.  (ECF
Nos. 27-29.)

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside of the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However,

3

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "Such public records that a court may consider include documents from other court proceedings." *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialist, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) (citation omitted).

## II.    Factual Background

Ford is one of the largest automobile manufacturers in the United States and has over 170,000 employees worldwide.  (ECF No. 1 ¶ 15.)  Defendant BCBSA is a corporation owned and controlled by thirty-six health insurance plans that operate under the Blue Cross Blue Shield ("BCBS") trade names and trademarks.  (*Id.* ¶ 17.)  Defendant BCBSM is the exclusive health insurance plan operating under the BCBS trade names and trademarks in the State of Michigan.  (*Id.* ¶ 16.)  It is also one of the thirty-six health insurance plans that make-up Defendant BCBSA.  (*Id.* ¶ 17.)

Ford's complaint, in part, relates to a multi-district class action litigation styled as *In re Blue Cross Blue Shield Antitrust Litig.*, 2:13-CV-20000-RDP (N.D.

4

Ala.), where claims against the named Defendants, as well as others, were alleged for violations of the Sherman Act.  (*Id.* ¶ 4.)

Here, Ford alleges that Defendants, as part of a larger conspiracy, have divided territory and fixed prices, while reducing competition and increasing the cost of health services.  (*Id.* ¶ 1.)  Specifically, it alleges that Defendants conspired to restrict output and to allocate customers across the United States, which resulted in it being overcharged for the commercial health insurance products it purchased from certain BCBS entities ("BCBS Entities"), including Defendant BCBSM and other nonparty entities.  (*Id.* ¶ 2.)  It also alleges that BCBS Entities use the Blue Cross Blue Shield trademark and license ("BCBS Licensees").  (*Id.* ¶ 8.)

Specifically, Ford asserts that it purchased health insurance products offered by Defendant BCBSM, including: (a) traditional insurance products in which it paid a premium in exchange for BCBS Entities insuring employee plan members against the cost of medical care; and (b) Administrative Services Only ("ASO") products, whereby it purchased administrative services from BCBS Entities and an account funded by Ford (that is, a self-funded account) paid for or reimbursed the costs of medical care.  (*Id.* ¶ 7.)  It alleges that Defendants successfully conspired with BCBS Licensees to create Exclusive Service Areas ("ESAs") – geographic boundaries in which all other BCBS Licensees would not compete – making each individual BCBS Licensee the exclusive provider of certain insurance products and

5

services in that territory.  (*Id.* ¶ 8.)  It further alleges that this reduces the overall number of insurers in one region, thereby reducing competition between the BCBS Licensees.  (*Id.*)

In summary, Ford contends that Defendants engaged in a horizontal conspiracy to divide geographic territory, resulting in it paying higher premiums for traditional insurance products and higher fees and costs for ASO services.  (*Id.* ¶ 9.)  The horizontal conspiracy, it alleges, is the result of two rules: (1) the Local Best Efforts Rule; and (2) the National Best Efforts Rule.  (*Id.* ¶¶ 43-44.)

The Local Best Efforts Rule reads that: "[a]t least 80% of the annual Combined Local Net Revenue of a controlled affiliate attributable to health care plans and related services . . . offered within the designated Service Area must be sold, marketed, administered or underwritten under the Licensed Marks and Names." (*Id.* ¶ 43.)  Ford alleges that this Rule discourages the ability of each BCBS Licensee to generate revenue from non-Blue Brand business within its ESA. (*Id.* ¶ 62.)

The National Best Efforts Rule reads that: "[a]t least 66 2/3% of the annual Combined National Net Revenue of the Controlled Affiliate[] attributable to health care plans and related services . . .  must be sold, marketed, administered or

underwritten under the Licensed Marks and Names." (*Id.* ¶ 44.)[3]  Ford argues that the National Best Efforts Rule also discourages each BCBS Licensee from both developing substantial non-Blue Brand business and competing outside of its ESA. (*Id.* ¶¶ 63, 64.)

Ford continues by alleging that a BCBS Licensee's failure to comply with the above rules could result in discipline up to and including termination of a member plan's license.  (*Id.* ¶ 49.)  It alleges that this is a powerful incentive to remain in the Association, as a terminated BCBS Licensee would lose the right to use the Blue Brand and would also be required to fund the establishment of a competing Blue Brand health insurer in its ESA.  (*Id.* ¶ 50.)

