**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FORD MOTOR COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY,<br><br>and<br><br>THE BLUE CROSS BLUE SHIELD ASSOCIATION,<br><br>Defendants. | Civil Action No.: 2:23-cv-11286-LVP-EAS<br><br>District Judge: Hon. Linda V. Parker<br><br>Magistrate Judge: Hon. Elizabeth A. Stafford |

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSM") and Blue Cross Blue Shield Association ("BCBSA") (together, "Defendants"), by their undersigned counsel, submit this motion for summary judgment of Plaintiff Ford Motor Company's ("Ford") Complaint, pursuant to Federal Rule of Civil Procedure 56.

In support of their motion, Defendants rely upon the authorities and arguments set forth in the incorporated brief, as well as all attachments. Further, pursuant to the terms of the Qualified Protective Order in this case, ECF 52, material submitted

in support of this motion has been designated "Confidential" by the producing party. As contemplated in ¶ 12 of the Qualified Protective Order, ECF 52, PageID.3698, Defendants file this motion, the associated brief, and exhibits under seal and will concurrently file a public version of the motion and brief, redacting only those portions of the motion, brief, and exhibits that have been designated as "Confidential." Within five business days of filing, Defendants will provide notice to each producing party of the fact of this filing, including the obligation that such party must file a motion to maintain seal pursuant to the Federal Rules of Civil Procedure and Local Rules 5.3 and 26.4, within fourteen days of receipt of such notice. Defendants shall re-file any material over which no such motion is filed thereafter.

In accordance with E.D. Mich. Local Rule 7.1(a), Defendants' counsel conferred with Ford's counsel to explain the nature and legal basis of this motion. Defendants requested Ford's concurrence in the relief sought herein but did not obtain Ford's concurrence.

Dated: October 23, 2026

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP
By: */s/ Karin A. DeMasi*
Karin A. DeMasi (*Adm. in E.D. MI.*, NY Bar 2831303)
Lauren R. Kennedy (*Adm. in E.D. MI.*, NY Bar 4932851)
Hannah L. Dwyer (*Adm. in E.D. MI.*,

BODMAN PLC
By: */s/ Alexandra C. Markel*
Alexandra C. Markel (P81705)
Sarah L. Cylkowski (P75952)
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
(313) 392-1088

NY Bar 5711841)
Two Manhattan West
375 Ninth Avenue, New York, NY 10001
(212) 474-1000
kdemasi@cravath.com
lkennedy@cravath.com
hdwyer@cravath.com

SCHENK & BRUETSCH PLC
Brian C. Summerfield (P57514)
211 West Fort Street
Suite 1410
Detroit, MI 48226
(313) 774-1000
brian.summerfield@sbdetroit.com

*Attorneys for Defendant Blue Cross Blue Shield Association*

amarkel@bodmanlaw.com
scylkowski@bodmanlaw.com

ALLEN OVERY SHEARMAN STERLING US LLP
Todd M. Stenerson (P51953)
Brian C. Hauser (*Adm. in E.D. MI*, D.C. Bar 1024406)
1101 New York Avenue, NW
Washington, D.C. 20005
(202) 508-8000
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski (*Adm. in E.D. MI*, TX Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777
rachel.zieminski@aoshearman.com

Susan Loeb (*Adm. in E.D. MI*, NY Bar 5570940)
Sophie Copenhaver (*Adm. in E.D. MI*, NY Bar 6004766)
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000
susan.loeb@aoshearman.com
sophie.copenhaver@aoshearman.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company*

**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FORD MOTOR COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY,<br><br>and<br><br>THE BLUE CROSS BLUE SHIELD ASSOCIATION,<br><br>Defendants. | Civil Action No.: 2:23-cv-11286-LVP-EAS<br><br>District Judge: Hon. Linda V. Parker<br><br>Magistrate Judge: Hon. Elizabeth A. Stafford |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

STATEMENT OF THE ISSUES ..................... vii

CONTROLLING OR MOST RELEVANT AUTHORITIES ..................... ix

INTRODUCTION ..................... 1

STATEMENT OF MATERIAL FACTS ..................... 3

LEGAL STANDARD ..................... 12

ARGUMENT ..................... 12

I. FORD CANNOT ESTABLISH AN "AGREEMENT" BETWEEN BCBSA AND THE BLUE PLANS FOR PURPOSES OF SECTION 1 ..................... 12

A. The Blues Are a "Single Entity" for the Purposes of Governing the Federal Blue Marks ..................... 13

B. The Challenged Conduct Falls Within the Function for Which the Blues Are a Single Entity ..................... 16

II. FORD CANNOT PROVE A RULE OF REASON CLAIM ..................... 18

III. FORD CANNOT PROVE INJURY CAUSED BY THE CHALLENGED CONDUCT ..................... 20

A. The Lack of Additional Blue-On-Blue Competition Would Not Change in Ford's But-For World ..................... 21

B. Ford's Theory of Harm Is Based Entirely on Speculation ..................... 25

IV. FORD'S CLAIMS ARE TIME-BARRED ..................... 30

A. Old Blocked Entry Is Time-Barred ..................... 31

B. Fully-Insured Claims Prior to November 2, 2016 Are Time-Barred ..................... 33

CONCLUSION ..................... 35

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795 (6th Cir. 2025) .......... 21, 25, 26

*Advance Stores Co., Inc. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643 (W.D. Ky. 1996) .......... 22

*Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564 (6th Cir. 2001) .......... 22

*Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010) .......... 13, 14, 16, 17

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) .......... 33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 12

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .......... 25

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) .......... 20, 21

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989) .......... 24

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) .......... 24

*Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261 (7th Cir. 1984) .......... 31

*Bubar v. Ampco Foods, Inc.*, 752 F.2d 445 (9th Cir. 1985) .......... 27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 12

*Chalmers v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 3628416 (2d Cir. Dec. 15, 2025) .......... 31

*Chancellor v. Coca-Cola Enters., Inc.*, 2008 WL 3307131 (S.D. Ohio Aug. 7, 2008) .......... 35

*Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593 (7th Cir. 1996) .......... 15

*City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268 (8th Cir. 1988) .......... 15, 18

*Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853 (11th Cir. 1998) .........19

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ............ 13, 14, 15, 1

8 *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983) ..............................

33 *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462 (6th Cir. 1996) ......................

31 *Elder–Beerman Stores Corp. v. Federated Dep't Stores, Inc.*, 459 F.2d 138 (6th Cir. 1972).....................................................................................26

*Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336 (6th Cir. 2006)...............18

*Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980 (6th Cir. 2001). 25, 26

*Farbenfabriken Bayer, A.G. v. Sterling Drug, Inc.*, 153 F. Supp. 589 (D.N.J. 1957) ..........................................................................................................32

*Franz v. Nat'l Football League*, 2026 WL 2922894 (S.D.N.Y. Sept. 29, 2026) ..........................................................................................................24

*FTC v. Endo Pharms., Inc.*, 82 F.4th 1196 (D.C. Cir. 2023)..................................24

*Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310 (6th Cir. 2007) ....................................................................................................31

*Health All. Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, 2017 WL 1209099 (E.D. Mich. Mar. 31, 2017)..................................................35

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994)..................................................23

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991) ....................................................................................................23

*Huron Valley Hosp., Inc. v. City of Pontiac*, 666 F.2d 1029 (6th Cir. 1981)..........26

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460 (9th Cir. 1993) ....................................................................................................27

*In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020) ..........................................................................................................24

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017)..........................................................................................24

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) ....................23

*JAWHBS LLC v. Arevalo*, 2017 WL 1345141 (S.D. Fla. Apr. 12, 2017) ...............27

*Kaw Valley Elec. Co-op Co. v. Kan. Elec. Power Co-op, Inc.*, 872 F.2d 931 (10th Cir. 1989)....................................................................................32

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ..............................................31

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908 (6th Cir. 2009)........................................................................ 18, 19

