# Exhibit 1

# Unpublished Cases

2021 WL 1206525
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Eastern Division.

Ray Scott HEID, et al., Plaintiff,
v.
Gary MOHR, et al., Defendants.

Case No. 2:18-cv-311
|
Signed 03/31/2021

**Attorneys and Law Firms**

Ray Scott Heid, Lebanon, OH, Pro Se.

James E. Damron, Leavittsburg, OH, Pro Se.

Maureen Cecilia Yuhas, Mindy Ann Worly, Thomas E. Madden, Ohio Attorney General's Office, Byron D. Turner, Ohio Department of Rehabilitation and Correction, Columbus, OH, for Defendants Trevor Clark, Ryan Dolan, Matt Gillum, Scott Gobels, Eric Graves, D.J. Norris, Jennifer Williams, Donna Skaggs.

Maureen Cecilia Yuhas, Ohio Attorney General's Office, Columbus, OH, for Defendant John/ Jane Doe.

John/ Jane Doe, Pro Se.

**OPINION AND ORDER**

ELIZABETH A. PRESTON DEAVERS, UNITED STATES MAGISTRATE JUDGE

***1** This matter is before the Court for consideration of Defendants' Motion for Protective Order (ECF No. 138); Plaintiffs' Motion for Court Ordered Discovery Plan (ECF No. 140); Plaintiffs' Motion to Compel Defendants to Respond to Request for Interrogatories, Request for Production, and Requests for Admissions (ECF No. 141); Plaintiffs' Motion for Discovery Sanctions (ECF No. 152); and Plaintiffs' Motion for Rule 11 Sanctions (ECF No. 154). Each of these Motions is ripe for decision. For the reasons stated herein, Defendants' Motion for Protective Order (ECF No. 138) is **GRANTED**; Plaintiffs' Motion for Court Ordered Discovery Plan (ECF No. 140) is **DENIED WITHOUT PREUDICE**; Plaintiffs' Motion to Compel Defendants to Respond to Request for Interrogatories, Request for Production, and Requests for Admissions (ECF No. 141) is **GRANTED IN PART AND DENIED IN PART**; Plaintiffs' Motion for Discovery Sanctions (ECF No. 152) is **DENIED**; and Plaintiffs' Motion for Rule 11 Sanctions (ECF No. 154) is **DENIED**.

## I.

From January 2020 to June 2020, Plaintiffs, proceeding without the assistance of counsel, served various discovery requests upon Defendants. (*See* ECF No. 138-3 at PAGEID ## 2248-2280 (the "Discovery Requests").) On March 17, 2020, Defendants' counsel sent Plaintiffs a letter objecting to certain Discovery Requests as "offensive, seek[ing] personal information not related to the litigation, and beyond the bounds of what is tolerated in civil litigation," and advising Plaintiffs that "[i]f you do not submit modified requests by April 1, 2020 or my office does not receive a letter from you regarding this discovery requests, then I will move forward with filing a Motion for Protective Order." (*Id.* at PAGEID ## 2241-2244.) On March 23, 2020, Plaintiff Damron responded to the March 17, 2020 letter and advised Defendants' counsel to "do whatever it is you plan to." (*Id.* at PAGEID ## 2245-2246.) Accordingly, on August 5, 2020, Defendants filed their Motion for Protective Order. (ECF No. 138 ("Defendants' Motion").) On August 20, 2020, Plaintiffs filed a related Motion to Compel Defendants to Respond to Request for Interrogatories, Request for Production, and Requests for Admissions. (ECF No. 141 ("Plaintiffs' Motion to Compel").) The parties then fully briefed Defendants' Motion and Plaintiffs' Motion to Compel. (*See* ECF Nos. 143-145, 151-152.)

Separately, on August 20, 2020, Plaintiffs filed Plaintiffs' Motion for Court Ordered Discovery Plan, setting forth a proposed deposition protocol. (ECF No. 140 ("Plaintiffs' Motion for Deposition Protocol").) Defendants never responded to Plaintiffs' Motion for Deposition Protocol.

Finally, on October 26, 2020, after the above briefing had concluded, Plaintiffs filed a Motion for Rule 11 Sanctions, seeking various sanctions related to Defendants' response to Plaintiffs' Motion to Compel. (ECF No. 154 ("Plaintiffs' Motion for Sanctions").) Plaintiffs' arguments echoed, and expanded upon, arguments raised in their Motion for Discovery Sanctions, which was attached to Plaintiffs' reply brief in support of Plaintiffs' Motion to Compel. (*See* ECF No. 152 at PAGEID ## 2408-2410.) Defendants responded to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Plaintiffs' Motion for Sanctions on November 16, 2020. (ECF No. 156.) Plaintiffs did not file a Reply brief.

***2** Accordingly, Defendants' Motion (ECF No. 138), Plaintiffs' Motion for Deposition Protocol (ECF No. 140), Plaintiffs' Motion to Compel (ECF No. 141), Plaintiffs' Motion for Discovery Sanctions (ECF No. 152), and Plaintiffs' Motion for Sanctions (ECF No. 154) are all ripe for this Court's review.

## II.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). " 'It is well established that the scope of discovery is within the sound discretion of the trial court.' " *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite to filing a discovery motion has been satisfied, as the parties have attached correspondence between the parties seeking to resolve the discovery disputes. (*See* ECF No. 138-1 at PAGEID ## 2241-2247.)

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" it will not satisfy the standard. *Id.* (citation omitted).

***3** Under Federal Rule of Civil Procedure 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense, ..." Fed. R. Civ. P. 26(c)(1). The burden of establishing good cause for a protective order rests with the movant. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). The decision to grant or deny a motion for protective order "falls within the broad discretion of the district court managing the case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988). "To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of

protection is required.... The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Under Federal Rule of Civil Procedure 36(a)(6), the requesting party may challenge the sufficiency of an answer or objection to a request for admission. Under the Rule, "[u]nless the court finds an objection justified, it must order that an answer be served," and "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6). The requesting party bears the burden of demonstrating that the responding party's answers or objections were insufficient. *Snyder v. Fleetwood RV, Inc.*, No. 2:13-CV-1019, 2016 WL 339972, at *7 (S.D. Ohio Jan. 28, 2016).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense ... outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.' " *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery' " because " 'restoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 575 F.3d at 305) (emphasis in original).

## III.

Applying the foregoing authority, the Court now considers in turn the pending motions, starting with the pending discovery motions: Defendants' Motion (ECF No. 138) and Plaintiffs' Motion to Compel (ECF No. 141).

### A. Defendants' Motion

Defendants seek an order of protection regarding various requests for admissions and other discovery. (ECF No. 138.) Defendants categorizes the subject requests for admissions into three categories: "Personal Belief Requests"; "Generalized or Hypothetical Requests"; and "Miscellaneous" requests. (*Id.*) For the sake of consistency, the Court adopts Defendants' categorizations of the subject requests, and will analyze each of Defendants' arguments in turn below.

