**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| FORD MOTOR COMPANY<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, et al.,<br><br>Defendants. | **Case No. 2:23-CV-11286**<br><br>**Judge: Hon. Linda V. Parker**<br><br>**Magistrate Judge: Hon. Elizabeth A. Stafford** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF FORD MOTOR COMPANY'S MOTION IN LIMINE TO EXCLUDE THE OPINIONS AND TESTIMONY OF PROFESSOR MARK MCKENNA**

# TABLE OF CONTENTS

**Page**


STATEMENT OF ISSUES PRESENTED ........................................................ iii

CONTROLLING OR MOST APPROPRIATE LEGAL AUTHORITY FOR RELIEF SOUGHT ........................................................ vii

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 2

LEGAL STANDARD ........................................................ 5

ARGUMENT ........................................................ 6

I. Professor McKenna's Opinions Are Relevant Under Any Standard of Review. ........................................................ 6

A. Professor McKenna's opinions are relevant to antitrust injury, a necessary element of Ford's claim. ........................................................ 7

B. Professor McKenna's testimony is relevant to assessing procompetitive benefits under the rule of reason. ........................................................ 11

II. Professor McKenna's Opinions Are Reliable and Well-Supported. ............ 13

A. Professor McKenna's methodology is sound. ........................................................ 14

B. Professor McKenna's responses to Dr. Krock's opinions are well supported. ........................................................ 17

III. Professor McKenna's Opinions Are Not Legal Conclusions. ..................... 21

CONCLUSION ........................................................ 25

# STATEMENT OF ISSUES PRESENTED

**1.** Should the Court deny Ford's request to exclude Professor McKenna's testimony as irrelevant, where his opinions bear on antitrust injury, causation, and damages—issues that must be resolved under any standard of review—and where the standard of review is itself the subject of a pending summary judgment motion?

**Defendants' Answer:** Yes.

2. Should the Court deny Ford's alternative request to exclude Professor McKenna's testimony under Rules 702 and 403, where he is a qualified trademark scholar whose opinions rest on a documented review of contemporaneous historical evidence, and where Ford's criticisms go to weight rather than admissibility?

**Defendants' Answer:** Yes.

3. Should the Court deny Ford's request to exclude Professor McKenna's testimony as impermissible legal conclusions, where his opinions explain historical facts and the operation of trademark law rather than instruct the jury on the antitrust law that governs Ford's claims?

**Defendants' Answer:** Yes.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. FTC*,
1 F.4th 102 (2d Cir. 2021) .......... 12

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) .......... 8

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) .......... 22, 23, 24

*Clorox Co. v. Sterling Winthrop, Inc.*,
117 F.3d 50 (2d Cir. 1997) .......... 12

*Counts v. General Motors, LLC*
606 F. Supp. 3d 547 (E.D. Mich. 2022) .......... 15, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 6, 17

*EEOC v. Proctor Fin., Inc.*,
644 F. Supp. 3d 400 (E.D. Mich. 2022) .......... 5, 11

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 23

*Hodges v. WSM, Inc.*,
26 F.3d 36 (6th Cir. 1994) .......... 8

*In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*,
MDL 2187, 2018 WL 4220602 (S.D. W. Va. Sep. 5, 2018) .......... 15

*In re Davol, Inc.*,
No. 2:18-cv-01509, 2020 WL 6605542 (S.D. Ohio Sept. 1, 2020) .......... 15

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) .......... 16

*Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*,
716 F.2d 373 (6th Cir. 1983) .......... 5, 13

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*,
No. 1:12-cv-654, 2016 WL 4239181 (W.D. Mich. Jan. 29, 2016) ......... 21

*McLean v. 988011 Ontario, Ltd.*,
224 F.3d 797 (6th Cir. 2000) ........................................................ 16

*NCAA v. Alston*,
594 U.S. 69 (2021)....................................................................... 13

*Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*,
925 F. Supp. 1247 (S.D. Ohio 1996) ............................................. 22

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
188 F.4th 900 (6th Cir. 2026) .......................................................... 6

*RSA Media, Inc. v. AK Media Grp., Inc.*,
260 F.3d 10 (1st Cir. 2001)............................................................. 8

*Specht v. Jensen*,
853 F.2d 805 (10th Cir. 1988) ....................................................... 21