Lastly, Ford alleges that the above restrictions are per se violations of the Sherman Act.  (*Id.* ¶ 66.)  Arguing specifically that the inability of BCBS Licensees to generate revenue outside of their ESAs constitutes horizontal agreements between competitors to divide and allocate geographic markets are violations of the Sherman Act.  (*Id.*)  Ford now brings the instant complaint alleging two violations of § 1 of the Sherman Act: (1) claims arising from its purchase of health insurance; and (2) claims arising from its purchase of ASO

---

[3] Ford argues that the National Best Effort Rule was repealed in 2022 but the restrictions are still in place.  (*See* ECF No. 1 ¶ 66, n.22.)

products.  (*Id.* ¶ 121.)  In addition to damages, Ford also seeks injunctive relief.

(*Id.* ¶ 123(e).)

### A.     Parties' Arguments

Defendants label their motions as seeking dismissal pursuant to Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim, but their first argument

seeks dismissal for lack of standing for failing to argue an antitrust injury.  Their

remaining arguments state that Ford: (a) fails to allege an anticompetitive effect;

(b) fails to allege market power; and (c) its claims are timed barred by both the

statute of limitations and the laches doctrine.  They further argue that the

"continuing violation" doctrine does not apply.

In response, Ford argues that: (1) it has sufficiently pled an antitrust injury

through allegations of a horizontal conspiracy; (2) it pled anticompetitive effects;

(3) despite it being unnecessary, pled market power; and (4) its claims are not time

barred.  The Court will address each in turn.

### III.    Applicable Law and Analysis

The antitrust laws of the United States aim to protect consumers by

maintaining competitive markets.  To that end, § 1 of the Sherman Act prohibits

agreements that unreasonably restrain trade by restricting production, raising

prices, or otherwise manipulating markets to the detriment of consumers.  *See* 15

U.S.C. § 1; *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); *Apex Hosiery Co. v.*

8

*Leader*, 310 U.S. 469, 493 (1940).  The Supreme Court has recognized that certain horizontal agreements "always or almost always tend to restrict competition and decrease output."  *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 19–20 (1979).

Examples of "horizontal agreements" include agreements between competitors to divide markets, refuse to deal, and fix prices.  *See, e.g., United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927) ("The aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition. . . . Agreements which create such potential power may well be held to be in themselves unreasonable or unlawful restraints"); *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972) ("One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition"); *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 293 (1985) ("'Group boycotts' are often listed among the classes of economic activity that merit per se invalidation under § 1").[4]

### A.    Antitrust Injury

Ford must first establish that it has standing.  Defendants argue that Ford lacks standing as it has failed to establish an antitrust injury.  The Supreme Court

---

[4] "Group boycotts" are "concerted refusals by traders to deal with other traders." *Com-Tel, Inc. v. DuKane, Corp.*, 669 F.2d 404, 408 n.4 (1982) (quoting *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959) (footnote deleted)).

has described the "antitrust injury" requirement as a "necessary, but not always

sufficient" component of antitrust standing.  *Cargill, Inc. v. Monfort of Colo., Inc.*,

479 U.S. 104, 110 n.5 (1986).  Where a complaint fails to establish an antitrust

injury, the court must dismiss it as a matter of law.  *NicSand, Inc. v. 3M Co.*, 507

F.3d 442, 450 (6th Cir. 2007) (en banc) (explaining that "antitrust standing is a

threshold, pleading-stage inquiry and when a complaint by its terms fails to

establish this requirement we must dismiss it as a matter of law—lest the antitrust

laws become a treble-damages sword rather than the shield against competition-

destroying conduct that Congress meant it to be").

To establish an antitrust injury, a plaintiff must show an "injury causally

linked" to an alleged anti-competitive practice and that the injury is "of the type

the antitrust laws were intended to prevent and that flows from that which makes

the defendants' acts unlawful."  *Cargill*, 479 U.S. at 109 (quoting *Brunswick Corp.

v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  "[E]ven though a

claimant alleges that an injury is 'causally related to an antitrust violation,' it 'will

not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect

of the practice under scrutiny.'"  *NicSand*, 507 F.3d at 451 (quoting *Atl. Richfield

Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

Here, Ford alleges that its injury—paying higher premiums for traditional

insurances products and higher fees and costs for ASO services—is the result of a

"horizontal agreement" between the Defendant BCBSA and its members, including Defendant BCBSM.  Defendants argue that Ford's injury, if any, is foreclosed as a matter of trademark law as any injury is a function of the lawful use and management of trademarks and not any anticompetitive effect.