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007).............16

*Litovich v. Bank of Am. Corp.*, 2025 WL 2521039 (S.D.N.Y., Sept. 2, 2025) .......32

*Machesney v. Ramsgate Ins., Inc.*, 2014 WL 2605479 (E.D. Mich. June 10, 2014) ...............................................................................................33

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934 (6th Cir. 2016) ...........................................................................................16

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713 (6th Cir. 2019) ...........................................................................................18

*Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857 (D.C. Cir. 2008) ......................... 26, 27

*Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984) ...............................................................................................32

*Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462 (6th Cir. 2005) .....................................................................20

*NCAA v. Alston*, 594 U.S. 69 (2021) ...................................................................18

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)..........................................21

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990) .....................................31

*People of Michigan v. BP, P.L.C.*, 2026 WL 2853779 (W.D. Mich. Sept. 22, 2026) ......................................................................................... 21, 29

*Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568 (6th Cir. 1986) .....................13

*Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999)......................31

*Robinson v. Intergraph Corp.*, 1988 WL 106927 (E.D. Mich. May 9, 1988).........19

*Seabury Mgmt, Inc. v. Prof. Golfers' Ass'n of Am., Inc.*, 878 F.Supp. 771 (D.Md. 1994) ......................................................................................17

*Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079 (6th Cir. 1983)........20

*Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015) ..................14

*Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264 (11th Cir. 2013) ...................................................................................... 27, 28

*Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311 (6th Cir. 2015)......................................................................................12

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991)......................35

*Valley Prods. Co. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997) ......................................................................24

*Washington v. Nat'l Football League*, 880 F. Supp. 2d 1004 (D. Minn. 2012)14, 17

*Weston v. AmeriBank*, 265 F.3d 366 (6th Cir. 2001).............................................33

*Williams v. I.B. Fischer Nevada*, 999 F.2d 445 (9th Cir. 1993)..............................15

*Worldwide Basketball and Sports Tours, Inc. v. NCAA*, 388 F.3d 955 (6th Cir. 2004) ................................................................................ 18, 19, 20

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971) .........................32

**Statutes**

15 U.S.C. § 1065.....................................................................................24

15 U.S.C. § 1115(a) ................................................................................24

15 U.S.C. § 1127.......................................................................................4

15 U.S.C. § 15b.......................................................................................31

**Rules**

Fed. R. Civ. P. 56(a)........................................................................................12

**Other Authorities**

J. THOMAS MCCARTHY, 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION (5th ed. 2026)........................................................................23

# STATEMENT OF THE ISSUES

1. Should the Court grant summary judgment to Defendants because BCBSA and the individual Blue Plans act as a "single entity" under *Copperweld* and its progeny for the function of governing the federally-registered Blue Cross and Blue Shield trademarks and all of the challenged "agreements" fall within that function?

   **Defendants' Answer:** Yes

2. Should the Court grant summary judgment to Defendants because Ford failed to establish multiple elements of the default rule of reason standard, including a properly defined antitrust market and anticompetitive effects in that market?

   **Defendants' Answer:** Yes

3. Should the Court grant summary judgment to Defendants where, even absent the challenged conduct, the type of Blue-on-Blue competition Ford claims would have occurred cannot happen because it is undisputed that no individual Blue Plan would be able to use the Blue brand to compete in the locations where Ford purchases health benefits products?

   **Defendants' Answer:** Yes

4. Should the Court grant summary judgment to Defendants because Ford does not have any non-speculative evidence that Defendants caused Ford any harm, where Ford simply assumes [redacted], grown sufficiently large to compete for Ford's business, and reduced its costs for healthcare benefits despite direct record evidence to the contrary?

   **Defendants' Answer:** Yes

5. Should the Court grant summary judgment to Defendants where Ford's damages theory hinges upon a challenge to blocked entry that it claims occurred decades ago (and prior to 2008), and is thereby barred by the statute of limitations?

   **Defendants' Answer:** Yes

6. Should the Court grant summary judgment to Defendants as to damages for Ford's fully-insured claims before November 2, 2016 because these claims were not tolled by the *Cerven* complaint?

**Defendants' Answer:** Yes

## CONTROLLING OR MOST RELEVANT AUTHORITIES

*Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795 (6th Cir. 2025)

*Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010)

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989)

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)

*Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980 (6th Cir. 2001)

*Health All. Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, 2017 WL 1209099 (E.D. Mich. Mar. 31, 2017)

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994)

*Huron Valley Hosp., Inc. v. City of Pontiac*, 666 F.2d 1029 (6th Cir. 1981)

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908 (6th Cir. 2009)

*Peck v. Gen. Motors Corp.*, 894 F.2d 844 (6th Cir. 1990) (per curiam)

*Valley Prods. Co. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997)

*Washington v. Nat'l Football League*, 880 F. Supp. 2d 1004 (D. Minn. 2012)

*Worldwide Basketball and Sports Tours, Inc. v. NCAA*, 388 F.3d 955 (6th Cir. 2004)

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971)

# INTRODUCTION

Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSM") was founded nearly a century ago for the benefit of the people of Michigan, offering the precursor of modern health insurance in the state with the help of one of its first customers—Ford Motor Company ("Ford"). Over time, BCBSM expanded to cover every corner of Michigan, including rural areas many other insurers do not, and for years served as the insurer of last resort for Michigan's most vulnerable residents. While BCBSM was building this decades-long foundation in Michigan, other Blue Plans were doing the same in their local communities across the United States. Throughout this nearly 100-year history, BCBSM has been the only Blue Plan with the right to use the Blue Cross and Blue Shield trademarks ("Blue Marks") in Michigan.

As the world changed, so did the needs of Ford and BCBSM's other customers, leading BCBSM and its sister Blue Plans to collaborate to provide nationwide products. Today, BCBSM operates as a licensee of the Blue Cross Blue Shield Association ("BCBSA"), the entity that owns the federally registered Blue Marks (the "Federal Blue Marks"). Together, BCBSA and the Blue Plans have built a trusted reputation under the highly valuable Blue brand—a brand they are entitled to promote and protect.

Although still a customer of BCBSM to this day, Ford opted out of a class

action lawsuit to file this case, challenging the license agreements by which BCBSM and other Blue Plans are able to use the Federal Blue Marks to serve Ford nationally. Tellingly, Ford seeks no change in BCBSM or BCBSA's practices, only money. Ford theorizes that—absent the license agreements—[redacted], thereby lowering Ford's prices for all the types of health benefits products it purchases. Discovery has exposed at least four fatal flaws in Ford's case.

***First***, Ford cannot prevail because BCBSA and the Blue Plans necessarily act as a "single entity" for the purpose of governing and administering the Federal Blue Marks, the very conduct Ford challenges. Because a single entity cannot conspire with itself, Ford's case fails at the outset. ***Second***, Ford cannot meet its burden of proof under the default rule of reason. To establish illegality under that standard, Ford must define a proper antitrust market and establish that the challenged conduct causes anticompetitive effects. Ford did neither, its expert simply *assumed* the conduct was illegal. ***Third***, Ford cannot establish antitrust injury. The "harm" Ford complains of—lack of more Blue-on-Blue competition for its business—would not change in the absence of the challenged conduct because no additional Blue Plans would have the ability to compete in Michigan (or other states) using the Blue Marks, and BCBSM's common law trademark rights would allow it to exclude any that ever

tried. Moreover, Ford's theory of harm is based entirely on speculation. ***Fourth***, Ford's claims are barred by the statute of limitations because Ford complains of blocked entry that allegedly happened long before 2008 (*i.e.*, the maximum limitations period). At minimum, Ford's fully-insured claims before November 2, 2016 are time-barred because the MDL did not toll them.

## STATEMENT OF MATERIAL FACTS

1. ***Early Development of Blue Plans.*** Modern-day Blue Plans have their roots in the 1930s, when individual plans began using the Blue Cross and/or Blue Shield marks—including the "Blue Cross" and "Blue Shield" word marks and various blue cross and blue shield symbols—to identify the source of their healthcare plans in their respective **local** communities.[1]

2. In Michigan, [redacted]

[1] Ex. 1, Expert Report of Mark McKenna ("McKenna Rep.") ¶ 68, Apps. C-E.