#### 1. Personal Belief Requests

First, Defendants identify seven [1] "Personal Belief Requests" which Defendants argue "are personal questions that are unrelated to Defendants['] positions as Ohio Department of Rehabilitation and Correction ("ODRC") employees but rather seek their personal opinions and perspectives." (ECF No. 138 at PAGEID ## 2232-2235.) Although the specific Personal Belief Requests differ from Defendant to Defendant, they are substantially identical, to the extent Plaintiffs ask Defendants to admit the following:

***4** 1. You are not a Constitutional originalist.

2. You are a Constitutional [or political] progressive.

3. You do not support the preservation of the racial purity of the White race.

4. You do not support miscegenation.

5. You do not believe in creationism, i.e., human beings were created by God.

6. You participate in social change agendas.

7. You believe that White people who wish to remain racially pure are white supremacists or otherwise STG affiliates.

(*Id.*; *see also* ECF No. 138-3 at PAGEID ## 2253-2254 (directed to Defendant Graves); ECF No. 138-4 at PAGEID # 2264 (directed to Defendant Gobels); ECF No. 138-5 at PAGEID # 2275 (directed to Defendant Dolan); ECF No. 138-6 at PAGEID ## 2287, 2291 (directed to Defendant Gillum); ECF No. 138-7 at PAGEID ## 2299, 2303 (directed to Defendant Norris); ECF No. 138-8 at PAGEID ## 2309-2310 (directed to Defendant Clark).) Defendants argue that these Personal Belief Requests are irrelevant to Plaintiffs' claims, and indeed are "unrelated to objective fact, application of law to fact, or opinions on either," which is the scope of

requests for admissions set forth by Federal Rule of Civil Procedure 36(a). (ECF No. 138 at PAGEID ## 2232-2235.)

In response, Plaintiffs argue that Defendants' refusal to answer these Personal Belief Requests "will irrefutably prejudice the Plaintiffs' claims against the Defendants in their individual capacities where Plaintiffs will be prohibited from proving that Defendants acted outside the scope of their employment." (ECF No. 143 at PAGEID # 2358.) Specifically, Plaintiffs argue that the first two Personal Belief Requests "are related to the establishment of facts relevant to Plaintiffs' equal treatment and discrimination claims." (*Id.* at PAGEID # 2359.) Specifically, Plaintiffs believe "the answers to these admissions will show a determinative probability that Defendant[s] [have or haven't] used bias or political interest to discriminate against Plaintiffs" and "may lead to evidence of a pattern of conduct where STG policies are used by political opponents of Aryan-American Nationalists to keep such idea[s] suppressed." (*Id.* at PAGEID # 2360.)

As to the third and fourth Personal Belief Requests, Plaintiffs argue that their "beliefs and ideologies ... are to preserve the racial integrity of the White race," so "these requests are relevant as they establish evidence having a tendency to make the existence of the Defendants' malicious state of mind a consequence to the determination of whether Defendants acted maliciously." (*Id.* at PAGEID ## 2360-2361.) Next, Plaintiffs argue that the fifth Personal Belief Request seeks "facts relating to the state of mind of Defendants' opinions about Christianity" and "would establish whether or not Defendants oppose the beliefs of Christianity," which Plaintiffs believe would provide circumstantial evidence that "could be the determinative factor in a jury's finding of malicious intent." (*Id.* at PAGEID # 2361.)

***5** Plaintiffs maintain that the sixth Personal Belief Request is relevant because "social change agendas of today are seemingly targeted at eradicating Aryan history," and Defendants' positions allow them to "carry out what they see as 'social change agendas' by using their STG policies to oppress an entire class of people: Aryan-Americans." (*Id.* at PAGEID ## 2361-2362.) Finally, Plaintiffs contend that the last Personal Belief Request "is meant to evince the fact that Defendants use their STG policies to police thoughts and ideas" by "weaponiz[ing] the policies under their control to irresponsibly criminalize Aryan-Americans for the belief of racial purity." (*Id.* at PAGEID # 2362.) Again, Plaintiffs argue this Personal Belief Request "goes directly to the relevancy of the Defendants' malicious actions." (*Id.* at PAGEID ## 2362-2363.)

The Court finds that Plaintiffs' Personal Belief Requests are beyond the scope of permissible requests for admissions because they are irrelevant to their claims and intended solely to harass Defendants. Critically, Plaintiffs have failed to show that the information sought is relevant. *Gruenbaum*, 270 F.R.D. at 302. Plaintiffs appear to believe that they can seek nearly any personal information or opinion from Defendants because they have asserted claims against them in their individual capacities. But the concept of relevance is not unlimited. Plaintiffs' discovery requests must still have *some* connection to their claims, and the Personal Belief Requests completely fail this basic test.

Defendants' constitutional or political opinions, their views about racial purity or miscegenation, their religious beliefs, their participation in "social change agendas" (an undefined term), and their personal definition of white supremacy have no bearing on this case. For example, to the extent Plaintiffs believe the answers to such requests may lead to evidence of Defendants' malice, they are incorrect. None of the Personal Belief Requests goes towards a "(1) state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm," which is the definition of malice that has been adopted by Ohio courts. *See MacNeill v. Wyatt*, 917 F. Supp. 2d 726, 729 (S.D. Ohio 2013) (citing *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus (Ohio 1987)). Finally, the Court rejects outright Plaintiffs' argument that allowing Defendants not to answer the Personal Belief Requests will prejudice their ability to prove "that Defendants acted outside the scope of their employment." (ECF No. 143 at PAGEID # 2358.) Every person has personal, political, racial, religious, and social views. Merely having personal views and beliefs does not mean that someone was acting outside the scope of one's employment.

Federal Rule of Civil Procedure 26(c)(1) was designed for situations just as this, where the Court must step in to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Accordingly, Defendants' Motion (ECF No. 138) is **GRANTED** as to the Personal Belief Requests.

**2. Generalized or Hypothetical Requests**

Next, Defendants identify eleven "Generalized or Hypothetical Requests" which Defendants argue are either

"generalized in a manner such that it is impossible to either admit or deny" or "do not have a definitive answer and the varying responses are heavily context dependent." (ECF No. 138 at PAGEID ## 2235-2238.) Unlike the Personal Belief Requests, which were served on all Defendants, only Defendant Graves was served with the Generalized or Hypothetical Requests, which read as follows:

1. STG offenders are considered home grown terrorists.

2. STG affiliates are considered violent offenders.

***6** 3. STG affiliates are considered a threat to society.

4. STG affiliates are considered a threat to the security and good order of the institutions.

5. Ideas of racial separation will result in an STG classification with a separatist group.

6. STG classifications bear a determining factor to parole suitability pursuant to OAC 5120-1-1-07.

7. It is completely possible that one profiled as a member of the STG affiliation of white separatists does not know any other member, has never met any other member, and is oblivious to the existence of any other white separatist.

8. An offender who doesn't know that a white separatist[ ] group exist[s] will nonetheless be profile[d] as a member thereto if he is white and admits a belief in racial separation.

9. There are more inmates who prefer to cell with members of their own race than there are of inmates who prefer to cell with members of a different race.

10. The only alternative to the practice of forced racial integrated cell assignment is to be profiled as an STG affiliate.

11. More White inmates are transferred from level-2 institutions to level-3 institutions for non-violent STG reasons than are black inmates.