*Torliatt v. Ocwen Loan Servicing, LLC*,
570 F. Supp. 3d 781 (N.D. Cal. 2021) .......................................... 23

*Torres v. County of Oakland*
758 F.2d 147 (6th Cir. 1985) ................................................... 23, 24

*United States v. Coffman*,
574 F. App'x 541 (6th Cir. 2014) .................................................. 21

*United States v. L.E. Cooke Co.*,
991 F.2d 336 (6th Cir. 1993) ........................................................ 17

*United States v. Lang*,
717 F. App'x 523 (6th Cir. 2017) .................................................. 11

*United States v. LaVictor*,
848 F.3d 428 (6th Cir. 2017) ........................................................ 16

*Valley Prods. Co. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*,
128 F.3d 398 (6th Cir. 1997) .......................................................... 8

*Woods v. Lecureux*,
110 F.3d 1215 (6th Cir. 1997) .......................................................... 21, 24

**Statutes & Rules**

Fed. R. Evid. 401 ........................................................................... 5

Fed. R. Evid. 403 ........................................................................... 5, 13

Fed. R. Evid. 702 ........................................................................... 6, 15

# CONTROLLING OR MOST APPROPRIATE LEGAL AUTHORITY FOR RELIEF SOUGHT

**Cases**

*Counts v. General Motors, LLC*, 606 F. Supp. 3d 547 (E.D. Mich. 2022)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*EEOC v. Proctor Fin., Inc.*, 644 F. Supp. 3d 400 (E.D. Mich. 2022)

*Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373 (6th Cir. 1983)

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4239181 (W.D. Mich. Jan. 29, 2016)

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 188 F.4th 900 (6th Cir. 2026)

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988)

**Rules**

Fed. R. Evid. 401

Fed. R. Evid. 403

Fed. R. Evid. 702

# INTRODUCTION

Plaintiff Ford Motor Company ("Ford") seeks to prevent Defendants' trademark expert, Professor Mark P. McKenna, from offering testimony describing the historical, common-law origins of the blue cross and blue shield trademarks (the "Blue Marks"). Ford contends that Professor McKenna's opinions are not relevant to the antitrust claims at issue, whether those claims are evaluated under the "rule of reason" or a per se standard. Ford also contends that Professor McKenna's opinions are unreliable and that he offers impermissible legal conclusions. There is no merit to any of these challenges.

*First*, Professor McKenna's unrebutted opinions are directly relevant to core issues in this case under any standard of review. Among other things, his testimony will help a jury evaluate whether Ford can establish an antitrust injury from the lack of multiple users of the Blue Marks in Michigan (and elsewhere), and whether there would be increased use of the Blue Marks by different blue cross and/or blue shield plans ("Blue Plans" or "Plans") operating in the same areas absent the challenged conduct, as Ford posits. Similarly, Professor McKenna's opinions regarding the history and context surrounding federal registration of the Blue Marks, and the first license agreements governing use of those Marks ("License Agreements"), bear upon whether the exclusive service areas ("ESAs") and other conduct that Ford challenges serve a legitimate and procompetitive purpose.

*Second*, Professor McKenna's analysis is based on an extensive review of the historical record and case evidence, and guided by his undisputed expertise and understanding of applicable trademark principles, including during the time periods before and just after passage of the Lanham Act in 1946. That more than meets the reliability standard for expert testimony under *Daubert*.

*Third*, Professor McKenna does not proffer a "legal conclusion" as to how the jury should resolve Ford's antitrust claims. Instead, Professor McKenna provides the historical trademark evidence and expertise necessary for the jury to understand and evaluate the trademark-based origins of the features of the present-day Blue System that are at issue in this case.

## BACKGROUND

Professor McKenna is a Professor of Law at the University of California Los Angeles School of Law. (Expert Report of Mark P. McKenna ("McKenna Report"), ECF No. 83-1 ¶ 1.) He has more than 20 years of teaching and research experience and has focused on the field of intellectual property, with a particular emphasis on trademark law. (*Id.* ¶¶ 1, 5.) Professor McKenna has given "hundreds of presentations about intellectual property law," "published approximately 35 scholarly articles that focus specifically on trademark law," and served as an expert and consulted on numerous trademark and intellectual property cases. (*Id.* ¶¶ 5-6.)