"An agreement 'between competitors at the same level of the market structure' is horizontal."  *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 272 (6th Cir, 2014) (quoting *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 F. App'x. 181, 191 (6th Cir. 2001)).  Horizontal agreements or restraints have been characterized as "naked restraints of trade with no purpose except stifling competition."  *Com-Tel, Inc. v. DuKane, Corp.*, 669 F.2d 404, 409 (6th Cir. 1982) (internal citation omitted).  Moreover, "paying higher prices for a product due to a lack of competition in the market[] is the kind of injury that can . . . flow from the anticompetitive effects of . . . []a horizontal market allocation agreement[]."  *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 (6th Cir. 2003).  Ford's alleged injury of paying higher prices as a result of a "horizontal agreement" amongst and between Defendants is the type of injury the Sherman Act sought to prevent.

Additionally, while Defendants argue that Ford's injury is foreclosed as a matter of trademark law, the Supreme Court has stated that a "trademark cannot be legally used as a device for [a] Sherman Act violation.  Indeed the Trade Mark Act of 1946 itself penalizes use of a mark 'to violate the antitrust laws of the United

11

States.'" *Timken Roller Bearing Co. v. U.S.*, 341 U.S. 593, 599 (1951) (quoting 15 U. S. C. § 1115(b)(7)) *modified on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)).  Therefore, Ford's complaint has adequately alleged an antitrust injury.

### B.    Market Power and Anticompetitive Effect

To establish a violation of § 1 of the Sherman Act, a plaintiff must demonstrate that there is: 1) an agreement, which may be in the form of a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) that imposes an unreasonable restraint on trade.  *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022) (citing *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983)).

Ford's complaint met the first element by adequately alleging an agreement between parties to divide markets and restrict trade.  Such agreements are inherently anticompetitive and are per se violations of the Sherman Act.  Moreover, once a horizontal agreement has been established, no further inquiry into the practice's effect on the market or the parties' intentions is required to establish a § 1 Sherman Act violation.  *N. Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958 ("This principle of per se unreasonableness . . . avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire

history of the industry involved . . . an inquiry so often wholly fruitless when undertaken.").

### i.   Market Power

Typically, "a plaintiff must show that the defendant has market power in order to show an unreasonable restraint of trade." *Lie v. St. Joseph Hosp. of Mount Clemens, Mich.*, 964 F.2d 567, 568 (6th Cir. 1992).  Section 1 of the Sherman Act is concerned with firms that exercise market power – a "special ability . . . to force [a contracting partner] to do something that he would not do in a competitive market." *Jefferson Par. Hosp. Dist. No. 2 v.* Hyde, 466 U.S. 2, 13-14 (1984) *abrogated on other grounds by Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006).  As it pertains to market power, the Court must determine if the complained of restraint is unreasonable.  The Supreme Court has held that:

> Section 1 of the Sherman Act prohibits every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States. This Court has long recognized that, in view of the common law and the law in this country when the Sherman Act was passed, the phrase 'restraint of trade' is best read to mean 'undue restraint.' This Court's precedents have thus understood § 1 to outlaw only *unreasonable* restraints.

*Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) (emphasis in original) (internal citation and quotations removed).

Determining if a restraint is unreasonable rests on either a per se rule or the "rule of reason." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey*

13

*Club*, 419 F.3d 462, 469 (6th Cir. 2005).  "Typically, 'horizontal' restraints—

restraints 'imposed by agreement between competitors'— qualify as unreasonable

per se." *Am. Express*, 585 U.S. at 540-41 (quoting *Bus. Elecs. Corp. v. Sharp*

*Elecs. Corp.*, 485 U.S. 717, 723 (1988)).  "The rule of reason requires courts to

conduct a fact-specific assessment of 'market power and market structure . . . to

assess the [restraint]'s actual effect' on competition." *Id.* (quoting *Copperweld*,

467 U.S. at 768).

Here, Ford complains of a per se violation.  An analysis of market power is

not required.  *See Lie*, 964 F.2d at 569 (6th Cir. 1992) (internal citation and

quotation omitted) ("The Court does not demand this inquiry into market power in

the presence of a naked restriction on price or output, and thus, does not allow

failure to prove market power to defeat a plaintiff's antitrust action in such a

case."); *see also White Motor Co. v. U.S.*, 372 U.S. 253, 263 (1963) ("Horizontal

territorial limitations . . . are naked restraints of trade.").