[2] Ex. 1, McKenna Rep. ¶¶ 75, 102, App. C at pp. 71-85, App. D at pp. 9-17, App. E at pp. 29-37; Ex. 2, BCBSM_FORD_0000000223; Ex. 3, BCBSM_FORD_0000000220; Ex. 4, Deposition of Gary Gavin at 26:22-25 ("In 1939 we are the first and only service plan area of the 83 counties in, and all the counties in the State of Michigan, have that exclusive trademark within Blue Cross."), 71:15-19 ("we're first and only within all the counties in Michigan").

[3] Ex. 1, McKenna Rep. ¶ 102.

[redacted].[4]

3. The same is true of the other Blue Plans from which Ford purchases commercial health benefits products today. [redacted].[9]

4. [redacted][10]

5. ***Federal Registration of the Blue Trademarks.*** In 1946, Congress enacted the Lanham Act.[11] Because, prior to passage of the Lanham Act, various Blue Plans used various Blue Marks at common law as described above, the Blues faced a "practical problem": as their trademark counsel explained at the time, the Plans were

---

[4] *See* Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 71-85, App. D at pp. 9-17, App. E at pp. 29-37; Ex. 2, BCBSM_FORD_0000000223; Ex. 3, BCBSM_FORD_0000000220.

[5] Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 46-49, App. E at p. 18.

[6] Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 58-59, App. D at p. 6, App. E at p. 24.

[7] Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 91-92.

[8] Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 118-19, App. E at p. 51.

[9] Ex. 1, McKenna Rep. ¶ 102, App. C at pp. 132-33, App. E at p. 54.

[10] Ex. 1, McKenna Rep. ¶¶ 110, 114.

[11] 15 U.S.C. § 1127.

operating "under local ownership," but "the Lanham Act . . . requires ownership of the mark by a single party as a prerequisite to registration."[12]

6. The Blues thus determined that "[a] practical problem has to be met with a practical answer" and decided that "all rights to the mark and the words should be put in a common pot after making certain that all of the parties' interests are properly protected."[13] The Blue Plans therefore voted to allow American Hospital Association (for Blue Cross) and the Associated Medical Care Plans (for Blue Shield) to apply for federal registration on their behalf.[14]

7. BCBSA is (and through its predecessors has always been) the exclusive owner of the Federal Blue Marks, which are now incontestable.[15]

8. ***The License Agreements and Brand Guidelines.*** Today, [redacted]

---

[12] Ex. 5, BCBSA_FORD_00001257 at 257, 259.

[13] Ex. 5, BCBSA_FORD_00001257 at 259.

[14] Ex. 5, BCBSA_FORD_00001257; Ex. 6, BCBSA_ASO_00504441 at 448–49; Ex. 7, BCBSA_ASO_00512296 at 301; Ex. 8, BCBSA_ASO_03157071; Ex. 9, BCBSA_ASO_00748076.

[15] Ex. 10, BCBSA_ASO_00499570 (U.S. Reg. No. 554,817); Ex. 11, BCBSA_ASO_00499566 (U.S. Reg. No. 554,488); Ex. 12, BCBSA_ASO_00594930 (U.S. Reg. Nos. 557,037; 557,040; 562,430; 591,778; 617,304; 511,076); Ex. 13, Deposition of Kari Hedges (Jan. 14, 2026) at 47:18-48:9; *see* Ex. 14, BCBSA_ASO_02209656 at 674; *see also* Ex. 8, BCBSA_ASO_03157071 at 072; Ex. 9, BCBSA_ASO_00748076 at 078; ECF 1 ("Compl."), PageID.11 (¶ 28); Ex. 15, USPTO Trademark Status Reports.

[redacted][17]

9. The license agreements expressly provided that, in the event of revocation or termination, [redacted][18]

10. The ESAs and reversionary rights continue in the license agreements today.[19]

11. As part of their license(s) with BCBSA, [redacted].[20]

---

[16] Ex. 8, BCBSA_ASO_03157071 at 072; Ex. 9, BCBSA_ASO_00748076 at 078.

[17] Ex. 10, BCBSA_ASO_00499570 (U.S. Reg. No. 554,817); Ex. 11, BCBSA_ASO_00499566 (U.S. Reg. No. 554,488); Ex. 12, BCBSA_ASO_00594930 (U.S. Reg. Nos. 557,037; 557,040; 562,430; 591,778; 617,304; 511,076); Ex. 13, Hedges Tr. (Jan. 14, 2026) at 47:18-48:9; *see* Ex. 14, BCBSA_ASO_02209656 at 674; *see also* Ex. 8, BCBSA_ASO_03157071 at 072; Ex. 9, BCBSA_ASO_00748076 at 078; Compl., PageID.11 (¶ 28).

[18] Ex. 1, McKenna Rep. ¶¶ 65, 112, 115; Ex. 9, BCBSA_ASO_00748076 at 082.

[19] Ex. 16, BCBSM_Ford_0000002374 at 2385-86; Ex. 17, BCBSM_Ford_0000003224 at 3235-36; Ex. 1, McKenna Rep. ¶ 107.

[20] Ex. 18, BCBSA_ASO_05547618 at 624, 627; Ex. 19, BCBSA_ASO_05547775 at 781, 784; Ex. 20, BCBSM_Ford_0000010853.

12. [redacted].[22]

14. [redacted][23]

15. [redacted].[24] [redacted][25]

---

[21] Ex. 14, BCBSA_ASO_02209656 at 674; Ex. 21, BCBSA_ASO_03165220 at 220-21; Ex. 22, BCBSA_ASO_00624879 at 879-80; Ex. 23, BCBSA_ASO_00624894 at 897; Ex. 24, BCBSA_ASO_00635663 at 668.

[22] Ex. 25, BCBSA_FORD_00002754 at 2776-80.

[23] Ex. 26, BCBSA_ASO_05545120 at 298; Ex. 27, BCBSA_ASO_00570115 at 127, 130.

[24] Ex. 13, Hedges Tr. (Jan. 14, 2026) at 143:4-22, 209:2-210:9; Ex. 4, Gavin Tr. at 130:24-131:2; Ex. 28, BCBSA_FORD_00002688 at 742; Ex. 29, BCBSA_ASO_00599377 at 379.

[25] *See* Ex. 1, McKenna Rep. ¶ 114.

16. [redacted][26]

17. [redacted][28]

18. ***Health Plan Options.*** Today, as a result of its nearly 100-year history in the state of Michigan, BCBSM has a broad provider network throughout the entire state—[redacted][29] BCBSM's collaboration with other Blues through BlueCard lets it offer a national PPO plan with access to provider networks in every state.[30]

19. The only health plans able to offer a national network have been: [redacted]

---

[26] *See*, *e.g.*, Ex. 30, BCBSM_Ford_0000002111 at 145. [redacted] Ex. 32, BCBSA_ASO_04984234 at 267.
[27] Ex. 32, BCBSA_ASO_04984234 at 267.
[28] Ex. 33, Deposition of Kari Hedges (Jan. 15, 2026) at 357:17-24.
[29] Ex. 34, Deposition of John Lapinski at 163:23-164:23; Ex. 35, *Largest Network in Michigan*, BLUE CROSS BLUE SHIELD OF MICHIGAN, https://www.bcbsm.com/about-us/our-difference/largest-network/.
[30] Ex. 36, Deposition of Kari Hedges (March 27, 2026) at 48:20-49:4.

[redacted].[31]

Humana ceased offering commercial health benefits products in 2023.[32]

20. [redacted], [redacted] [redacted][33]

21. There are many regional non-Blue health plans. [redacted].[34]

22. ***Ford's Healthcare Purchases.*** [redacted].[35]

23. Ford purchases a self-insured (or administrative services only ("ASO")) national PPO plan from BCBSM that provides coverage for Ford's employees and

---

[31] Ex. 37, Expert Report of Celeste Saravia ("Saravia Rep.") ¶¶ 47, 53.