(*Id.*; *see also* ECF No. 138-3 at PAGEID ## 2254-2256.) As to the first five Generalized or Hypothetical Requests, Defendants argue that the answers depend on each individual, and "each individual inmate is different." (ECF No. 138 at PAGEID # 2235.) Defendants submit that "the threat level or violence level of an individual may consider factors such as the inmate's underlying offense, institutional disciplinary record, interactions with officers and institutional personnel, interactions with other inmates, and other considerations." Defendants continue that "[a]ccurately responding to any of these requests would place an undue burden on Defendants because it would require them to account for every single inmate's personal background, history, and seemingly endless other factors." (*Id.* at PAGEID ## 2235-2236.)

Plaintiffs respond that the first five Generalized or Hypothetical Requests "are specific and do[ ] not call for an answer to 'every potential variant.' " (ECF No. 143 at PAGEID # 2363.) Plaintiffs argue that the discovery definitions instruct Defendants to understand that "the use of the singular form of any word includes the plural and vice versa," so with regard to the first Generalized or Hypothetical Request, for example, Plaintiffs state that they seek to know whether "***one or more*** STG offenders are considered a homegrown terrorist," rather than whether ***all*** "STG offenders are considered home grown terrorists," as the request reads literally. (*Id.* (emphasis added).) The Court rejects Plaintiffs' argument, as Plaintiffs have failed to show how knowing whether ***any*** STG offender is considered a homegrown terrorist, a violent offender, or a threat to society, has any bearing on ***Plaintiffs'*** claims. Plaintiffs are wrong to conclude that one STG offenders' circumstances are necessarily applicable to anyone else, let alone everyone else, and the Court rejects Plaintiffs' argument that such requests are connected to Plaintiffs' theory that Defendants are trying to suppress or oppress "Aryan culture." (*Id.* at PAGEID # 2365.) Conversely, the Court also agrees that it would be unduly burdensome to compel Defendants to answer these Generalized or Hypothetical Requests, because doing so would necessarily require Defendants to account for every single inmate.

***7** With regard to the sixth Generalized or Hypothetical Request, Defendants argue that "the issue of parole eligibility is irrelevant ... because it is unconnected to Plaintiffs' claims of First Amendment, Fourteenth Amendment, and RLUIPA violations," and because both Plaintiffs are facing potential life sentences that are not being challenged. (ECF No. 138 at PAGEID # 2236.) Defendants further suggest that the request is inappropriate because "none of the named Defendants are members of the parole board." (*Id.*) Plaintiffs do not respond to these arguments.[2] The Court concludes that Defendants' arguments are well taken.

Finally, Defendants argue that the last five Generalized or Hypothetical Requests "are impossible to answer, and therefore, are unduly burdensome." (*Id.*) Defendants state that

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

"[a] simple admission or denial of any of these requests would be misleading and inaccurate," and "[d]etailed answers would require in-depth analysis of all potential variables, resulting in responses that could fill an entire treatise." (*Id.* at PAGEID ## 2237-2238.) Plaintiffs only respond regarding the last three Generalized or Hypothetical Requests,[3] arguing that they "are relevant ... as they go to the theory of the case insofar that they show the discriminatory use of STG policies." (ECF No. 143 at PAGEID # 2365.) The Court rejects Plaintiffs' argument. Plaintiffs again seek black-and-white admissions to context-dependent questions. But such oversimplification is overbroad, unduly burdensome, and does not serve the purpose of requests for admissions. *Cogent Sols. Grp., LLC v. Brown*, No. 2:12-CV-665, 2013 WL 12121522, at *2 (S.D. Ohio Mar. 4, 2013) ("Requests for admissions ... differ from other discovery tools contemplated under the Federal Rules of Civil Procedure. 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' ") (citing *Quicken Loans v. Jolly*, No. 2:07-cv-13143, 2007 WL 3408551, at *2 (E.D. Mich. Nov. 15, 2007) (citing 4 Moore's Federal Practice, 36.04(2); Wright, Federal Courts, sec. 89 at p. 343)); *see also Static Control Components, Inc. v. Lexmark Int'l, Inc.*, No. 5:02-571, 2007 WL 1485867, at *3 (E.D. Ky. Apr. 19, 2007) (quoting *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997)) ("[T]he purpose of requests for admission 'is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact.' ").

Accordingly, Defendants' Motion (ECF No. 138) is **GRANTED** as to the Generalized or Hypothetical Requests.

### 3. Miscellaneous Requests

Finally, Defendants identify five "Miscellaneous Requests" as objectionable. (ECF No. 138 at PAGEID ## 2238-2239.) Again, the Miscellaneous Requests were only propounded upon Defendant Graves, and they read as follows:

1. Policy 310-SEC-12 is linked with law enforcement data outside of prison, e.g., STG classifications follow the offender after release.

2. Inmates are forced, under threat of punishment via 5120-9-06(C)(23), to racial integrated cell assignments.

***8** 3. ODRC uses its practice of forced integration to keep Aryan-Americans from being suitable for level-2 housing.

4. White supremacy is the practice of enslaving other races under white subjugation.

5. White superiority is the belief that the White race [has] better overall attributes than other races.

(*Id.*; *see also* ECF No. 138-3 at PAGEID ## 2254-2256.) Defendants argue that the first Miscellaneous Request "seeks [ ] information regarding a confidential policy that inmates are not allowed to possess," because the cited policy "is vital to the institutional security of all ODRC facilities and their operations" and "[d]isclosure of these policies would jeopardize such security." (ECF No. 138 at PAGEID # 2238.) Next, Defendants argue that the second Miscellaneous Request "is irrelevant and improper because Plaintiffs are not suing based upon a perceived constitutional violation due to a cell assignment," but regardless "it is well known that any governmental entity is forbidden from segregating based on race" under Title VI of the Civil Rights Act of 1964. (*Id.*) For that reason, Defendants also argue that the third Miscellaneous Request is improper. (*Id.*) Finally, Defendants argue that the fourth and fifth Miscellaneous Requests are improper because "there is not one definitive definition" for "white supremacy" or "white superiority," and regardless, "white supremacy and white superiority are not at issue in the present lawsuit, making these questions and any responses to these questions completely irrelevant." (*Id.* at PAGEID ## 2238-2239.)

Plaintiffs respond by arguing that the First Miscellaneous Request "simply asks if the STG policy is linked with law enforcement data outside [of] the prison system," which "shows the long lasting effects that a capricious STG profiling can have." (ECF No. 143 at PAGEID ## 2367.) The Court disagrees, and agrees instead with Defendants that "[c]onfirmation or denial of security protocols effects security operations," and the Court finds that Plaintiffs have failed to show otherwise. (ECF No. 151 at PAGEID # 2401.) Regardless, the Court finds that Plaintiffs have failed to show how this request is relevant to their claims, given that the subject lawsuit does not concern any potential release from incarceration. (*Id.* at PAGEID # 2402.)