Defendants retained Professor McKenna affirmatively to opine on three issues:

(i) the [redacted] (*id.* ¶ 10(a));

(ii) whether the Blue Plans [redacted] (*id.* ¶ 10(b)); and

(iii) whether [redacted] (*id.* ¶ 10(c)).

In addition, Professor McKenna was asked to assess and respond to the *assumption* made by Ford's economic expert, Dr. Joseph Krock,[1] that [redacted] (*Id.* ¶ 13.)

Professor McKenna's report discloses five principal opinions. *First*, [redacted]

[1] Dr. Krock was substituted for Ford's original damages expert, Dr. Matthew Raiff, and has adopted the opinions and analyses disclosed in Dr. Raiff's original expert report in full. (Rebuttal Report of Dr. Joseph Krock ("Krock Report"), ECF No. 87-2 ¶ 8.) For simplicity's sake, this brief therefore refers to opinions first disclosed in Ford's original expert report as Dr. Krock's opinions.

[redacted] (*Id.* ¶ 12(a).) *Second*, the Lanham Act [redacted] (*Id.* ¶ 12(b).) *Third*, the changes caused by the Lanham Act [redacted] (*Id.* ¶ 12(c).) *Fourth*, [redacted] (*Id.* ¶ 12(d).) *Fifth*, at the time the Plans entered into these initial agreements, [redacted] (*Id.* ¶¶ 12(e), 76.)

With respect to the [redacted] offered by Dr. Krock, Professor McKenna opines that Dr. Krock's [redacted]

[redacted]" (*Id.* ¶ 13.) He further opines that even if reversionary rights were not implicated, [redacted] (*Id.*) As a result, Professor McKenna concludes that [redacted] (*Id.*)

Ford did not depose Professor McKenna to question him about any of his opinions. Nor did it proffer any opinions from its own expert to respond to Professor McKenna.

## LEGAL STANDARD

Evidence is "relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Sixth Circuit emphasizes that the threshold for determining the relevancy of evidence is low." *EEOC v. Proctor Fin., Inc.*, 644 F. Supp. 3d 400, 406 (E.D. Mich. 2022) (Parker, J.). Moreover, to exclude evidence that is relevant under Rule 403, "it must be more than damaging to the adverse party; it must be *unfairly* prejudicial." *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) ("Virtually all evidence is prejudicial or it isn't material.").

An expert's opinion is admissible pursuant to Federal Rule of Evidence 702 as long as (1) the expert is "*qualified* by knowledge, skill, experience, training or education"; (2) the testimony is "*relevant*, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony is "*reliable* under the factors outlined in Fed. R. Evid. 702 and the Supreme Court's decision in" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 188 F.4th 900, 919 (6th Cir. 2026) (citation omitted). "[R]ejection of expert testimony is the exception, rather than the rule." *Id.* (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## ARGUMENT

Ford makes three arguments in support of its motion to exclude Professor McKenna. For the reasons set forth below, none is availing.

### I. Professor McKenna's Opinions Are Relevant Under Any Standard of Review.

As a threshold matter, Ford dedicates much of its brief to arguing that "per se" is the appropriate standard of review in this case. Ford is wrong regarding the *per se* standard for all the reasons articulated in Defendants' concurrently filed Opposition to Ford's Motion for Summary Judgment, and, in any event, a motion *in*

*limine* to exclude expert testimony is an improper forum for deciding the standard of review. That said, Professor McKenna's opinions remain relevant under either standard: they support the Blues' position that Ford cannot prove antitrust injury, which is required even if a *per se* rule applied, and they are likewise relevant under a rule of reason analysis, including with respect to the Blues' showing of procompetitive benefits.

**A. Professor McKenna's opinions are relevant to antitrust injury, a necessary element of Ford's claim.**

Ford contends that Professor McKenna's testimony should be excluded as irrelevant in a *per se* case. Yet Ford expressly acknowledges that, "even in a per se case, it must quantify its damages, and Defendants may offer competent evidence about what would have happened absent the restraints" (Pl.'s Mot. in Limine to Exclude the Opinions and Testimony of Mark McKenna ("Pl.'s Mot.") at 18)—in other words, precisely what Professor McKenna does in his report.