Additionally, Ford's complaint pled market power despite not needing too.

(*See* ECF No. 23 at PageID. 519.)  Therefore, Defendants' argument that Ford

failed to adequately plead is without merit.

## ii.   **Anticompetitive Effect**

The Court has found that Ford has adequately alleged a horizontal agreement

between parties, a per se violation of the Sherman Act, making an analysis into the

14

anticompetitive effects of the agreement unnecessary.  "Anticompetitive effect on the market is necessary unless the action is found to be a per se violation of the Sherman Act."  *Found. For Interior Design Educ. Rsch. V. Savannah Coll. Of Art and Design*, 73 F. Supp. 2d 829, 835 (W.D. Mich. 1999) (citing *Stratemore v. Goodbody*, 866 F.2d 189, 194 (6th Cir. 1989)).  "If a court determines that a practice is illegal per se, further examination of the practice's impact on the market or the procompetitive justifications for the practice is unnecessary for finding a violation of antitrust law."  *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 342 (6th Cir. 2006) (internal citation omitted); *see also Lie*, 964 F.2d at 570 ("No one argues that [Plaintiff]'s case involves a per se violation of the antitrust laws, making unnecessary an analysis of the anticompetitive effect of the agreement at issue.").

Here, Ford has adequately alleged a "horizontal agreement" amongst and between Defendants which is a per se violation of the Sherman Act.  "Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se without inquiry into the harm it has actually caused."  *In re Cardizem*, 332 F.3d at 907 (quoting *Copperweld*, 467 U.S. at 768); *see also Hobart-Mayfield*, 48 F.4th at 666 (quoting *In re Cardizem*, 332 F.3d at 906) ("If the per se rule is applicable then 'no consideration is given to the intent behind the restraint, to any claimed pro-competitive justifications, or to

15

the restraint's actual effect on competition.'"). As a result, Ford need not allege an anticompetitive effect from the agreement.

The complaint, therefore, does not fail to state a claim. Defendants, however, argue that all of Plaintiff's claim are time-barred by either the statute of limitations or the laches doctrine.

### C.     Time-Barred Claims

Pursuant to the Clayton Act, 15 U.S.C. § 15(a), private parties may bring private actions for violation of the Sherman Act. *Static Control Components, Inc. v. Lexmark Intern.*, Inc., 697 F.3d 387, 401 (6th Cir. 2012). The controlling section of the statute provides that "[a]ny action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b.

Defendants argue that Ford's claims are time barred for four reasons: (1) Ford's blocked entry claim is barred by the statute of limitations; (2) the continuing violation doctrine does not apply; (3) the laches doctrine bars injunctive relief; and (4) Ford's ASO claims were not contemplated until 2020. The Court will address each in turn.

### i.     Statute of Limitations and Continuing Violation

Defendants' statute of limitations challenge is an affirmative defense that must be set forth in response to a complaint. *See* Fed. R. Civ. P. 8(c)(1). A

plaintiff need not plead around such affirmative defenses, and "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, dismissal under Rule 12(b)(6) is appropriate where "the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* Here, it is Ford's burden to affirmatively "plead circumstances which would indicate why [the events giving rise to a claim] w[ere] not discovered earlier" or "why the statute [of limitations] should be tolled." *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987) (alterations added).

While Ford's complaint does allege Defendants' conduct "limit[s] the entry of competitor health insurance companies into the market," (*see* ECF No. 1 ¶ 120), it also alleges a conspiracy to horizontally allocate territory and restrict output (*id.* ¶ 9). This alleged conspiracy resulted in Ford overpaying for healthcare services, which, it argues, is an overt act.

"A cause of action accrues when a defendant commits an act that injures the plaintiff's business. Courts look to a defendant's overt acts, rather than the effects of those acts." *Re/Max Intern., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1021 (6th Cir. 1999) (internal citations omitted). "For statute of limitations purposes . . . the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as

17

opposed to the effects of the overt acts." *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (per curiam).

An overt act must be comprised of two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff. *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). "Acts that simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." *Id.* at 467-68 (internal citations and quotations omitted); *see Peck*, 894 F.2d at 849 (holding that conduct causing injuries that have a rippling effect into the future does not constitute a continuing violation).