[32] Ex. 38, Humana Press Release, "Humana to Exit Employer Group Commercial Medical Products Business," February 23, 2023, https://policy.humana.com/news-and-resources/news-press/2023/humana-to-exit-employer-group-commercialmedical-products; Ex. 39, HUMANA_FORD_001209 ("Humana Decl.") ¶ 3.

[33] Ex. 37, Saravia Rep. ¶¶ 53-57; Ex. 40, BCBSM_Ford_0000075412 ("Aetna Decl.") ¶ 9; Ex. 41, BCBSM_Ford_0000073839 ("Cigna Decl.") ¶ 12; Ex. 42, UNITED-FORDBCBS-002135 ("UHC Decl.") ¶ 5.

[34] Ex. 37, Saravia Rep. ¶¶ 10, 168, 177, 185, 189-91.

[35] Ex. 37, Saravia Rep. ¶ 59; Ex. 43, Ford Motor Co. 2024 Form 10-K, at 15-16; Ex. 44, Deposition of Suzanne De Haan at 57:4-10; Compl., PageID.25 (¶ 78); Ex. 45, Expert Report of Matthew E. Raiff ("Raiff Rep.") ¶ 31.

their dependents nationwide [redacted][36]

24. [redacted][37]

25. Ford has maintained a nearly 100-year relationship with BCBSM.[38] Since 2008, [redacted][39] [redacted][40]

26. Ford also purchases or has purchased several local alternative health benefits products structured as both Health Maintenance Organizations ("HMOs") and PPOs from five different Blue Plans.[41]

27. ***The MDL.*** Ford's claims relate to the multi-district class action litigation styled *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13-

---

[36] Ex. 46, Deposition of Julie Piszker at 29:9-17; Ex. 36, Hedges Tr. (Mar. 27, 2026) at 47:6-17; Ex. 47, Deposition of Joseph Krock at 35:2-11.

[37] Ex. 44, De Haan Tr. at 170:5-10; Ex. 48, Expert Report of Erin Trish ("Trish Rep.") ¶¶ 61, 66; ECF 70-42, PageID.4169; Ex. 49, Deposition of Thomas Lawrence at 84:7-22. [redacted] Ex. 48, Trish Rep. ¶ 16. [redacted]. Ex. 37, Saravia Rep. ¶ 30.

[38] Ex. 50, BCBSA_ASO_00714801 at 829-30, 858-59.

[39] Ex. 44, De Haan Tr. at 184:25-185:2; Ex. 46, Piszker Tr. at 58:22-25.

[40] Ex. 44, De Haan Tr. at 196:4-11; Ex. 34, Lapinski Tr. at 50:18-51:8.

[41] Ex. 45, Raiff Rep., Table A2; Ex. 51, Ford's Supplemental and Amended Answers to BCBSM's First Set of Interrogatories, Interrogatory No. 3, at 13-19 (Feb. 23, 2026); Ex. 47, Krock Tr. at 35:2-11.

CV-20000 (N.D. Ala.) (the "MDL").[42]

28. The MDL originated with *Cerven v. Blue Cross Blue Shield of North Carolina*, No. 5:12-cv-00017, on February 7, 2012. The *Cerven* complaint defined the proposed damages class as follows: "All persons or entities who, from February 7, 2008 to the present (the 'Class Period') have paid health insurance premiums to BCBS-NC for individual or small group full-service commercial health insurance." The *Cerven* complaint further defined "small groups" as those with 3-199 employees and "large groups" as those with 200 or more employees.[43]

29. At no time prior to November 2, 2020 did any subscriber class complaint in the MDL include fully-insured groups of over 200 members in its damages class.[44]

30. Each of Ford's fully-insured plans with the Blues had more than [redacted] during the relevant period.[45]

---

[42] *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406 (J.P.M.L., Jan. 8, 2013), Dkt. 1.

[43] ECF 23-2, PageID.543, 576 (¶¶ 21, 130).

[44] On April 15, 2019, subscriber class plaintiffs filed motions for class certification. The proposed damages class included "subscribers to Blue Cross Blue Shield of Alabama [] for individual, small group (up to 50 employees), or medium group (51 to 199 employees) [for] full-service commercial health insurance." The proposed class definitions also specifically "[e]xcluded from the Class [] subscribers to Administrative Services Only or Administrative Service Contracts." MDL Dkt. 2409 at 1-2.

[45] *See, e.g.*, Ex. 52, FORD_BCBSMich 000366266 at 269, 271; Ex. 53, FORD_BCBSMich 000366214 at 216-17; Ex. 54, Deposition of Marie Catka at 100:11-101:20, 180:23-182:13, 183:7-23; Ex. 55, FORD_BCBSMich 000360340 at 341-42. [redacted]

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute will preclude summary judgment only if that dispute is genuine and concerns material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[46] A dispute about a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and is "material" only if it "might affect the outcome of the suit under the governing law." *Id.* at 248. If a plaintiff fails to establish the existence of an element essential to the party's case, "there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 326 (6th Cir. 2015).

## ARGUMENT

### I. FORD CANNOT ESTABLISH AN "AGREEMENT" BETWEEN BCBSA AND THE BLUE PLANS FOR PURPOSES OF SECTION 1

To establish a Section 1 violation, Ford must show "proof of conspiracy or

---

[redacted] Ex. 52, FORD_BCBSMich 000366266 at 271.

[46] Unless otherwise indicated, all internal quotation marks and citations are omitted.

concerted activity." *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 572 (6th Cir. 1986). Because BCBSA and Blue Plans operate as a single entity for the purpose of governing the Federal Blue Marks and because all of the challenged conduct (ESAs, NBE, and LBE) falls within that function, Ford cannot prove a "conspiracy or concerted activity."

### A. <u>The Blues Are a "Single Entity" for the Purposes of Governing the Federal Blue Marks</u>

The single entity doctrine originates from *Copperweld Corp. v. Indep. Tube Corp.*, where the Supreme Court held that Section 1 of the Sherman Act applies only to coordinated conduct that "deprives the marketplace of . . . independent centers of decisionmaking." 467 U.S. 752, 769 (1984). In other words, it applies only to agreements "between *separate* entities" and not conduct that is "wholly unilateral." *Id.* at 768 (emphasis in original). Whether entities are acting separately or unilaterally is not based on formalistic legal distinctions; the mere fact that corporations "have formally organized themselves into . . . separate legal entities" does not "imply a capacity to conspire." *Id.* at 773 n.21. Instead, courts conduct "a functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010). If, with respect to a given issue, separate entities are "controlled by a single center of decisionmaking and they control a single aggregation of economic power[, j]oint conduct . . . does not constitute a 'contract, combination . . . , or

conspiracy." *Id.* at 194. Only coordination that "represent[s] a sudden joining of two independent sources of economic power previously pursuing separate interests" warrants scrutiny under Section 1. *Copperweld*, 467 U.S. at 771.