Plaintiffs also respond that the second Miscellaneous Request "is relevant ... as the information sought would establish the

probability that Defendants use the STG policy to entrap inmates who hold beliefs the Defendants oppose." (ECF No. 143 at PAGEID # 2367.) The Court again disagrees and finds this request to be irrelevant, as it is disconnected from Plaintiffs' claims in this case and because it is based on the false premise that racial integration is a "forced" policy decision by Defendants to maintain order, rather than the law of the land. Rather, as the Supreme Court of the United States has recognized multiple times, racial classifications in prisons "threaten to stigmatize individuals by reason of their membership in a racial group and to *incite racial hostility*." *Johnson v. California*, 543 U.S. 499, 507 (2005) ("Indeed, by insisting that inmates be housed only with other inmates of the same race, it is possible that prison officials will breed further hostility among prisoners and reinforce racial and ethnic divisions. By perpetuating the notion that race matters most, racial segregation of inmates 'may exacerbate the very patterns of [violence that it is] said to counteract.' ") (emphasis in original; internal citations omitted); *see also Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) ("In prison housing, the Equal Protection Clause forbids racial classifications absent compelling justifications and a narrowly tailored plan.") (citing *Johnson*); *Blacker v. Satterthwaite*, No. 1:08-CV-874, 2011 WL 6338851, at *4 (S.D. Ohio Oct. 14, 2011), *report and recommendation adopted*, No. 1:08-CV-874, 2011 WL 6370054 (S.D. Ohio Dec. 19, 2011) ("Certainly, prison officials ordinarily cannot be faulted for refusing to segregate prisoners on the basis of race, since such a policy would subject them to potential liability on other constitutional grounds.") (citing *Johnson*).[4] The Court also finds that the third Miscellaneous Request is improper for this reason.

***9** Finally, Plaintiffs argue that the final two Miscellaneous Requests "are directly relevant in this case," and "[i]f the Defendants do not agree with these definitions they could have simply denied the request pursuant to FRCP 36." (ECF No. 143 at PAGEID # 2367.) The Court disagrees, and finds that personal definitions of "white supremacy" and "white superiority" are not relevant to this case. As discussed, "Rule 36 is not a discovery device," and these two Miscellaneous Requests go beyond the scope of Rule 36. *Cogent Sols. Grp., LLC*, 2013 WL 12121522, at *2 (internal citations omitted); *see also* Fed. R. Civ. P. 36(a)(1) ("A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to ... facts, the application of law to fact, or opinions about either.").

Accordingly, Defendants' Motion (ECF No. 138) is **GRANTED** as to the Miscellaneous Requests.

**4. Relief**

For the reasons discussed above, it is **ORDERED** that Defendants need not respond to the Personal Belief Requests, the Hypothetical or Generalized Requests, or the Miscellaneous Requests. Defendants additionally request, however, that the Court enter one of three protective orders to clarify the scope of discovery going forward: (1) "Defendants ask that this Court forbid the disclosure of the items in the requests for admissions sent by Plaintiffs"; (2) "Defendants request the Court forbid inquiry into personal matters unrelated to the present litigation such as Defendants' personal beliefs, personal information, religious beliefs, or any matters not related to their duties within the [ODRC]"; and (3) "[a]n additional alternative is to limit the scope of discovery to matters directly related to Plaintiffs' claims regarding the alleged withholding of purported religious materials, any alleged discrimination based on ODRC policies and regulations, and the specific actions performed by Defendants related to the allegations contained in Plaintiffs complaint." (ECF No. 138 at PAGEID # 2239.)

Defendants' request for a more general protective order is well taken. Accordingly, Defendants' request is **GRANTED.** The Court **ORDERS** that discovery is limited to matters directly related to Plaintiffs' claims regarding the alleged withholding of purported religious materials, any alleged discrimination based on ODRC policies and regulations, and the specific actions performed by Defendants related to the allegations contained in Plaintiffs' complaint. This Order does not, however, preemptively excuse Defendants from responding to Plaintiffs' other discovery requests, as discussed below.

### B. Plaintiffs' Motion to Compel

Separately, Plaintiffs have filed a Motion to Compel requesting the Court to: (a) "deem all 'Requests for Admissions' ... admitted pursuant to FRCP 36(a)(3) unless Defendants can demonstrate good cause why they should not be," or "alternatively [to] compel Defendants to provide proper responses"; and (b) "order Defendants to respond to all discovery requests forthwith so that the wheels of justice may move forward in this case." (ECF No. 141 at PAGEID # 2338.) The Court will address Plaintiffs' Motion to Compel as it relates to each of their discovery requests in turn.

**1. Request for Admissions**

As discussed in relation to Defendants' Motion, Plaintiffs served a number of requests for admissions on Defendants. Plaintiffs argue that Defendants "did not answer or object to any of the Requests for Admissions submitted by Plaintiff Heid and did not answer or object to the Requests for Admissions submitted to Defendant Clark by Plaintiff Damron – with the exception of objections to the two requests regarding the racial purity of the white race and support of miscengenation." (ECF No. 141 at PAGEID ## 2335-2336.) Plaintiffs submit that "[e]ach Request for Admission involves facts specific to this case," and that "[t]he information responsive to these requests are necessary to this case because these admissions clarify facts pertaining to individual actions of the Defendants, their state of mind opinions which factor into the decisions they took, the truth about what took place regarding the removal of literature and political text, and the similarly situated position of the CS faith with other approved (authorized) faith groups." (*Id.* at PAGEID # 2336.) Plaintiffs believe such facts are "determinative of Plaintiffs' punitive damages claim." (*Id.*) In response, Defendants incorporate by reference the arguments set forth in Defendants' Motion, ECF No. 138. (ECF No. 144 at PAGEID ## 2373-2374.)

***10** Defendants' arguments are unavailing. Even incorporating Defendants' Motion and construing it as constituting proper objections to the requests for admissions at issue, it is unclear to the Court why Defendants have otherwise refused to answer ***any*** of the remaining requests for admissions. In the absence of any objection or argument to the contrary, Plaintiffs are entitled to such responses.

Accordingly, Plaintiffs' Motion to Compel (ECF No. 141) is **GRANTED IN PART** as to the requests for admissions that were not at issue in Defendants' Motion for Protective Order (ECF No. 138), and is **DENIED IN PART** as to the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests.

**2. Interrogatories**

Plaintiffs submitted twenty-five (25) interrogatories to Defendant Clark, and argue that he "did not answer any interrogatory submitted to [him,] [n]or did [he] provide any objection(s)." (ECF No. 141 at PAGEID # 2336; *see also* ECF No. 152 at PAGEID ## 2432-2442.) Plaintiffs argue that each interrogatory is "specific to the issues and claims of this action," and state that "most of what is sought is statistical data that does not disclose personal information and would be available upon a public records request." (ECF No. 141 at PAGEID ## 2336-2337.) Plaintiffs also maintain that "[t]he information responsive to the [interrogatories] are necessary to this case because they show the Defendants' discriminatory practices against Plaintiffs and Plaintiffs' faith[,] and that the Defendants' practices violated the Constitution." (*Id.* at PAGEID # 2337.) In response, Defendants suggest that "the general theme" of Plaintiffs' interrogatories "remains the same," and argue that Plaintiffs' Interrogatories "are beyond the bounds of relevancy for the present suit." (ECF No. 144 at PAGEID # 2375.) [5]

Again, Defendants' response does little to advise the Court why Defendant Clark refused to respond to *any* of Plaintiffs' interrogatories. While Defendants reference thirteen (13) interrogatories which they argue are irrelevant to Plaintiffs' claims, they do not identify such interrogatories. (*Id.* at PAGEID ## 2375-2376.) The bigger problem, however, is that Defendants provide no basis for Defendant Clark's refusal to respond to the other twelve (12) interrogatories which Defendants implicitly acknowledge are relevant, whichever they may be. In the absence of any objection or argument to the contrary, Plaintiffs are entitled to such discovery.