Professor McKenna concludes, among other things, that the [redacted] That opinion directly addresses "what would have happened absent the restraints" (*id.*) and defeats Ford's claim of antitrust injury.[2]

[2] While the parties use different terminology, what Ford refers to as "causation or damages" arguments, based on "what would have happened absent the restraints"

No matter what standard of review applies, Ford must "demonstrate that it has suffered . . . antitrust injury," which is to say "injury of the type the antitrust laws were intended to prevent." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 346 (1990) ("The allegation of a *per se* violation does not obviate the need to satisfy this test."); *see also Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir. 1994) ("[I]f Plaintiff would have suffered the same injury without regard to the allegedly anticompetitive acts of [d]efendants, Plaintiff has not suffered an antitrust injury."). Here, Ford claims it has suffered harm from the absence of multiple Blue Plans operating in the same geographic areas and offers expert testimony from Dr. Krock which [redacted] (Krock Dep. Tr., ECF No. 87-5 at 94:3-6.) But if factors other than the challenged conduct would have prevented the increased Blue Plan entry in these areas, then Ford has not suffered antitrust injury. *See*, *e.g.*, *Valley Prods. Co. v. Landmark, A Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398, 404 (6th Cir. 1997) (finding no antitrust injury

---

(Pl.'s Mot. at 18), go directly to Defendants' challenge to antitrust injury, as laid out below. *See*, *e.g.*, *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (affirming summary judgment for lack of antitrust injury and antitrust standing because "the district court's causation analysis was correct" and "[a]ny injury suffered by [plaintiff was] unrelated to [defendant's] allegedly exclusionary conduct").

because "as holder of its trademark" defendant was "within its legal rights to deny use of the [trademark]" even if that "denial may have the unfortunate effect of excluding plaintiffs from the [relevant] market").

In fact, "Ford cannot establish antitrust injury because it would have the same claimed 'injury'—lack of additional Blue competitors in Michigan (and all other at-issue states)—even absent the challenged conduct." (Defendants' Motion for Summary Judgment ("Defs.' MSJ"), ECF No. 86 at 23.) This is because (among other reasons), [redacted] (*See id.* at nn.1-10, 18-19, 25, 63, 65 (citing the McKenna Report); McKenna Report ¶¶ 111-15.) Accordingly, Professor McKenna's fact-based rebuttal to Dr. Krock's entry assumptions is squarely relevant to a key issue in the case, namely whether Ford can establish an antitrust injury.

Ford argues that "regardless of whether [Professor McKenna's rebuttal] is labeled as a 'damages' or 'causation' opinion," it "asks the jury to assume that the trademark licensing structure may be taken as a given." (Pl.'s Mot. at 17-18.) That is wrong. Professor McKenna specifically considered [redacted] (McKenna Report ¶¶ 111-12)—which expressly does not accept the existing licensing structure "as a given." And in that [redacted]

[redacted] (*Id.*) Professor McKenna further opined that, [redacted] (*Id.* ¶ 115.)

Ford also argues that Professor McKenna is not qualified to offer opinions "relevant to causation or damages" or "a prediction about firm behavior and market response in health insurance." (Pl.'s Mot. at 18, 20.) However, Professor McKenna is not being offered to do any of these things. He opines on [redacted] (Pl.'s Mot. at 18 (emphasis added).) Professor McKenna is certainly qualified to opine as to [redacted], and Ford does not claim otherwise. And Professor McKenna's response to Ford's economist (Dr. Krock) is focused on

[redacted], not market behavior, causation, or damages.[3]

**B. Professor McKenna's testimony is relevant to assessing procompetitive benefits under the rule of reason.**

If the rule of reason applies (as the Blues maintain), Professor McKenna's proffered testimony is relevant not only to antitrust injury, but also to other issues, including the procompetitive justifications of the challenged conduct. Professor McKenna's analysis of [redacted], supports the conclusion that ESAs (and the related challenged conduct) serve a legitimate, procompetitive purpose, namely protecting the Blue Marks.