Ford has specifically argued that these violations are continuous. (ECF No. 23 at PageID. 523.) "A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded." *DXS, Inc.*, 100 F.3d at 467 (citing *Peck*, 894 F.2d at 849). "When a continuous antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." *Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 82 (6th Cir. 1981). Further, "when a plaintiff alleges a continuing violation, an overt act by the defendant is required to

restart the statute of limitations and the statute runs from the last overt act." *Peck*, 894 F.2d at 849 (quoting *Pace Indus., Inc.*, 813 F.2d at 237).

Accepting these allegations as true, as the Court is required to do for the purposes of these motions, Ford has adequately pled a continuous violation of an overt act. Ford has alleged that Defendants' conspiracy resulted in it paying a supra-competitive, or unreasonably high, premium and fee. As a result, each allegedly wrongful payment would constitute a new cause of action. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 837 (E.D. Mich. 2018) ("Defendants committed an overt act in furtherance of the conspirac[y] each time they sold an Auto Part to an OEM"); *see also In re Se. Milk*, 555 F. Supp. 2d at 937 (finding a continuing conspiracy based on the annual renewal of full supply agreements). Ford claims that these payments occur on a monthly basis. (ECF No. 1 ¶ 122.) Therefore, Ford's claims of paying higher premiums as a result of the alleged conspiracy are not barred by the statute of limitations, as they would restart after each new payment.

### ii. ASO Claims

Turning to Ford's ASO claims, Defendants claim that Ford raised these claims for the first time on November 2, 2020 as part of its Fourth Amended Complaint in its *In re Blue Cross Blue Shield Antitrust Litig.*, 2:13-CV-20000-RDP

(N.D. Ala.).  They further state that all of Ford's ASO claims should be limited to the four years prior to them being first raised on November 2, 2020.

Ford argues that these claims were raised for the first time in a separate MDL case in the Western District of North Carolina, styled as *Cerven v. Blue Cross Blue Shield of N.C.*, No. 5:12-cv-00017 (W.D.N.C.), which was transferred to the Northern District of Alabama, and similarly styled as *Cerven v. Blue Cross Blue Shield of N.C.*, No. 2:12-cv-04169 (N.D. Ala.).  It further argues that it should be given the benefit of class action tolling as proscribed by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), from the date of the 2012 *Cerven* complaint, allowing its ASO claims from 2008 to be litigated.

"[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Once the class action is filed, the statute of limitations remains tolled until class certification is denied.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).  In addition, the statute of limitations is tolled only for those claims for which the defendant received notice in the original class action.  *Id.* at 355 (Powell, J. concurring) ("Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.").

20

"However, the first step is to determine whether [plaintiff]'s claims were part of the original class definition . . . and thereby benefit from *American Pipe* tolling." *Machesney v. Ramsgate Ins., Inc.*, No. 13-11804, 2014 WL 2605479, at *3 (E.D. Mich. June 10, 2014). The *Cerven* complaint defined the proposed class as follows:

> All persons or entities who, from February 7, 2008 to the present (the "Class Period") have paid health insurance premiums to BCBS-NC for individual or small group full-service commercial health insurance.

(ECF No. 23-2, PageID. 543 ¶ 22.) The *Cerven* complaint went on to define differences between full-service, single-service, and ASO products:

> Full-service versus single-service health insurance: *Full-service* health insurance provides coverage for a wide range of medical and surgical services provided by hospitals, physicians, and other health care providers. In contrast, *single-service* health insurance provides narrow coverage restricted to a specific type of health care, e.g., dental care. Single-service health insurance is sold as a compliment to full-service health insurance when the latter excludes from coverage a specific type of health care, e.g., dental care. Thus, full-service health insurance and single-service health insurance are not substitutes.

> *       *       *

> Fully-insured health insurance versus ASO products: When a consumer purchases a *fully-insured* health insurance product, the entity from which the consumer purchases that product provides a number of services: it pays its enrollees' medical costs, bears the risk that its enrollees' health care claims will exceed its anticipated losses, controls benefit structure and coverage decisions, and provides "administrative services" to its enrollees, e.g., processes medical bills and negotiates discounted prices with providers. In contrast, when a consumer purchases an *administrative services* only ("ASO") product, sometimes known as "no risk," the entity from which the consumer purchases that

21

product provides administrative services only. Therefore, fully-insured health insurance products and ASO products are only substitutes for those consumers able to self-insure, i.e., able to pay their own medical costs and bear the risk that claims will exceed their anticipated losses.