A group of independent legal entities can be considered a "single entity" under *Copperweld* for certain functions, but not others. For example, NFL teams do not act as a single entity, and therefore are subject to antitrust scrutiny, when making decisions to license their separately owned trademarks. *Am. Needle*, 560 U.S. at 197. But the thirty-two NFL teams *do* act as a single entity when they license "historical football game footage, something that the individual teams do not separately own, and never have separately owned" because "the NFL owns the game footage, either alone or in conjunction with the teams." *Washington v. Nat'l Football League*, 880 F. Supp. 2d 1004, 1006 (D. Minn. 2012); *see also Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 114-17 (S.D.N.Y. 2015). The critical distinction is that, while individual teams are independent decisionmakers as to how their own individual trademarks should be licensed, they are not independent decisionmakers as to how the NFL's collective intellectual property should be licensed. Courts have consistently applied this standard to find that formally separate companies can be a single entity incapable of conspiring under the antitrust laws with respect to certain functions.[47]

[47] *See Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 598 (7th

Here, the Blues are a single entity for functions where they "pursue[] the common interests of the whole rather than interests separate from those of the [group] itself." *Copperweld*, 467 U.S. at 770. That includes governing and administering the Federal Blue Marks, which is something no Blue Plan has ever done, or ever had the right to do, on its own. BCBSA owns the Federal Blue Marks, and governs and administers them in pursuit of the common interests of the whole Blue System. BCBSA is in this position because the Blues (both individual Blue Plans and the national organization predecessors) worked together to pool their respective common law rights to achieve federal registration. Ever since, this has allowed the Blues to promote and use the Blue brand nationwide—something none of them could do independently. SOF ¶¶ 1-18. Accordingly, the Blue Plans are a single actor when it comes to preserving and promoting their shared intellectual property, the Federal Blue Marks. Similar to a franchise, the Blue Plans each operate under the same brand—the Blue brand—to enhance competition with *other* brands like United, Aetna, and Cigna, in a way that no Blue Plan could do on its own. SOF

---

Cir. 1996) (Easterbrook, J.) ("These functions of independent team ownership do not imply that the [NBA] is a cartel, however, any more than separate ownership of hamburger joints . . . implies that McDonald's is a cartel."); *Williams v. I.B. Fischer Nevada*, 999 F.2d 445, 447 (9th Cir. 1993) (affirming summary judgment where franchisor and franchisee were a single entity); *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 276 (8th Cir. 1988) (affirming summary judgment where "cooperative organization is a single enterprise pursuing a common goal—the provision of low-cost electricity to its rural consumer-members").

¶¶ 15, 18-19; *cf. Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 895 (2007) ("the antitrust laws are designed primarily to protect interbrand competition"). [redacted]. SOF ¶ 15. For these reasons, when BCBSA governs and administers the Federal Blue Marks on behalf of the Blues, BCBSA does not and cannot "deprive[] the marketplace of independent centers of decisionmaking." *Am. Needle*, 560 U.S. at 195. The Blues thus "constitute[] a single entity incapable of conspiring" when they govern and manage the Federal Blue Marks. *See Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934, 937 (6th Cir. 2016).

### B. <u>**The Challenged Conduct Falls Within the Function for Which the Blues Are a Single Entity**</u>

Ford challenges conduct that falls squarely within the function for which the Blues are a single entity—governance and administration of the Federal Blue Marks.

Ford challenges ESAs as an agreement to "[redacted]" Ex. 45, Raiff Rep. ¶ 36; Compl., PageID.12-13 (¶ 31). [redacted]. SOF ¶ 8. Because the Federal Blue Marks are "something that the individual [Blue Plans] do not separately own, and never have separately owned," such governance cannot constitute concerted

action. *Washington*, 880 F. Supp. 2d at 1006 (citing *Am. Needle*, 560 U.S. at 202). Accordingly, ESAs, as set forth in the license agreements, are the unilateral conduct of a single entity that is not actionable under Section 1 of the Sherman Act.[48]

Ford challenges the Best Efforts standards—NBE and LBE—as "[redacted]" Ex. 45, Raiff Rep. ¶¶ 12, 37-38; Compl., PageID.20-21 (¶ 63).[49] By requiring that the majority of a Blue Plan's business be conducted under the Blue brand, the Best Efforts standards ensured Blue Plans are committed to being Blue: simply put, if a Blue Plan is entrusted with the valuable Federal Blue Marks in an ESA, it needs to invest in and promote them there.[50] The Best Efforts standards reflect "a single enterprise pursuing a common goal"—strengthening the shared Blue brand nationwide to

---

[48] *See, e.g.*, *Seabury Mgmt., Inc. v. Prof. Golfers' Ass'n of Am., Inc.*, 878 F. Supp. 771, 777 (D. Md. 1994), *aff'd in relevant part, and rev'd in part on other grounds*, 52 F.3d 322 (4th Cir. 1995) (PGA and members "function as a single economic unit" with regard to "trademark licensing agreements").

[49] Ford alleges the Best Efforts standards are a restraint of trade (Compl., PageID.20-21 (¶¶ 63-64)), but [redacted]. Ex. 47, Krock Tr. at 149:13-17 ("[redacted]"). Dr. Krock is Ford's only expert in this case and has replaced Dr. Raiff. Dr. Krock has adopted Dr. Raiff's opinion as his own. Ex. 56, Expert Report of Dr. Joseph Krock ("Krock Rep.") ¶ 8.

[50] That is especially important because no other Blue Plan has the right to use the Blue Marks to fill any "holes" that another Blue Plan might leave in its ESA. *See* SOF ¶¶ 1, 4; *see infra* Section III.A. In this way, each Blue Plan necessarily depends on the others so that all Blue members may access in-network healthcare around the country.

promote sales under that brand to National Accounts like Ford—and thus cannot give rise to a Section 1 claim. *Mt. Pleasant*, 838 F.2d at 274, 276 ("[L]egally distinct entities do not conspire if they 'pursue[] the common interests of the whole rather than interests separate from those of the [group] itself.'" (quoting *Copperweld*, 467 U.S. at 770)).

## II. FORD CANNOT PROVE A RULE OF REASON CLAIM

Ford cannot meet its burden to prove a rule of reason claim. Under that standard, which is the default for Section 1 claims in the Sixth Circuit,[51] the plaintiff first must "define the relevant market within which the alleged anticompetitive effects of the defendant's actions occur." *Worldwide Basketball and Sports Tours, Inc. v. NCAA*, 388 F.3d 955, 962 (6th Cir. 2004). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim," as is failure to show anticompetitive effects in that market.[52]

*First*, defining a market is a fact-intensive process,[53] and several courts have

---

[51] *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 724 (6th Cir. 2019) (applying "the default standard of the rule of reason"); *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 343 (6th Cir. 2006) ("[T]here is an automatic presumption in favor of the rule of reason.").

[52] *Worldwide Basketball*, 388 F.3d at 962-63 (a court cannot assess anticompetitive effects without first defining a relevant market); *see Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009) (granting summary judgment because plaintiff failed to offer sufficient evidence "to define the relevant markets necessary to succeed on its claims").

[53] *NCAA v. Alston*, 594 U.S. 69, 81 (2021) (the rule of reason "requires a court to conduct a fact-specific assessment of market power and market structure");

held that "expert testimony is necessary to establish a relevant market." *Ky. Speedway*, 588 F.3d at 919 (citing *Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 855 n.4 (11th Cir. 1998)). As explained in Defendants' simultaneously filed *Daubert* Motion, [redacted].[54] Instead, Ford's damages expert admitted that he simply [redacted]."[55] [redacted] without any case-specific analysis is fatal to a rule of reason claim. *Ky. Speedway*, 588 F.3d at 919.[56] Therefore, even if Dr. Krock's opinions on this point are not excluded (and they should be), they are insufficient to meet Ford's burden to define the relevant market here.

*Second*, even if Ford had defined a relevant market (it has not), Ford has also

---

*Robinson v. Intergraph Corp.*, 1988 WL 106927, at *3 (E.D. Mich. May 9, 1988) (market definition must assess the "factual circumstances of each individual case").

[54] Defendants' Motion to Exclude the Opinions and Testimony of Dr. Joseph A. Krock ("*Daubert* Motion"), § I.A.

[55] Ex. 47, Krock Tr. at 247:15-248:1; *Daubert* Motion, § I.A.

[56] If the Court excludes Dr. Krock's unsupported market definition, it should also grant this motion as Ford has then not even attempted to define the market. *See Ky. Speedway*, 588 F.3d at 919 (affirming exclusion of plaintiff's economic expert and therefore affirming summary judgment because the plaintiff offered no evidence "to define the relevant markets"); *Worldwide Basketball*, 388 F.3d at 963 ("[B]ecause [plaintiff's expert] failed to provide any basis for [his opinion on the relevant market], the district court correctly found it unreliable," and absent evidence to support a market definition "had ample basis to dismiss the claim.").

failed to establish anticompetitive effects in that market.[57] Ford's expert [redacted].[58] Ford's rule of reason claim must therefore be dismissed. *Worldwide Basketball*, 388 F.3d at 962.