Accordingly, Plaintiffs' Motion to Compel (ECF No. 141) is **GRANTED** as to the interrogatories.

**3. Request for Production of Documents**

Plaintiffs submitted fifty-five (55) requests for production to Defendants, and again argue that "Defendants did not respond to the Request for Production." (ECF No. 141 at PAGEID # 2337; *see also* ECF No. 152 at PAGEID ## 2425-2431.) Plaintiffs argue that "Defendants are obligated to respond to each specific request, whether by answer or objection." (ECF No. 141 at PAGEID # 2337.) In response, Defendants argue that "[t]he documents Plaintiffs requested are similar to their requests for admissions in that they seek to stoke racial and religious division," and that "many of the document requests sought confidential information regarding Security Threat Groups, special investigations, medical files, disciplinary records, investigation logs, and generalized information of other inmates that are not parties to the present litigation." (ECF No. 144 at PAGEID # 2374.) Defendants submit that "[a]mong the 55 requests submitted, there are few that directly relate to Plaintiffs' claims in the present action." (*Id.* at PAGEID # 2375.)

***11** Again, Plaintiffs are entitled to discovery, and Defendants may not completely disengage in this part of the discovery process, no matter how repugnant it may be. In its response to Plaintiffs' Motion to Compel, Defendants concede that they have failed to respond to any of Plaintiffs' requests for production, and they provide no basis for doing so. But, Defendants concede that at least *some* of Plaintiffs' requests for production are appropriate. (ECF No. 144 at PAGEID # 2374 ("[T]here are [a] few that directly relate to Plaintiffs' claims").) Defendants provide no explanation for why they refused to respond to Plaintiffs' appropriate requests. But, Plaintiffs are entitled to responses or objections.

Accordingly, Plaintiffs' Motion to Compel (ECF No. 141) is **GRANTED** as to the requests for production.

### C. Conclusion

Accordingly, for the reasons set forth above, Defendants' Motion for Protective Order (ECF No. 138) is **GRANTED** as to the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests; and Plaintiffs' Motion to Compel Defendants to Respond to Request for Interrogatories, Request for Production, and Requests for Admissions (ECF No. 141) is **GRANTED IN PART**, as to the requests for admissions that were not at issue in Defendants' Motion for Protective Order and as to Plaintiffs' interrogatories and requests for production, and **DENIED IN PART**, as to the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests which were at issue in Defendants' Motion for Protective Order.

The Court further **ORDERS** that discovery is limited to matters directly related to Plaintiffs' claims regarding the alleged withholding of purported religious materials, any alleged discrimination based on ODRC policies and regulations, and the specific actions performed by Defendants related to the allegations contained in Plaintiffs' complaint. To that end, Defendants are **DIRECTED** to respond to Plaintiffs' discovery requests, except for the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests which were at issue in Defendants' Motion for Protective Order, by **APRIL 30, 2021**. Plaintiffs are **DIRECTED** to meet and confer with Defendants **NO LATER THAN MAY 14, 2021** if they believe Defendants' responses are insufficient.

## IV.

Separately, Plaintiffs also have filed Plaintiffs' Motion for Court Ordered Discovery Plan, submitting a proposed protocol "regarding the procedure for depositions." (ECF No. 140 at PAGEID ## 2328-2331.) At the end of Plaintiffs' proposal, Plaintiffs requested that Defendants to "propose a better way of handling the depositions" if Defendants objected to Plaintiffs' proposal. (*Id.* at PAGEID # 2331.) Defendants did not respond to Plaintiffs' filing.

In the absence of any input from Defendants, Plaintiffs' Motion for Court Ordered Discovery Plan (ECF No. 140) is **DENIED WITHOUT PREJUDICE**. Defendants are **DIRECTED**, however, to submit a proposed deposition protocol to Plaintiffs by **APRIL 30, 2021**. If Plaintiffs do not agree to Defendants' proposed deposition protocol, they shall meet and confer with Defendants **NO LATER THAN MAY 14, 2021**.

## V.

Plaintiffs also have filed a Motion for Discovery Sanctions, ECF No. 152, and Motion for Rule 11 Sanctions, ECF No. 154, seeking an order from the Court directing Defendants to respond to the discovery requests, as well as costs associated with preparing the motion. (ECF Nos. 152, 154.) The Court **DENIES** Plaintiffs' Motions. First, as discussed above, the Court already has directed Defendants to respond to the discovery requests, except for the requests for admissions at issue in Defendants' Motion. Second, however, the Court flatly rejects Plaintiffs' legal argument that Defendants' response in opposition to Plaintiffs' Motion to Compel "contains factual contentions that lack evidentiary support or are unlikely to have evidentiary support after a reasonable opportunity for further investigation or discovery." (ECF No. 154.) Plaintiffs misconstrue Defendants' argument for facts, and are far off-base to suggest that Defendants' counsel "is essentially weaponizing the legal system to carry out his personal agenda of estopping the Constitutional rights of Aryan-Americans." (*Id.*)

***12** To that end, the Court must also emphasize that Plaintiffs go well outside the bounds of common courtesy by personally attacking Defendants' counsel for making such permissible legal arguments. Plaintiffs' unnecessarily inflammatory language has no place in this Court and

the Court will not countenance it any further. The Court specifically **CAUTIONS** Plaintiffs that future *ad hominem* attacks will not be tolerated, and may subject Plaintiffs to sanctions. *See* S.D. Ohio Civ. R. Introductory Statement on Civility ("An opposing litigant, a lawyer who represents that litigant, or a Judge who decides an issue has not thereby forfeited the right to be treated with common courtesy.").

## VI.

For the foregoing reasons, Defendants' Motion for Protective Order (ECF No. 138) is **GRANTED**, and Plaintiffs' Motion to Compel Defendants to Respond to Request for Interrogatories, Request for Production, and Requests for Admissions (ECF No. 141) is **GRANTED IN PART AND DENIED IN PART**. Defendants are **DIRECTED** to respond to Plaintiffs' discovery requests, except for the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests which were at issue in Defendants' Motion for Protective Order, by **APRIL 30, 2021**. The Court further **ORDERS** that discovery is limited to matters directly related to Plaintiffs' claims regarding the alleged withholding of purported religious materials, any alleged discrimination based on ODRC policies and regulations, and the specific actions performed by Defendants related to the allegations contained in Plaintiffs' complaint. To that end, Defendants are **DIRECTED** to respond to Plaintiffs' discovery requests, except for the Personal Belief Requests, the Generalized or Hypothetical Requests, and the Miscellaneous Requests which were at issue in Defendants' Motion for Protective Order, by **APRIL 30, 2021**. Plaintiffs are **DIRECTED** to meet and confer with Defendants **NO LATER THAN MAY 14, 2021** if they believe Defendants' responses are insufficient.