---

[3] Ford alternatively claims that Professor McKenna's opinions have "no place" in a *per se* case because they relate only to ESAs and "have no connection" to the other conduct that Ford challenges: the Headquarters Rule and the National Best Efforts standard ("NBE"). (Pl.'s Mot. at 12, 16.) Again, that is wrong. The Headquarters Rule is one and the same as ESAs. It is simply a way to determine in which ESA a customer with employees in multiple states resides. Similarly, NBE was a means of protecting the Blue brand and ensuring a strong Blue System across ESAs. But even if Professor McKenna's opinions relate only to ESAs, that is not a basis for exclusion; there is no requirement that an expert opinion must be relevant to every issue in a case to be admissible. *See Proctor Fin.*, 644 F. Supp. 3d at 406-07 ("[E]vidence is relevant if it advance[s] the ball one inch." (second alteration in original) (citing *United States v. Lang*, 717 F. App'x 523, 530 (6th Cir. 2017))).

In applying the rule of reason, courts have found that "[t]he protection of [a party's] trademark interests constitutes a valid procompetitive justification" for challenged trademark agreements. *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 119 (2d Cir. 2021); *see also Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 61 (2d Cir. 1997) ("Efforts to protect trademarks, even aggressive ones, serve the competitive purpose of furthering trademark policies."). These courts have further observed that such agreements are procompetitive because they "reduce[] the likelihood of consumer confusion and avoid[] time-consuming litigation." *Clorox*, 117 F.3d at 60. Ford ignores this case law and insists that Professor McKenna's opinions are irrelevant to the procompetitive benefits inquiry because "[h]e identifies no output increase, price reduction, or quality improvement attributable to any challenged restraint." (Pl.'s Mot. at 19.) Precedents like *Clorox* and *1-800 Contacts*, however, confirm that the protection of trademark rights, and settlement of trademark claims, are justifications under the rule of reason, regardless of whether they are framed as increasing output, reducing price, or improving quality. *1-800 Contacts*, 1 F.4th at 117; *Clorox*, 117 F.3d at 55-56, 59.

Ford also contends that Professor McKenna's opinions are subject to exclusion because he does not analyze whether the challenged conduct is "reasonably necessary to protect any trademark interest, or whether a substantially less restrictive means . . . would serve the same purpose." (Pl.'s Mot. at 19.) But

neither Defendants, nor Professor McKenna, have an obligation to undertake such an analysis. Ford alone (not Defendants) bears the burden of showing "that the procompetitive efficiencies could reasonably be achieved through less anticompetitive means" at the third step of the rule of reason inquiry. *See NCAA v. Alston*, 594 U.S. 69, 96-97 (2021).

Finally, Ford claims that "[w]hatever marginal probative value Professor McKenna's testimony could have," "Rule 403 independently requires exclusion." (Pl.'s Mot. at 23.) This argument should be disregarded; Ford cites no authority whatsoever to explain what unfair prejudice it would suffer from Professor McKenna's opinions, let alone how any such "prejudice" would substantially outweigh the probative value of these opinions to core issues in the case, including both antitrust injury and procompetitive benefits. *See Koloda*, 716 F.2d at 378 (the fact that evidence is merely "damaging to the adverse party" is no reason for exclusion under Rule 403).

## II. Professor McKenna's Opinions Are Reliable and Well-Supported.

Professor McKenna's opinions are based on a rigorous analysis of the legal framework governing trademark law at the relevant time and the extensive body of contemporaneous evidence that he reviewed. The Court should disregard Ford's arguments to the contrary.

### A. Professor McKenna's methodology is sound.

Ford questions the reliability of Professor McKenna's opinions, claiming they are based on a "selective review of historical documents," and that Professor McKenna "does not explain how the review was conducted." (Pl.'s Mot. at 20.) Neither of these things is accurate, and Ford does not even attempt to identify a single document that Professor McKenna should have reviewed but did not. Indeed, Ford's position on reliability—which also does not cite a single case—is nothing more than a critique of the substance of Professor McKenna's report, something that is appropriately addressed through cross-examination, and is not proper grounds for exclusion.

Contrary to Ford's assertion that Professor McKenna "articulates no criteria for what counts as use sufficient to create common-law rights" (*id.*), Professor McKenna explicitly sets forth the methodology underlying his analysis. Specifically, he devotes a section of his report to explaining [redacted] (*See* McKenna Report § II.A (explaining, *e.g.*, that [redacted]).) And after establishing this framework, Professor McKenna applied the relevant principles to the facts in the record, explaining: [redacted]

[redacted] (*Id.* ¶ 67-68.)