(*Id.* ¶¶ 127, 129) (emphasis in original).  Here, the proposed class definition sought to include only those who purchased "full-service" commercial health insurance, not "administrative services only" products.  Therefore, Ford's ASO claims were not included in the class definition for which it seeks tolling.

Ford's argument that conduct during discovery shows that litigation contemplated ASO claims is unconvincing.  It does not provide any legal support for this conclusion.  Further, the Alabama MDL court in *In re Blue Cross Blue Shield Antitrust Litig.*, reached the same conclusion, holding:

The *Cerven* complaint plainly did not contemplate ASOs being part of that case or the relevant class. '[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted.' The *Cerven* complaint simply gave no notice to Defendants whatsoever that they would have to defend against alleged misconduct in the ASO market. So, ASOs cannot get the benefit of the *Cerven* filing date.

*In re Blue Cross Blue Shield Antitrust Litig.*, 2:13-cv-20000-RDP, 2022 WL 4587618, at *31 (N.D. Ala. Aug. 9, 2022) (internal citation and quotation omitted), *aff'd* 85 F.4th 1070 (11th Cir. 2023).

Ford's claims for antitrust violations related to ASOs were not a part of the original class definition for which it now seeks relief and therefore cannot benefit from *American Pipe* tolling.  As a result, Ford's claims related to ASOs are barred

by the statute of limitations.  The Fourth Amended Complaint, however, clearly intended for ASOs to be included and claims four years prior to that will be tolled. Defendants concede this point.  (ECF No. 20 at PageID. 481.)  The Fourth Amended Complaint asserted claims against Defendant BCBSM related to ASO products.  The same claims that Ford asserts against it now.  Ford designated a class member to be a part of the MDL before opting out of the proposed settlement to pursue their own claims.  (ECF No. 1 ¶ 6.)  Class action tolling therefore applies.

### iii.   Injunctive Relief Claims

Lastly, turning to Ford's injunctive relief claims, Defendants argue that they are barred by the laches doctrine.  In this circuit, laches is a negligent and unintentional failure to protect one's rights.  *United States v. City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010).  "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it."  *Id.* (quoting *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)).  However, "if the statute of limitation has not elapsed, there is a strong presumption that plaintiff's delay in bringing the suit . . . is reasonable.  Only rarely should laches bar a case before the . . . statute has run."  *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 233 (6th Cir. 2007) (citations and quotation marks omitted).  The Court has previously

found that the statute of limitations on Ford's claims has not elapsed. Therefore, any delay by Ford is likely reasonable.

Further, Defendants misapply the prejudice prong of the laches doctrine. They argue that they would be prejudiced if equitable relief is awarded now, given the business decisions they have made in reliance on their ESAs. (ECF No. 19 at PageID. 404.) The prejudice prong of the laches doctrine refers to prejudice in producing a defense to a claim as a result of delay. *See MGA, Inc. v. Centri-Spray Corp.*, 639 F. Supp. 1238, 1242 (E.D. Mich. 1986) (emphasis added) ("A plaintiff's claim is barred by laches if he delays enforcing his rights for an unreasonable amount of time and the defendant has been **materially prejudiced by the delay**[]"); *see also Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1162 (6th Cir. 1988) (Milburn, J. dissenting) ("The prejudice prong of the laches analysis requires a showing that the defendant's chances of success have been diminished by loss of evidence or unavailability of witnesses.")

Defendants have not made a showing that the laches doctrine applies in this matter. The Court finds that Ford's claims for injunctive relief are not barred by the laches doctrine.

24

### IV.   Conclusion

Accordingly, Ford's complaint does not fail to state a claim for a violation of § 1 of the Sherman Act as it relates to its claims arising from the purchase of health insurance products.  However, Ford's claims related to the purchase of ASO products not identified in its Fourth Amended Complaint in the Alabama MDL, *In re Blue Cross Blue Shield Antitrust Litig.*, 2:13-CV-20000-RDP (N.D. Ala.), are barred by the statute of limitations, as those claims were not contemplated by the *Cerven* complaint.

**IT IS ORDERED** that Defendants' Motions to Dismiss Under Rule 12(b)(6) (ECF Nos. 19-20) is **GRANTED** in part and **DENIED** in part.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 30, 2024