## III. FORD CANNOT PROVE INJURY CAUSED BY THE CHALLENGED CONDUCT

In any case, Ford cannot establish an antitrust injury caused by the challenged conduct—necessary elements of its claim under both the rule of reason and *per se* standards.[59] The Sixth Circuit has historically considered five factors to determine whether a plaintiff has antitrust standing, *see, e.g.*, *Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983), which can be boiled down into two key questions—whether the plaintiff has alleged an "antitrust injury" and "proximate

[57] *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 473 (6th Cir. 2005) ("[A] plaintiff alleging an unreasonable restraint on trade under the rule of reason theory must show significant anti-competitive effects of the challenged restraint.").

[58] Ex. 47, Krock Tr. at 144:15-18 ("[redacted]").

[59] *See, e.g.*, *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341-42, 344-46 (1990) ("Respondent has failed to demonstrate that it has suffered any antitrust injury . . . . [t]he allegation of a *per se* violation does not obviate the need to satisfy this test."); *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795, 806 (6th Cir. 2025) (conducting antitrust injury and proximate cause analysis even though "[w]e may assume that [plaintiff] has alleged violations of [Sherman Act Sections 1 and 2]").

causation." *See Acad. of Allergy & Asthma*, 155 F.4th at 806-08; *People of Michigan v. BP, P.L.C.*, 2026 WL 2853779, at *6 (W.D. Mich. Sept. 22, 2026). Ford lacks sufficient evidence to go to a jury on either question.[60]

**A. <u>The Lack of Additional Blue-On-Blue Competition Would Not Change in Ford's But-For World</u>**

Ford and its expert assume that, absent the challenged conduct, t[redacted].[61] Ford cannot establish antitrust injury under this theory.[62]

***Right to Exclude.*** In Ford's but-for world, if a different Blue Plan tried to enter an at-issue state under the Blue brand, incumbent Blue Plans would have the right to exclude it based on common law rights. Michigan (where Ford purchases its PPO plan and most of its employees are located) perfectly highlights the fatal

---

[60] *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) (a case must be dismissed as a matter of law if antitrust standing is not established "lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be").

[61] Ex. 45, Raiff Rep. ¶¶ 67-72, 76, 86; Ex. 47, Krock Tr. at 31:7-34:2, 100:18-101:16, 236:11-20. [redacted] Ex. 47, Krock Tr. at 122:6-8 ("[redacted]."), 149:13-23.

[62] "[A] plaintiff must prove the existence of antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield*, 495 U.S. at 334. This requirement is not satisfied unless the alleged "loss stems from [the] competition-*reducing* aspect . . . of the defendant's behavior." *Id.* at 344 (emphasis in original).

flaw in Ford's theory. [redacted] SOF ¶ 2. Unlike federal trademark rights—which are obtained through federal registration under the Lanham Act and grant nationwide rights to the mark, *Advance Stores Co., Inc. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643, 650 (W.D. Ky. 1996)—common law trademark rights derive from "actual use," *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 571-72 (6th Cir. 2001). The user of a mark develops common law trademark rights in the "geographic area in which the mark is used." *Id.* at 572. It is indisputable that [redacted] SOF ¶ 2. [redacted] SOF ¶ 2. [redacted] SOF ¶ 8. This license provides that, [redacted] SOF ¶ 9.

BCBSM's common law rights to the Blue Marks in Michigan are uncontroverted.[63] Common law trademark rightsholders, like BCBSM, can exclude

[63] Defendants put forth a trademark expert, Professor Mark McKenna, [redacted] Ex. 1,

others from using the same or similar marks to market or sell similar goods and/or services in that same geographic area.[64] [redacted][65] [redacted] SOF ¶¶ 3, 8-10.

In the end, Ford cannot establish antitrust injury because it would have the same claimed "injury"—lack of additional Blue competitors in Michigan (and all other at-issue states)—even absent the challenged conduct. *Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir. 1994) (agreeing that "if Plaintiff would have suffered the same injury without regard to the allegedly anticompetitive acts of [d]efendants, Plaintiff has not suffered an antitrust injury"); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d

---

McKenna Rep. ¶¶ 75-77, 83, 85, 100-02. Ford has not put forth any evidence contradicting Professor McKenna's report, nor has Ford put forth an expert to respond to or rebut Professor McKenna's report.

[64] J. THOMAS MCCARTHY, 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 2:10 (5th ed. 2026) (a trademark "is a property right" and comes with "the right to exclude"); *see Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991) ("Ownership of a mark confers both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark."); *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023) ("[T]he owner of even an unregistered trademark can . . . 'enforce it against infringers.'").

[65] Ex. 1, McKenna Rep. ¶ 20 ("[redacted]").

1105, 1111 (6th Cir. 1989) (no antitrust injury where "patents precluded [plaintiff's] entry into the U.S. market"); *Valley Prods. Co. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398, 404 (6th Cir. 1997) (no antitrust injury because "as holder of its trademark" defendant was "within its legal rights to deny use of the [trademark]" even if that "denial may have the unfortunate effect of excluding plaintiffs from the [relevant] market").[66]

***No Right to Enter.*** The existence of the Federal Blue Marks does not alter this reality—it confirms it. No individual Blue Plan owns (or has ever owned) the Federal Blue Marks, and no individual Blue Plan has (or has ever had) the independent right to use the Federal Blue Marks, let alone on a nationwide basis. Indeed, as acknowledged by Ford, BCBSA (or its predecessors) is and has always been the sole and exclusive owner of the Federal Blue Marks. SOF ¶ 7; 15 U.S.C. §§ 1065, 1115(a). And even in Ford's hypothetical but-for world, BCBSA would remain the sole and exclusive owner of the Federal Blue Marks. SOF ¶ 7.[67] There

---

[66] *See also In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 845 (N.D. Ill. 2020); *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017).

[67] *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) (trademark owner's "rights include preventing others from using the mark"); *Valley*, 128 F.3d at 404 ("a person is not normally free to use another's trademark without a license to do so"); *Franz v. Nat'l Football League*, 2026 WL 2922894, at *4 (S.D.N.Y. Sept. 29, 2026) ("[a] trademark owner has a right to decide who to give licenses to"); *cf. FTC v. Endo Pharms., Inc.*, 82 F.4th 1196, 1204-06 (D.C. Cir. 2023) (finding no anticompetitive conduct in exclusive patent licensing even with allegations that the patent agreement involved the elimination of a competitor).

is no world, therefore, in which any Blue Plan could simply choose to use the Blue Marks anywhere and everywhere, as would be required under Ford's theory of antitrust injury. Put another way, there would not be a single Blue Plan automatically entitled to use the Federal Blue Marks at all, let alone on the nationwide scale required in Ford's but-for world—and Ford has no legal or factual basis to posit otherwise. [redacted].[68]

**B. Ford's Theory of Harm Is Based Entirely on Speculation**

Regardless of whether Ford's hypothesized entry *could* happen (it cannot), Ford offers no evidence to establish that any other Blue Plan actually *would* enter. Therefore, Ford fails to show the necessary causal linkage to connect its theory of harm to any actual impact on Ford. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536-46 (1983); *Acad. of Allergy & Asthma*, 155 F.4th at 807 (plaintiff must show "that the antitrust violation was both a cause in fact and proximate cause of the harm"); *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 990 (6th Cir. 2001) ("failure to present evidence which could lead to a reasonable verdict for [plaintiff] on the issues of causation and damage provides an independent basis to affirm the district court's grant of

[68] Ex. 47, Krock Tr. at 63:19-64:11, 129:21-130:8.