Additionally, Plaintiffs' Motion for Court Ordered Discovery Plan (ECF No. 140) is **DENIED WITHOUT PREJUDICE**. Defendants are **DIRECTED**, however, to submit a proposed deposition protocol to Plaintiffs by **APRIL 30, 2021**. Plaintiffs are **DIRECTED** to meet and confer with Defendants **NO LATER THAN MAY 14, 2021** if they do not agree to Defendants' proposed deposition protocol.

Finally, Plaintiffs' Motion for Discovery Sanctions (ECF No. 152), and Plaintiffs' Motion for Rule 11 Sanctions (ECF No. 154), are **DENIED**. The Court expressly **CAUTIONS** Plaintiffs, however, that future *ad hominem* attacks on Defendants or Defendants' counsel will not be tolerated and may subject Plaintiffs to sanctions.

Having resolved the above discovery disputes, the Court further **ORDERS** that the Parties shall have until **JULY 1, 2021**, to complete discovery, and until **AUGUST 2, 2021**, to submit dispositive motions.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1206525

## Footnotes

1 Defendants discuss an "eighth" request for admission, but only listed seven Personal Belief Requests. (*Compare* ECF No. 138 at PAGEID # 2232, *with id.* at PAGEID # 2235.) The Court cannot guess whether Defendants intended to include any other Personal Belief Requests.

2 In Defendants' reply brief, Defendants notes that Plaintiffs' opposition "seems to be incomplete and missing pages from their response." (ECF No. 151 at PAGEID # 2400.) Despite this notice, Plaintiffs failed to supplement their opposition brief with the missing page, which may or may not contain argument about the Generalized or Hypothetical Requests. In the absence of such supplementation, the Court is limited to the briefing before it.

3 *See* Note 1.

4 The Court also takes judicial notice that Plaintiffs themselves have had an equal protection claim screened out by this Court for failure to state a claim upon which relief could be granted. *See Heid v. Hooks*, No. 2:17-CV-650, 2017 WL 4076465, at *2 (S.D. Ohio Sept. 14, 2017), *report and recommendation adopted*, No. 2:17-CV-650, 2018 WL 3628248 (S.D. Ohio July 31, 2018) ("Inmates retain the right to be free from government-sponsored race discrimination absent a compelling governmental interest supporting the racial classification.") (citing *Johnson*). Plaintiffs therefore should be well versed in the holding and application of the *Johnson* decision.

5 Defendants also argue that Plaintiffs' Motion to Compel should be denied because Plaintiffs failed to attach the subject discovery requests. (*See* ECF No. 144 at PAGEID ## 2374-2376.) While it is true that Plaintiffs did not initially attach the subject discovery requests to their Motion to Compel, Plaintiffs did attach the subject discovery requests in their Reply brief. (*See* ECF No. 152 at PAGEID ## 2413-2452.) The Court therefore rejects Defendants' argument.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 287923
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Amber Reineck HOUSE, et al., Plaintiffs,
v.
CITY OF HOWELL, MICHIGAN, et al., Defendants.

Case No. 20-cv-10203
|
Signed 01/31/2022

**Attorneys and Law Firms**

Glenn Schlactus, Lila Miller, Sara L. Pratt, Relman Colfax PLLC, Washington, DC, Robin Beth Wagner, Pitt McGehee Palmer & Rivers PC, Royal Oak, MI, Stephen M. Dane, Dane Law LLC, Perrysburg, OH, for Plaintiffs Amber Reineck House, Courtney Atsalakis, Fair Housing Center of Southeast & Mid Michigan, Inc.

Carol A. Rosati, Laura S. Amtsbuechler, Johnson, Rosati, Schultz & Joppich, P.C., Matthew J. Zalewski, Melanie Margaret Hesano, Rosati Schultz Joppich & Amtsbuechler, PC, Farmington Hills, MI, for Defendants.

**OPINION AND ORDER 1) FINDING THAT THE COURT WILL REVIEW THE CONTESTED PORTIONS OF MAGISTRATE JUDGE IVY'S REPORT AND RECOMMENDATION (ECF No. 69) *DE NOVO*; 2) REQUIRING DEFENDANTS TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2); AND 3) BIFURCATING THE LIABLITY AND DAMAGES PHASES OF THIS CASE**

Paul D. Borman, United States District Judge

## I. THE COURT WILL REVIEW THE CONTESTED PORTIONS OF MAGISTRATE JUDGE IVY'S REPORT AND RECOMMENDATION (ECF No. 69) *DE NOVO.*

***1** On June 17, 2021, this Court referred a set of motions to exclude experts—ECF Nos. 42, 43, 45, 46, 47, and 49—to Magistrate Judge Curtis Ivy Jr. "for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 50, PageID 7229.) On September 14, 2021, after those motions were fully briefed, Judge Ivy held a hearing on them. Fifteen days later, he issued his Report and Recommendation ("R&R"). (ECF No. 69.)

Defendants filed Objections to the R&R on October 13th (ECF No. 70), Plaintiffs responded to these objections on November 3rd (ECF No. 75), and Defendants replied to that Response on November 10th (ECF No. 76).

28 U.S.C. § 636 governs the jurisdiction and powers of magistrate judges, and the Court's review of their contributions. In particular, 28 U.S.C. § 636(b)(1)(A) states that:

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

And § 636(b)(1)(B) and (C) continue:

> [A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of any applications for posttrial relief made by individuals convicted of criminal offenses and

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> of prisoner petitions challenging conditions of confinement.... A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

Here, the Court referred the motions to exclude experts to Judge Ivy "for a[n] [R&R] pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 50.) Generally, following a referral under that provision, the Court would automatically review the portions of the R&R to which Defendants object *de novo.*

But Plaintiffs point out that motions to exclude experts are not excepted from § 636(b)(1)(A), nor are they applications of posttrial relief or prisoner petitions. (ECF No. 75, Response to Objections, PageID 8722–23.) Therefore, Plaintiffs argue that the Court should have referred the motions for an Order pursuant to § 636(b)(1)(A) and should now review the R&R under that provision's "clearly erroneous or contrary to law" standard. [1] (ECF No. 75, PageID 8722–24.)