Courts regularly permit experts to offer opinions developed based upon the review of relevant documents that form "the basis for his or her opinions." *In re Davol, Inc.*, No. 2:18-cv-01509, 2020 WL 6605542, at *9-11 (S.D. Ohio Sept. 1, 2020) (permitting expert to offer opinions developed through the review of "a selection" of "corporate documents"); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2187, 2018 WL 4220602, at *4 (S.D. W. Va. Sept. 5, 2018) ("[T]hough an expert may not simply narrate corporate documents in front of the jury, he may rely on such information in forming and supporting his opinions."). For example, in *Counts v. General Motors, LLC*, the court denied General Motors's motion to exclude the testimony of a marketing expert premised on a "qualitative" analysis of a set of documents including "internal consumer surveys, sales analyses," and advertisements. 606 F. Supp. 3d 547, 570 (E.D. Mich. 2022). General Motors argued that the expert's qualitative review of documents was "not based on reliable methodology." *Id.* The court disagreed, explaining that an "expert may rely on qualitative methods used for social sciences," and that "Rule 702 'does not limit the subject matter of expert testimony to scientific or technical evidence,' and 'the

district court is not bound by any explicit test when determining reliability.'" *Id.* at 571 (quoting *United States v. LaVictor*, 848 F.3d 428, 443-44 (6th Cir. 2017)).

Here, Ford does not challenge any of the hundreds of sources upon which Professor McKenna relied in his report, nor even identify a single document that Professor McKenna should have considered but did not. *See Counts*, 606 F. Supp. 3d at 572 (denying motion to exclude where the movant "ha[d] not identified any [documents] that it claims that [the expert] could have, but did not, consider").[4] Instead, Ford takes issue with Professor McKenna's unremarkable acknowledgment that [redacted]. That observation, however, reflects careful and transparent expert work, not unreliability. As Professor McKenna expressly noted: [redacted] (McKenna Report ¶ 70 n.89.)

Ford also complains that Professor McKenna [redacted] (Pl.'s Mot. at 21.) Yet Ford

[4] Even if Ford were to challenge Professor McKenna's failure to cite a particular document, that is not grounds for exclusion. The "factual basis of an expert witness' opinion . . . bear[s] on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000); *see In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 520 (6th Cir. 2008).

cites no authority (nor could it) suggesting that Professor McKenna was required [redacted] The evidence Professor McKenna collected and relies upon supports his conclusion [redacted] (McKenna Report at Apps. C, pp. 71-85; D, pp. 9-17; E, pp. 29-37.) This evidence is consistent with [redacted]. If Ford believes that the evidence of [redacted] it may explore that issue on cross-examination or put in proof of its own. *See Daubert*, 509 U.S. at 596.

**B. Professor McKenna's responses to Dr. Krock's opinions are well supported.**

Ford argues that certain of Professor McKenna's "key opinions" are inconsistent with other portions of his report, or inconsistent with record evidence. (*See* Pl.'s Mot. § II.C.) This argument misunderstands the record evidence and Professor McKenna's report. And even more fundamentally, it raises issues that should be the subject of cross-examination, not a legal basis for exclusion. *United*

*States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("[I]t is up to opposing counsel to inquire into the expert's factual basis . . . weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.").

To begin, Ford contends that Professor McKenna must be wrong in concluding that [redacted] (McKenna Report ¶ 13) because there are areas of the country today where multiple Plans operate. (Pl.'s Mot. at 22.) Those instances of overlapping use existed at common law with Blue Plans using different marks—generally one Plan using the blue cross marks and the other using the blue shield marks. (*See* ECF No. 81-04 (Hedges Dep. Tr., Ex. D to Ford's Motion for Summary Judgment) at 76:4-12 (testifying that in "certain areas" of Washington state, "there is a Blue Shield licensee and a separate Blue Cross licensee," and that the same is true in New York and Pennsylvania); *id.* at 77:5-8 (testifying that the two California Blue Plans—Anthem Blue Cross, and Blue Shield of California—"have their respective rights" across the state).) This signals nothing more than that no preexisting competition was changed, and that the Blue Cross plan did not merge with the Blue Shield plan in these areas, as they did in others, including Michigan. Because of the differences in the Blue Marks used by these Blue Plans, [redacted]

[redacted][5] Dr. Krock simply assumes that [redacted]

Ford further disputes [redacted] (*See* Pl.'s Mot. at 22-23.) But even if Ford believes Professor McKenna's conclusion [redacted] "depends on contested legal premises" (*id.*) (which, again, is appropriately the subject of cross-examination and not a basis for exclusion), Professor McKenna opines that, [redacted] (McKenna Report

---

[5] We also note that Ford misstates Professor McKenna's testimony. Professor McKenna's opinion is that there is no [redacted] There is no question that the current system of licensure—including licensure based on historical areas of overlapping usage at common law—is a situation that enables overlapping use.