[defendant's] motion for judgment as a matter of law").[69]

When a plaintiff claims harm because the defendant allegedly blocked potential competitors from competing, the plaintiff has to be reasonably specific about how those competitors would have competed (or "entered") absent the actions of the defendant. "Courts must attempt to distinguish the serious potential competitor who has been illegally kept out of the market from the inchoate business enterprise with a mere hope of entry." *Huron Valley Hosp., Inc. v. City of Pontiac*, 666 F.2d 1029, 1033 (6th Cir. 1981); *Meijer, Inc. v. Biovail Corp.,* 533 F.3d 857, 862 (D.C. Cir. 2008) ("[A] would-be purchaser suing an incumbent monopolist for excluding a potential competitor from which it might have bought a product at a lower price must prove the excluded firm was willing and able to supply it but for the incumbent firm's exclusionary conduct."). The potential entrant must have "both the intention and preparedness to compete."[70] Ford has no evidence of any of that.

---

[69] As to damages, "even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork." *Ezzo's Invs.*, 243 F.3d at 991 (quoting *Elder–Beerman Stores Corp. v. Federated Dep't Stores, Inc.*, 459 F.2d 138, 150 (6th Cir. 1972)). As explained in the *Daubert* Motion, here, Ford's expert's damages are just that—guesswork—and thus Ford cannot establish its damages in addition to its inability to prove causation.

[70] *Huron*, 666 F.2d at 1033. Relevant factors include, but are not limited to, the would-be entrant's: (1) "background and experience" in the business; (2) "financial ability to enter"; (3) "substantial affirmative action toward entry"; and (4) "consummation of contracts in preparation for entry." *Id.* (collecting authorities); *see also Acad. of Allergy & Asthma*, 155 F.4th at 814 (noting that a would-be entrant "must identify concrete steps they took to enter" and citing *Huron*, *Sunbeam*, and *Dual-Deck* (*see infra*)). Other circuits impose substantively identical proof

Indeed, [redacted][71]

***Ford's Expert Offers No Opinion on Entry.*** Ford has no evidence to prove the existence of a competitor willing and able to enter each of the relevant markets. Rather than even attempt to develop such evidence, [redacted].[72] [redacted]. Ex. 47, Krock Tr. at 96:3-7. [redacted] *Id.* at 159:21-23, 160:9-12. [redacted] *Id.* at 129:21-130:8, 134:2-4, 152:23-24. It is an inescapable

requirements on such plaintiffs in both Section 1 and Section 2 cases, regardless of whether the plaintiff is a customer or competitor. *See, e.g.*, *Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1273 (11th Cir. 2013); *JAWHBS LLC v. Arevalo*, 2017 WL 1345141, at *6 (S.D. Fla. Apr. 12, 2017); *Meijer*, 533 F.3d at 862; *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1465 (9th Cir. 1993); *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985).

[71] Ex. 47, Krock Tr. at 241:14-18 ("[redacted]").

[72] Ex. 45, Raiff Rep. ¶ 67 ("[redacted]"); Ex. 56, Krock Rep. ¶ 41; Ex. 47, Krock Tr. at 94:3-96:7 ("[redacted]"), 122:6-8 ([redacted]).

conclusion [redacted].[73]

The failures of Ford's expert are particularly glaring given that, when BCBSM asked interrogatories about Ford's evidence of supposed entry, Ford responded that BCBSM's interrogatories were premature and the answers sought would be provided by Ford's experts and consultants, but, as Ford's expert confirmed, [redacted][74] Ford has no "proof of a 'willing and able' competitor 'standing in the wings, ready to swoop in'" to support its blocked entry theory, and without that evidence its claim fails as a matter of law. *Sunbeam*, 711 F.3d at 1273.

***The Evidentiary Record Shows Successful Entry Is Unlikely.*** Ford also lacks evidence to show that even if some health plans had entered some of the relevant areas where Ford buys health benefits products, the entrant could have grown sufficiently large to service Ford's (substantial) business. [redacted]

---

[73] Ex. 56, Krock Rep. ¶¶ 41, 49, 119; Ex. 47, Krock Tr. at 91:11-15, 104:12-106:12 ([redacted], 109:24-110:25, 122:22-123:17, 129:21-130:8 ([redacted]).

[74] ECF 74-4, PageID.5014-16, Ford's Answer to First Set of Interrog. Nos. 5-7; Ex. 47, Krock Tr. at 228:5-235:24. Ford's corporate witnesses were also unable to provide any information. ECF 70-5, PageID.3889, Def. 30(b)(6) Dep. Notice, Topic No. 9; Ex. 44, De Haan Tr. at 216:24-227:14; Ex. 54, Catka Tr. at 30:17-31:18.

[redacted]. Ex. 47, Krock Tr. at 50:25-51:1. [redacted] *Id.* at 81:15-82:7. And the record facts—as opposed to Dr. Krock's speculation—establish that entering new geographies and building a provider network sufficient to service a National Account like Ford is immensely challenging. In reality, there [redacted].[75] SOF ¶¶ 19-21; Ex. 40, Aetna Decl. ¶ 9; Ex. 41, Cigna Decl. ¶ 12; Ex. 42, UHC Decl. ¶ 5. It took [redacted]. SOF ¶ 20. Growth through acquisition, however, *reduces* competition in ways that cut against Ford's theory (*e.g.*, by reducing the number of competitors).[76]

[75] That number has contracted, not expanded, now that Humana ceased offering commercial health benefits products in 2023. SOF ¶ 19.

[76] The recent decision in *Michigan v. BP, P.L.C.* underscores why the "tenuous causal connection" inherent in Ford's theory of harm is fatal. 2026 WL 2853779, at *10-11. There, the court dismissed antitrust claims because attempting to link a 1970s conspiracy to suppress production and distribution of renewable energy to alleged energy overcharges in the 2020s required the court to "disentangle . . . market forces from Defendants' decades-old conspiracy to determine how much lower energy prices would be if Defendants had not engaged in the conspiratorial conduct." *Id.* at *10. Just as the *BP* court found it impermissibly speculative to reconstruct what the market would have looked like absent a decades-old conspiracy, it would be entirely speculative (and in direct conflict with real-world evidence) to assume that, absent the challenged conduct, any individual Blue Plan ([redacted]

***The Record Contradicts Ford's Assumptions About the Benefits of Hypothetical Entrants.*** [redacted] SOF ¶ 24. [redacted][77] At the same time, [redacted][78] Astonishingly, [redacted] Ex. 56, Krock Rep. ¶ 96. In fact, [redacted][79]

## IV. FORD'S CLAIMS ARE TIME-BARRED

Finally, Ford's damages model unambiguously reveals that it is pursuing

---

[redacted]) would have been able to compete for Ford's business in a way that other health plans in the real world have not.

[77] Ex. 45, Raiff Rep. ¶¶ 51, 60, 66-67.

[78] *See* Ex. 45, Raiff Rep., App. III; Ex. 47, Krock Tr. at 202:10-20.

[79] Ex. 48, Trish Rep. ¶¶ 61-62, 69-70.

claims for conduct that Ford believes injured it, if at all, long before 2008.[80] Claims for damages under Section 4 of the Clayton Act are "forever barred unless commenced within four years after the cause of action accrued," unless the statutory period is tolled by some equitable doctrine or continuing violations. 15 U.S.C. § 15b; *see Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-91 (1997).

### A. <u>Old Blocked Entry Is Time-Barred</u>

Ford can only recover damages for harm it can prove during the statute of limitations, which is calculated based on when the cause of action accrues. *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007). "Courts look to a defendant's overt acts, rather than the effects of those acts" to determine when a cause of action accrues. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1021 (6th Cir. 1999); *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (per curiam).[81] Since Ford is seeking to recover damages for an

---

[80] BCBSM and BCBSA asserted the statute of limitations as an affirmative defense in their respective answers to Ford's complaint. ECF 32, PageID.1023 (April 15, 2024); ECF 33, PageID.1064 (April 15, 2024).