***2** However, the few Sixth Circuit cases that address this issue agree that courts can refer a motion of a type not identified in § 636(b)(1)(B) to a magistrate judge for an R&R, to be reviewed *de novo*, rather than for an Order, to be reviewed for clear error or contradiction of law. In *Homico*, the Sixth Circuit held that a motion for sanctions could not be referred for an R&R under § 636(b)(1)(A) nor (B), but could be so "referred under section § 636(b)(3), which provides: 'A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.' " *Homico Const. & Dev. Co. v. Ti-Bert Sys., Inc.*, 939 F.2d 392, 394 n.1 (6th Cir. 1991). Twelve years later, in *Sutton*, an unpublished case, the Circuit decided the same issue the same way. *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 120 (6th Cir. 2003). Elaborating on *Homico*, the Circuit Court explained: "Because the district court could have designated the magistrate judge to *determine* the sanctions motion under subparagraph (A) [of § 636(b)(1)], the district court, under the syllogism of the greater power including the lesser power, could properly designate the magistrate to make a non-binding recommendation on that motion." *Id.*; *see also* *Baker v. Peterson*, 67 F. App'x 308, 311 (6th Cir. 2003) ("[I]n some circumstances it is within the district court's discretion to conduct higher level review of a magistrate judge's analysis of a nondispositive issue."); *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019) (" 'That certain case dispositive matters must always be referred for recommendations rather than determination does not mandate the converse.... [L]egislative history [shows] that the purpose of the Act's referral and review provisions is to define the limits of the powers which a court may allow a magistrate to exercise, not to restrict the ultimate authority of an Article III court over a case pending before it.' " (quoting *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 685 (E.D. Pa. 1986))); 2 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 72 ("While Rule 72(a) and § 636(b)(1)(A) both speak in terms of referring a nondispositive matter for determination, the prevailing view is that the district judge may choose instead to refer a nondispositive matter for a recommendation only. In that situation, the district judge remains the decisionmaker and objections are reviewed de novo." (internal citation omitted)). *But see* *Patton v. Johnson*, 915 F.3d 827, 832–33 (1st Cir. 2019) ("[A] motion to compel arbitration is a non-dispositive motion. Accordingly, an order, not a recommended decision, would have been the appropriate vehicle for the magistrate judge's findings and conclusions." (internal citation omitted)).

Thus, it was permissible for the Court to refer these motions to Judge Ivy for an R&R. [2] While the Court should have made such referral under § 636(b)(1)(C) rather than § 636(b)(1)(B), this error was harmless. Both parties and Judge Ivy have followed the Court's R&R procedures, and both parties recognized the possibility of a *de novo* review of the contested portions of the R&R. (ECF No. 70, Objections to R&R, PageID 8582; ECF No. 75, Response to Objections, PageID 8724.)

The Court will proceed as if it had made the referral under § 636(b)(1)(C) and review the portions of the R&R to which Defendants object *de novo.*

## II. THE COURT ORDERS DEFENDANTS TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2).

Federal Rule of Civil Procedure 72(b)(2) provides:

> Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. *Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.*

(emphasis added); *see also* E.D. Mich. L. R. 72.1(d) ("*LR 72.1(d) conforms procedures for the filing of objection to a Magistrate judge's order or report and recommendation to the provisions of Fed. R. Civ. P. 72* and provides that the form and time limits for the filing of responses to objections are to be governed by LR 7.1." (emphasis added)); (ECF No. 69, R&R, PageID 8579–8580) (citing Fed. R. Civ. P. 72(b)(2)).

As far as the record shows, neither the Court, the parties, nor Judge Ivy have agreed to relieve Defendants of the obligation to arrange for transcription of the September 14, 2021 hearing before Judge Ivy. And, although Defendants' Objections mostly focus on the text of the R&R, the expert deposition transcripts, and the expert exclusion motions, the R&R does mention the hearing three times, and Defendants' Objections and Reply in support thereof invoke the hearing at least four times. *See* (ECF No. 69, R&R, PageID 8539, 8549); (ECF No. 70, Objections to R&R, PageID 8618) ("[A]s pointed out in Defendants' motion and *argument at the hearing*, Connolly's specific experience in urban planning is limited." (emphasis added)); (ECF No. 70, PageID 8629) ("Defendants spent significant time in briefing *and at the hearing* asserting that Connolly's conclusions are nothing but the opinions of a lawyer and legal conclusions." (emphasis added)); (ECF No. 70, PageID 8637) ("For these reasons and those stated in their briefing *and oral argument* on each of the expert motions, Defendants respectfully request that this Honorable Court sustain their objections...." (emphasis added)); (ECF No. 76, Reply to Response to Objections to R&R, PageID 8884) ("Defendants expressly referenced the significant time discussing the issue in briefing, generally, *and* at the hearing." (emphasis original)).

***3** Moreover, the Sixth Circuit has held that pre-R&R-hearing transcripts are essential for *de novo* review in at least some circumstances. For example, in *Hill*, the Circuit Court stated: "Objections based on the magistrate's treatment of the [ ] evidence could not be properly reviewed even under the clearly erroneous standard without a review of the record. The court must review at least those portions of the transcript [of a hearing before the magistrate] which are relevant to the particular findings that are under attack." *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1215 (6th Cir. 1981); *see also* *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995) ("In conducting de novo review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." (internal quotation marks, alteration, and citation omitted)).

Therefore, the Court **ORDERS** Defendants to comply with the above-emphasized portion of Federal Rule of Civil Procedure 72(b)(2) within 14 days. Defendants may contact Court Reporter Rene Twedt at twedt@transcriptorders.com or 313-234-2613 to order a transcript of the hearing before Judge Ivy. Defendants may file for an extension of time to comply with this Order if the Court Reporter needs more time.

Further, the Court **ORDERS** Defendants to state which pages of the hearing transcript are relevant to its objections to the R&R, and to highlight the relevant portion(s) of those pages.

## III. THE COURT BIFURCATES THE LIABLITY AND DAMAGES PHASES OF THIS CASE.

Finally, the Court **ORDERS** bifurcation of the liability and damages phases of this case. Accordingly, the Court notes that it will not address the R&R's recommendations regarding Plaintiffs' claims for damages, unless Defendants are first found liable under the Complaint.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2022 WL 287923

## Footnotes

1 Defendants do not reply to this argument. (ECF No. 76, Reply to Response to Objections.) When they initially filed their Objections, they invoked both the *de novo* and “clearly erroneous or contrary to law” standards. (ECF No. 70, Objections to R&R, PageID 8582.)

2 Federal Rule of Civil Procedure 72, which tracks 28 U.S.C. § 636(b)(1), does not affect this result, because it does not address the situation at issue here. Rule 72(b) concerns dispositive motions and prisoner petitions, not motions to exclude experts. *See RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 CIV. 5587, 2000 WL 420548, at *2 n.1 (S.D.N.Y. Apr. 18, 2000) (“A decision to admit or exclude expert testimony is considered ‘nondispositive’ of the litigation.”). And Rule 72(a) concerns “pretrial matter[s] not dispositive of a party's claim or defense [that are] referred to a magistrate judge to hear *and decide*,” (emphasis added), not matters referred for a mere recommendation.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4466382
Only the Westlaw citation is currently available.
United States District Court, S.D.
Indiana, Indianapolis Division.

Ricardo VASQUEZ, Plaintiff,
v.
INDIANA UNIVERSITY HEALTH, INC.,
Indiana University Health Bloomington,
Inc., Daniel Handel, Defendants.

No. 1:21-cv-01693-JMS-MG
|
Signed July 10, 2023

**Attorneys and Law Firms**

Alexandra K. Lewis, Pro Hac Vice, Han Cui, Pro Hac Vice, James Durkin, Pro Hac Vice, Katharine M. O'Connor, McDermott Will & Emery LLP, Chicago, IL, Anthony Ferrara, Pro Hac Vice, McDermott Will & Emery LLP, Washington, DC, Michael Wesley McBride, Cohen & Malad LLP, Indianapolis, IN, Michelle Lowery, Pro Hac Vice, McDermott Will & Emery, Los Angeles, CA, Zachary E. Sproull, Pro Hac Vice, New York, NY, for Plaintiff.