¶¶ 13, 115.) [redacted] (*Id.*) Ford conspicuously ignores these portions of Professor McKenna's analysis.

Finally, Ford suggests that Professor McKenna opined that ESAs are a "necessity." (Pl.'s Mot. at 22.) That is nowhere in his report. Instead, Professor McKenna states that—because of the System's common law origins—"[redacted] (McKenna Report ¶ 114.) From that truism (which Ford does not challenge), Professor McKenna concludes that [redacted][6] (*Id.*) The pre-BlueCard solutions Ford refers to, through which the Blues sought to service accounts with employees in multiple

[6] Ford argues that this ignores that Defendant Blue Cross Blue Shield Association ("BCBSA")—as current owner of the marks—could "license the marks to more than one Plan in an area." (Pl.'s Mot. at 22.) Yet Ford does not explain why (let alone try to prove) BCBSA would choose to license in a way that would permit unfettered use of the Blue Marks in the same areas, unrelated to the Plans' historical usages. Moreover, how BCBSA chooses to license is not a "third option"; it is consistent with the Plans merging to become a single entity.

geographies, are merely examples of this collaboration between Plans that recognized they could not use the Marks outside their historic areas of use.

## III. Professor McKenna's Opinions Are Not Legal Conclusions.

Ford's final challenge is the claim that "much of McKenna's analysis" should be excluded as impermissible legal conclusions. (Pl.'s Mot. at 24.) Once again, Ford is incorrect.[7]

An expert "'may properly be called upon to aid the jury in understanding facts and evidence, even though reference to facts is couched in legal terms.'" *Magna Elecs.*, 2016 WL 4239181, at *3 (quoting *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988)). Similarly, "in certain contexts, experts must apply factors that courts have laid out in case law." *Id.* at *3 n.1. By contrast, "testimony offering nothing more than a legal conclusion—*i.e.*, testimony that does little more than tell the jury what result to reach—is properly excludable." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). Accordingly, although an expert may "suggest the answer to the ultimate issue," they may not "opine on the ultimate question of

---

[7] If Ford seeks to exclude Professor McKenna's testimony simply because he is an attorney or a professor of law *(see* Pl.'s Mot. at 25 ("Attorneys as expert witnesses present unique challenges") (alteration in original)), its argument fails because "the very fact that an expert happens to be a lawyer is not a reason to prevent that expert from testifying." *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4239181, at *3 (W.D. Mich. Jan. 29, 2016); *see United States v. Coffman*, 574 F. App'x 541, 552 (6th Cir. 2014) (affirming admission of expert testimony from a securities law professor).

liability" and thereby offer a legal conclusion as to that ultimate issue. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). As the *Berry* court explained, this rule is intended to guard against "a whole new category of 'liability experts' whose function would be to tell the jury what result to reach." *Id.* at 1354.

Unlike Ford's expert,[8] Professor McKenna does not opine on the ultimate question of liability—he offers no opinion as to whether any agreement violated (or did not violate) the Sherman Act, or whether Ford suffered antitrust injury. His opinions address historical facts and their significance under then-prevailing trademark standards, [redacted] (McKenna Report ¶ 12(a).)