[81] "[A]cts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467-68 (6th Cir. 1996); *Peck*, 894 F.2d at 849; *Klehr*, 521 U.S. at 189 ("commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period"); *Chalmers v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 3628416, at *4 (2d Cir. Dec. 15, 2025) ("the statute of limitations is not tolled simply in order to wait and see just how well the defendant does in the market from which he excluded the plaintiff." (quoting *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984))).

alleged reduction in competition caused by Blue Plans being "blocked" from independently expanding beyond their territories to compete for Ford's business, the relevant "overt act" is the date a Blue Plan was first blocked from entering into the ESAs where Ford purchases health benefits products. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971) (antitrust claim "accrues and the statute begins to run when a defendant *commits an act* that injures a plaintiff's business" (emphasis added)).[82]

At the motion to dismiss stage, this Court credited Ford's allegation that each instance of underpayment constituted a continuing violation, and thus "each allegedly wrongful payment would constitute a new cause of action." ECF 30, PageID.950. However, discovery has revealed that Ford's chosen theory is that it has been injured by blocked competitive entry that Ford claims would have occurred well before the statute of limitations period, because [redacted]. Ex. 45, Raiff Rep. ¶ 16. Even if one accepts Ford's entry

---

[82] *See, e.g.*, *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714-15 (11th Cir. 1984); *Kaw Valley Elec. Co-op Co. v. Kan. Elec. Power Co-op, Inc.*, 872 F.2d 931, 934 (10th Cir. 1989) (holding that final refusal of defendant to allow access to the electric power market was the injurious act); *Farbenfabriken Bayer, A.G. v. Sterling Drug, Inc.*, 153 F. Supp. 589, 593 (D.N.J. 1957) (competitor's blocked entry from market is the injurious act and any general inability to enter the market is the "consequence of the earlier conduct of the defendant"); *Litovich v. Bank of Am. Corp.*, 2025 WL 2521039, at *16-17 (S.D.N.Y. Sept. 2, 2025) (barring claim for group boycott that supposedly blocked entrants prior to the limitations period).

assumptions, zero basis exists to conclude that any Blue Plan(s) would have been able to grow to become a competitive nationwide health plan and taken market share instantaneously (*see supra* Section III.B; SOF ¶¶ 19-21)—[redacted].[83] [redacted] SOF ¶ 20. Because [redacted][84] And as a result, Ford's claims fail completely because they are barred by the statute of limitations.

### B. Fully-Insured Claims Prior to November 2, 2016 Are Time-Barred

Ford's fully-insured claims are separately time-barred because they were not included in the damages class in the original *Cerven* complaint, and therefore were not tolled. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1974).[85]

---

[83] *See* Ex. 45, Raiff Rep. ¶¶ 16, 67-73; Ex. 47, Krock Tr. at 87:14-21, 90:18-92:19 ("[redacted]."); *Daubert* Motion, § I.B.

[84] Ex. 47, Krock Tr. at 54:6-18, 87:14-88:16, 90:18-92:19 ([redacted]).

[85] *See also Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983); *Machesney v. Ramsgate Ins., Inc.*, 2014 WL 2605479, at *2 (E.D. Mich. June 10, 2014); *Weston v. AmeriBank*, 265 F.3d 366, 368-69 (6th Cir. 2001).

The Court previously granted Defendants' motion to dismiss Ford's claims stemming from its alleged purchase of ASO products prior to November 2, 2016, holding that the "*Cerven* complaint simply gave no notice to Defendants whatsoever that they would have to defend against alleged misconduct in the ASO market" and thus Ford could not benefit from the *Cerven* filing date for tolling purposes.[86] This Court's analysis regarding Ford's ASO products applies equally to its fully-insured claims because the original *Cerven* class only brought damages claims on behalf of "**individual or small group** full-service commercial health insurance." ECF 23-2, PageID.542-43 (¶ 21) (emphasis added). It is undisputed that Ford is a "large group" consumer as defined in *Cerven*. SOF ¶¶ 22, 28-30. Thus, just as with Ford's ASO claims, the first time its fully-insured claims were raised by a putative class such that Ford could invoke *American Pipe* tolling was the Fourth Amended Complaint in the subscriber-track of the MDL on November 2, 2020. SOF ¶ 29.

Ford concedes it was not part of the *Cerven* damages class, but relies on its purported inclusion in the *Cerven* injunctive-relief class to toll its damages claim.[87]

---

[86] Order, ECF 30, PageID.953 (quoting *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *31 (N.D. Ala. Aug. 9, 2022)). The Court determined Ford's ASO claims were first raised by the putative class on November 2, 2020, and that only ASO claims accruing on or after November 2, 2016 would be tolled. *Id.* at PageID.954, 956. Defendants explicitly "reserve[d] for another day any arguments that Ford's fully-insured claims (including its damages claims) were also not tolled by *Cerven*." BCBSA's Mot., ECF 20, PageID.490 n.2. That day has come.

[87] Ex. 57, Sept. 25, 2026 Email from W. Sherman.

That Ford is not included in the *Cerven* damages class, however, is dispositive as to whether it can rely on *American Pipe* tolling. Here, Ford is seeking damages claims under Section 4 of the Clayton Act, while the injunctive class sought equitable relief under Section 16, and a Section 4 claim for damages is not the same "claim" as a Section 16 claim for injunctive relief. Thus, a damages claim cannot be tolled based on inclusion in a prior injunctive class.[88] Indeed, another court in this district previously found that antitrust claims were not tolled where the plaintiff brought claims under the *same statute*, arising from the *same conduct*, but with a different damages theory. *Health All. Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, 2017 WL 1209099, at *2-3 (E.D. Mich. Mar. 31, 2017).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion should be granted.

Dated: October 23, 2026

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP
By: */s/ Karin A. DeMasi*
Karin A. DeMasi (*Adm. in E.D. MI.*, NY Bar 2831303)
Lauren R. Kennedy (*Adm. in E.D. MI.*, NY Bar 4932851)

BODMAN PLC
By: */s/ Alexandra C. Markel*
Alexandra C. Markel (P81705)
Sarah L. Cylkowski (P75952)
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226

[88] *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1452 (11th Cir. 1991) (explaining that "[s]ection 16 differs in important ways from section 4," and the claims require different factual showings); *Chancellor v. Coca-Cola Enters., Inc.*, 2008 WL 3307131, at *4 (S.D. Ohio Aug. 7, 2008) (rejecting *American Pipe* tolling for damages claims based on membership in an injunctive class because "each plaintiff's damages claim is unique and will have to be presented separately").

Hannah L. Dwyer (*Adm. in E.D. MI.*, NY Bar 5711841)
Two Manhattan West
375 Ninth Avenue, New York, NY 10001
(212) 474-1000
kdemasi@cravath.com
lkennedy@cravath.com
hdwyer@cravath.com

SCHENK & BRUETSCH PLC
Brian C. Summerfield (P57514)
211 West Fort Street
Suite 1410
Detroit, MI 48226
(313) 774-1000
brian.summerfield@sbdetroit.com

*Attorneys for Defendant Blue Cross Blue Shield Association*

(313) 392-1088
amarkel@bodmanlaw.com
scylkowski@bodmanlaw.com

ALLEN OVERY SHEARMAN STERLING US LLP
Todd M. Stenerson (P51953)
Brian C. Hauser (*Adm. in E.D. MI*, D.C. Bar 1024406)
1101 New York Avenue, NW
Washington, D.C. 20005
(202) 508-8000
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski (*Adm. in E.D. MI*, TX Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777
rachel.zieminski@aoshearman.com

Susan Loeb (*Adm. in E.D. MI*, NY Bar 5570940)
Sophie Copenhaver (*Adm. in E.D. MI*, NY Bar 6004766)
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000
susan.loeb@aoshearman.com
sophie.copenhaver@aoshearman.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ Alexandra C. Markel*
Alexandra C. Markel (P81705)
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
(313) 392-1088
amarkel@bodmanlaw.com

*Attorney for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company*