Ryan Doringo, Brian K. Grube, Jones Day, Cleveland, OH, Angela Marie Rinehart, Rachel D. Johnson, Stoll Keenon Ogden PLLC, Indianapolis, IN, Norris Cunningham, Katz Korin Cunningham, P.C., Indianapolis, IN, Arthur T. O'Reilly, Jones Day, Detroit, MI, for Defendants.

## ORDER

Mario Garcia, United States Magistrate Judge

***1** The parties appeared by counsel for a telephonic discovery conference on June 29, 2023 to discuss a variety of discovery matters raised by both Plaintiff and Defendants. The parties submitted written positions on the matters in advance of the conference, and the undersigned heard argument from counsel during the conference.

## I.

## LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." *Id.* "[R]elevance" for purposes of discovery "is broader than relevance at trial." *Freeman v. Ocwen Loan Serv., LLC*, 2022 WL 999780, at *2 (S.D. Ind. Apr. 4, 2022) (internal quotation marks and citation omitted). That is so because "during discovery, a broad range of potentially useful information should be allowed when it pertains to issues raised by the parties' claims." *Id.* (internal quotation marks and citation omitted).

However, discovery is subject to proportionality and burden limitations. Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In assessing burden, courts also assess whether the discovery sought is "unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

And when it comes to discovery depositions, Fed. R. Civ. P. 30(a)(2)(A)(i) requires a party to obtain consent from the opposing party or leave of court if the party wants to take more than 10 depositions. Courts have found that leave should be granted to exceed ten deposition where "the proposed depositions are of witnesses [the opposing party] intend[s] to call at trial." *Whole Woman's Health Allilance v. Hill*, 2019 WL 10886796, at *1 (S.D. Ind. Sept. 14, 2019).

## II.

## DISCUSSION

### A. Matters Raised by Defendants

The Court begins with the two discovery matters raised by Defendants.

#### 1. Production of Plaintiff's Financial Records.

By way of Fed. R. Civ. P. 34 document requests, Defendants ask Plaintiff to produce (1) Plaintiff's complete financial

records for any business, practice, or entity through or with which he provides, or receives compensation or revenue for providing, healthcare services; and (2) Documents reflecting income or other financial benefits that plaintiff (or any entities in which he is a shareholder, member, or stakeholder) sought or received from any source. In response to these requests, Plaintiff has produced tax returns and high-level profit-and-loss statements. Defendants are seeking the documents that Plaintiff would have provided to his accountant to generate the tax returns. Plaintiff argues that the documents provided to his accountant are "entirely cumulative" of the tax returns and profit-and-loss statements. Plaintiff also says that one of his entities—Gramercy Park LLC—is merely an entity that holds real estate, does not reflect any income or revenue that he receives for providing medical services, and is therefore irrelevant.

***2** First, with regard to the underlying tax documents that Plaintiff provided his accountant, the Court agrees with Defendants that his allegations in this case entitle Defendants to perform a deep dive on his financial status, including the documents supporting his tax returns. Plaintiff's lawsuit has alleged that Defendants' conduct is financially ruinous to his business, therefore Defendants are entitled to discovery on the full nature of his finances and are not required to rely on summary tax returns. Second, with regard to Gramercy Park LLC, Defendants are entitled to test the veracity of Plaintiff's representation that this entity merely holds real estate. Plaintiff needs to produce documents sufficient to verify as much.

#### 2. Production of Plaintiff's Calendar and Appointment Records.

Defendants request that Plaintiff produce his calendar, which, Plaintiff reports that he keeps as part of the software he uses to maintain electronic health records ("EHR") for his medical practice. Defendants acknowledge that Plaintiff has produced his "claims data," which reflects every medical procedure for which he has billed. The claims data uses a patient identification number rather than patient names or other personal identifying information. Plaintiff contends that producing his calendar of appointments would entail logging into his EHR system and manually printing a page for each day, then redacting patient-identifying information from the document before it is produced to Defendants. During the hearing, Defendants clarified that they are requesting these documents to find out "how Dr. Vasquez is spending his time" in terms of developing business.

The Court finds proportionality weighs against requiring Dr. Vasquez to produce a daily calendar or appointment schedule at this juncture. Plaintiff has produced the most relevant information contained therein—the patient and procedure volume of his business—in the claims data. To the extent that Defendants are seeking this information to show that Dr. Vasquez is not being as productive as he could be, the burden at this juncture outweighs the probative value of the information and is more appropriately discovered by straightforward deposition questions posed to Dr. Vasquez. If Dr. Vasquez testifies to engaging extensively in other pursuits that would be reflected in his EHR daily diary, Defendants may reapproach the Court about this request.

### B. Matters Raised by Plaintiff

After further meet-and-confer efforts, the parties narrowed the discovery issues raised by Plaintiff to two matters.

#### 1. Deposition Limits.

Plaintiff anticipates that he will need to take more than ten depositions, and Defendants do not consent to taking more than ten. *See* Fed. R. Civ. P. 30(a)(2). As discussed during the conference, while the matter is presently premature because Plaintiff has not exceeded ten depositions nor requested leave from the Court, the Court provided guidance to the parties that a request for leave to exceed ten depositions to depose witnesses on Defendants' witness list would likely be well received. That is not say that Plaintiff faces no limits in the number of witnesses that he may depose if doing so presents an undue burden to Defendants, but at this stage, the Court finds that leave to depose witnesses identified on the opposing party's witness list should be liberally granted. With this guidance, the parties are to continue meet and confer efforts to schedule requested depositions.

#### 2. Production of IT Phone Call Records.

Plaintiff requests that Defendants produce phone calls placed to their information technology ("IT") group during 2017-18 regarding the EHR system used by Defendants. In another proceeding, Defendants used recorded calls placed by Plaintiff to IT staff to show that Plaintiff was

Vasquez v. Indiana University Health, Inc., Not Reported in Fed. Supp. (2023)

unprofessional with staff. Plaintiff is asking for calls placed by other providers to IT staff to show that they were equally unprofessional but did not face similar consequences as Plaintiff. Defendants have agreed to search for and produce all calls from Plaintiff to IT staff.

***3** The Court agrees with Defendants that this request is overbroad as written, and the information sought has minimal relevance to this case. The Court declines to order Defendants to search through and produce calls placed by providers to IT staff regarding the EHR system.

## III.

## CONCLUSION

In summary, (1) Plaintiff is ORDERED to produce the financial documents provided to his accountants for preparation his personal and business entities' tax returns; (2) Defendants' request for Plaintiff's EHR daily calendar is DENIED at this juncture and without prejudice to re-raise the issue following Plaintiff's deposition; (3) the parties are ORDERED to continue meet-and-confer efforts to schedule depositions sought by Plaintiff with the guidance provided in this Order; and (4) Plaintiff's request for IT phone call recordings is DENIED.

### All Citations

Not Reported in Fed. Supp., 2023 WL 4466382

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.