Stated differently, Professor McKenna's analysis of the [redacted] does not usurp the role of the Court in instructing the jury on the relevant law, nor does it "tell the jury what result to reach" on Ford's antitrust claim; it provides historical context relevant to the purpose behind the

[8] Ford cannot credibly argue that Professor McKenna's opinions are subject to exclusion as legal conclusions when Ford's own expert opines that the challenged conduct [redacted] (Krock Report, ECF No. 87-2 ¶ 11.) It is with regard to precisely that type of expert testimony on the ultimate issue in an antitrust case that courts exclude legal conclusions. *See, e.g.*, *Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*, 925 F. Supp. 1247, 1254 (S.D. Ohio 1996).

conduct at issue, and whether, [redacted] *Berry*, 25 F.3d at 1354; *see Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) (holding that "[w]hile [expert's] testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith," and "relied in part on his understanding of the requirements of state law," "[expert] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (*i.e.*, an ultimate issue of law)."). That Professor McKenna's opinions rely on a legal framework and bear upon the ultimate issue the jury must decide does not make them impermissible legal conclusions. *See id.* (expert testimony "did not improperly usurp the court's role by instructing the jury as to the applicable law" because the expert's reliance on "California statutory provisions—none of which were directly at issue in the case—were ancillary to the ultimate issue of bad faith"); *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781, 791 (N.D. Cal. 2021) ("[Expert's] testimony that convenience fees would violate agency guidelines might support a finding that the defendants violated the law, but she never testified that they in fact did so.").

None of Ford's case citations is to the contrary. In *Torres v. County of Oakland*, the court found testimony responding to a "question [that] tracks almost verbatim the language of" Title VII in a Title VII employment discrimination case

was impermissible, but recognized that "a more carefully phrased question could have elicited similar information" without raising the same concern. 758 F.2d 147, 151 (6th Cir. 1985). In *Berry*, a civil rights suit, the court found that an expert could testify that "the discipline in the Detroit Police Department was lax," and "could testify regarding what he believed to be the consequences of lax discipline"; he could not, however, testify that such lax discipline policies "indicated that the City was *deliberately indifferent* to the welfare of its citizens"—because whether the City was "deliberately indifferent" was the ultimate issue of liability. 25 F.3d at 1353. Likewise, in *Woods*, another civil rights suit, the court merely found that an expert could not opine on the ultimate question of liability by telling the jury that the defendant was "deliberately indifferent to what was felt to be a known risk of harm." 110 F.3d at 1220.

Unlike the experts in *Torres*, *Berry*, and *Woods*, Professor McKenna's report does not attempt to instruct the jury on the issue of antitrust liability; he offers facts and context [redacted], all of which will aid the jury in deciding for itself whether the challenged conduct is anticompetitive and whether it has harmed Ford. Professor McKenna's testimony is ancillary to the

ultimate issue of antitrust liability, assists the trier of fact in properly analyzing these critical questions, and should not be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff Ford Motor Company's Motion in Limine to Exclude the Opinions and Testimony of Professor Mark McKenna.

Dated: November 20, 2026

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP
By: /s/ *Karin A. DeMasi*
Karin A. DeMasi (*Adm. in E.D. MI.*, NY Bar 2831303)
Lauren R. Kennedy (*Adm. in E.D. MI.*, NY Bar 4932851)
Hannah L. Dwyer (*Adm. in E.D. MI.*, NY Bar 5711841)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
kdemasi@cravath.com
lkennedy@cravath.com
hdwyer@cravath.com

SCHENK & BRUETSCH PLC
Brian C. Summerfield (P57514)
211 West Fort Street
Suite 1410
Detroit, MI 48226
(313) 774-1000
brian.summerfield@sbdetroit.com

*Attorneys for Defendant Blue Cross*

ALLEN OVERY SHEARMAN STERLING US LLP
By: /s/ *Todd M. Stenerson*
Todd M. Stenerson (P51953)
Brian C. Hauser (*Adm. in E.D. MI*, D.C. Bar 1024406)
1101 New York Avenue, NW
Washington, D.C. 20005
(202) 508-8000
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski (*Adm. in E.D. MI*, TX Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777
rachel.zieminski@aoshearman.com

Susan Loeb (*Adm. in E.D. MI*, NY Bar 5570940)
Sophie Copenhaver (*Adm. in E.D. MI*, NY Bar 6004766)
599 Lexington Avenue
New York, NY 10022-6069

*Blue Shield Association*

(212) 848-4000
susan.loeb@aoshearman.com
sophie.copenhaver@aoshearman.com

BODMAN PLC
Sarah L. Cylkowski (P75952)
Alexandra C. Markel (P81705)
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
(313) 392-1088
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ Karin A. DeMasi*
Karin A. DeMasi (*Adm. in E.D. MI.*, NY Bar 2831303)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
kdemasi@cravath.com

*Attorney for Defendant Blue Cross Blue Shield Association*