**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| FORD MOTOR COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY<br><br>and<br><br>THE BLUE CROSS BLUE SHIELD ASSOCIATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:23-cv-11286-LVP-EAS<br><br>Judge: Hon. Linda V. Parker<br><br>Magistrate Judge: Hon. Elizabeth A. Stafford |

**DEFENDANTS' RESPONSE TO PLAINTIFF FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF DEFENDANTS' EXPERT KEVIN LANE KELLER, PH.D.**

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ................................................................ **ii**

**STATEMENT OF ISSUES PRESENTED** .............................................. **iv**

**CONTROLLING OR MOST RELEVANT AUTHORITIES** ....................... **vi**

**INTRODUCTION** .................................................................................. **1**

**BACKGROUND** .................................................................................... **2**

**LEGAL STANDARD** ............................................................................. **3**

**ARGUMENT** ......................................................................................... **5**

**I. PROFESSOR KELLER'S TESTIMONY MEETS THE REQUIREMENTS OF RULE 702** ............................................................. **5**

**II. PROFESSOR KELLER'S TESTIMONY IS RELEVANT** ........... **11**

A. Under Any Standard of Review, Professor Keller's Testimony is Relevant to Rebut Elements Ford Must Prove. ........................................ 11

1. Professor Keller Explains How the Blue Rules Support the Blues Acting as One in Managing a Shared Brand. ........................................ 12

2. Professor Keller Shows That Ford Would Be Worse Off in Its Own But-For World. ........................................................................... 14

B. Professor Keller's Testimony Makes It More Probable That the Challenged Conduct Results in Procompetitive Benefits. .......................... 16

1. The Challenged Conduct Supports a Nationwide Blue Product That No Single Plan Could Offer. .............................................................. 17

2. The Challenged Conduct Aligns Each Plan's Incentives to Invest. .. 19

3. The Challenged Conduct Promotes Consistent Quality. ................... 20

4. The Challenged Conduct Strengthens Interbrand Competition. ....... 22

**III. THERE IS NO BASIS FOR EXCLUSION UNDER RULE 403** ... **23**

**CONCLUSION** ..................................................................................... **25**

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795 (6th Cir. 2025) ....................14

*Agrigenetics, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 2010 WL 4683936 (S.D. Ind. Nov. 10, 2010)....................24

*Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010)....................9, 12, 13

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ....................14

*Auto Indus. Supplier ESOP v. SNAPP Sys., Inc.*, 2008 WL 5383372 (E.D. Mich. Dec. 23, 2008)....................24

*Broad. Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979)....................18

*Brooks v. Caterpillar Glob. Mining Am., LLC*, 2016 WL 276126 (W.D. Ky. Jan. 21, 2016) ....................24

*Cawley v. Eastman Outdoors, Inc.*, 2015 WL 4256117 (N.D. Ohio Jan. 25, 2015) ....................24

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) ....................21

*Copperweld Corp. v. Indep. Tube Corp.* 467 U.S. 752 (1984)....................12, 13

*Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547 (E.D. Mich. 2022)....................11

*Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993) ....................passim

*First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001).....7, 8, 10

*Gaines v. FCA US LLC*, 522 F. Supp. 3d 295 (E.D. Mich. 2021)...........5, 23, 25

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ....................8

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)....................10

*In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241 (N.D. Ala. 2018)....................16

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ............4, 10, 25

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)....................7, 9, 10

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ....................19

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934 (6th Cir. 2016)....................12

*NCAA v. Alston*, 594 U.S. 69 (2021) ....................16

*NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85 (1984) ............17, 21, 22

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007).....................................14

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986) ..........................................................................................17, 19

*Smith v. Mich. Dep't of Corr.*, 2023 WL 1778260 (E.D. Mich. Feb. 6, 2023)...........................................................................................................4

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) .........................................................22

*U.S. v. Am. Express Co*, 2014 WL 2879811 (E.D.N.Y. June 24, 2014)............24

*U.S. v. Gissantaner*, 990 F.3d 457 (6th Cir. 2021) ............................................25

*United States v. Graham*, 2025 WL 1739798 (E.D. Mich. June 23, 2025) ..........................................................................................................4

*United States v. Sealy, Inc.*, 388 U.S. 350 (1967)..............................................16

*United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972) ................................16

*Won v. Gen. Motors, LLC*, 2022 WL 3010886 (E.D. Mich. July 28, 2022)...........................................................................................................8

*YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 429208 (W.D. Tex. Jan. 28, 2017) ..........................................................................................11

**Statutes**

15 U.S.C. § 1 ......................................................................................................12

**Rules**

Fed. R. Evid. 401 ......................................................................................4, 14, 16

Fed. R. Evid. 402 ................................................................................................4

Fed. R. Evid. 403 ............................................................................................5, 23

Fed. R. Evid. 702 ............................................................................................4, 11

Fed. R. Evid. 703 ..............................................................................................24

# STATEMENT OF ISSUES PRESENTED

1. Should the Court deny Ford's motion to exclude Professor Keller's testimony under Rule 702 where Ford does not dispute his expertise, he applied the accepted principles of brand management to an extensive record that includes national rivals and comparable organizations, and Ford's remaining disagreements go to weight and belong in cross-examination?

   **Defendants' Answer: Yes.**
   **Plaintiff's Answer: No.**

2. Should the Court deny Ford's motion to exclude Professor Keller's testimony as irrelevant where Ford must prove concerted action under either the Rule of Reason or per se standards, and his testimony on brand spillover and BCBSA's governance makes it more probable that, in governing the shared Blue Brand, BCBSA and the Plans function as a single actor pursuing the common interest of the whole?

   **Defendants' Answer: Yes.**
   **Plaintiff's Answer: No.**

3. Should the Court deny Ford's motion to exclude Professor Keller's testimony as irrelevant where Ford must prove antitrust injury under either the Rule of Reason or per se standards, and his testimony makes it more probable that Ford would be worse off in its own but-for world?

   **Defendants' Answer: Yes.**
   **Plaintiff's Answer: No.**

4. Should the Court deny Ford's motion to exclude Professor Keller's testimony as irrelevant where, under the rule of reason, his testimony makes it more probable that the challenged conduct has procompetitive benefits?

   **Defendants' Answer: Yes.**
   **Plaintiff's Answer: No.**

5. Should the Court deny Ford's motion to exclude Professor Keller's testimony under Rule 403 where his expert branding perspective is not cumulative of the fact evidence, he is not a conduit for BCBSA documents because he performed his own analysis, and the possibility that evidence may persuade the jury is not unfair prejudice?

**Defendants' Answer: Yes.**
**Plaintiff's Answer: No.**

# CONTROLLING OR MOST RELEVANT AUTHORITIES

## Cases

*Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001)

*Gaines v. FCA US LLC*, 522 F. Supp. 3d 295 (E.D. Mich. 2021)

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)

*NCAA v. Alston*, 594 U.S. 69 (2021)

*U.S. v. Gissantaner*, 990 F.3d 457 (6th Cir. 2021)

## Rules

Fed R. Evid. 401

Fed. R. Evid. 403

Fed. R. Evid. 702

# INTRODUCTION

A brand is an intangible asset—though it cannot be touched, tasted, or felt, it is tremendously valuable not just for the company who owns and cultivates it, but for consumers who can, in an instant, understand what a company offers and whether it is a quality product. Through careful cultivation, a brand begins as a word or symbol that may have no meaning at all, and in time, becomes synonymous with a product. The process through which a company takes such a symbol (e.g., a wild horse) and turns it into a coveted, classic sports car (e.g., a Mustang) is what Professor Kevin Lane Keller has studied for decades.

Ford asks this Court to decide, right now, that Professor Keller's testimony does not meet Rule 702's standard for expert testimony, is irrelevant, and should be excluded under Rule 403. The Court should deny Ford's motion. Ford challenges rules that the Blues enacted to promote, protect, and strengthen *their brand*. That brand—the blue cross and blue shield names and symbols—has come to mean a national health insurance product with the broadest network and the best value through decades of careful cultivation, collaboration, and protection of the Blue Brand, including because of the very rules Ford challenges.

To a lay person on the jury, who does not have the benefit of Professor Keller's forty-plus years of experience in this field, it may not be obvious how the conditions Ford challenges—the National Best Efforts Rule ("NBE"), the Local Best Efforts Rule ("LBE"), and Exclusive Service Areas ("ESAs") (the "challenged conduct")—support and promote the Blue Brand, enhance insurance

competition, and reduce friction for companies who purchase Blue products. Professor Keller will help contextualize these aspects of the Blue System as common brand protection mechanisms used not only by the Blues but by other companies across various industries. There is no basis for the Court, particularly at this stage, to exclude Professor Keller's testimony as Ford demands.

## **BACKGROUND**

Professor Keller is the E.B. Osborn Professor of Marketing at Dartmouth's Tuck School of Business, where he has taught since 1998. ECF 85-1, Ford's Motion in Limine to Exclude the Testimony and Opinions of Defendants' Expert Kevin Lane Keller, Ph.D., Exh. A, ("Keller Report") ¶¶ 1–2. He has published more than 140 research papers on marketing and branding, and his work has been cited more than 340,000 times. *Id.* ¶¶ 4–5. He co-authors *Strategic Brand Management* and *Marketing Management*, the world's best-selling M.B.A. textbooks in branding and marketing. *Id.* ¶ 9. He also served as one of two outside advisors on Ford's Marketing Competency Board. *Id.* ¶ 7. Ford does not dispute his expertise in branding. ECF 85, Ford's Motion in Limine to Exclude the Testimony and Opinions of Defendants' Expert Kevin Lane Keller ("Ford's Keller MIL"), at 1.

BCBSA retained Professor Keller to explain the role of branding in the commercial health benefits market, to analyze the Blue Brand strategies in that market, and to assess whether and how ESAs, LBE, NBE, and BlueCard support the Blue Brand. ECF 85-1, Keller Report ¶ 15. He applied established principles

of brand management to the documents and deposition testimony in this case. *Id.* ¶¶ 17, 45–77 & App. C.

Professor Keller's report discloses four principal opinions:

[redacted] *Id.* ¶ 19.

[redacted] *Id.* ¶¶ 20–21. [redacted] *Id.* ¶ 22.

[redacted] *Id.* ¶¶ 23–24.

[redacted] *Id.* ¶ 25.

Ford did not seek to depose Professor Keller to question him about any of his opinions. Nor did its expert respond to any of Professor Keller's opinions.

**LEGAL STANDARD**

Motions in limine to exclude evidence face a "high standard." *United*

*States v. Graham*, 2025 WL 1739798, at *2 (E.D. Mich. June 23, 2025). Courts grant them "only when [the] evidence is clearly inadmissible on all potential grounds." *Id.* Otherwise, courts should defer rulings until trial to assess foundation, relevance, and prejudice in context. *Id.* Courts rarely exclude broad categories of evidence, preferring to address admissibility as issues arise. *Smith v. Mich. Dep't of Corr.*, 2023 WL 1778260, at *1 (E.D. Mich. Feb. 6, 2023) (Parker, J.) (internal citation omitted).

Under Rule 702, the proponent must show by a preponderance of the evidence that expert testimony (i) will help the trier of fact to understand the evidence or to determine a fact in issue, (ii) is based on sufficient facts or data, (iii) is the product of reliable principles and methods, and (iv) reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702(a)–(d); *see Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 587 (1993). Fed. R. Evid. 702 advisory committee's note to 2023 amendment. In this Circuit, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). The question is whether the opinion is reliably grounded, not whether it is correct. *Id.* at 529–30.

Evidence is relevant if "it has any tendency" to make a fact "of consequence" more or less probable and is admissible unless another rule provides otherwise. Fed. R. Evid. 401, 402. This standard is "a liberal one." *Daubert*, 509 U.S. at 587.

Rule 403 permits exclusion only if a specified danger—such as confusing

the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence—substantially outweighs the evidence's probative value. Fed. R. Evid. 403; *Gaines v. FCA US LLC*, 522 F. Supp. 3d 295, 300 (E.D. Mich. 2021).

## ARGUMENT

### I. PROFESSOR KELLER'S TESTIMONY MEETS THE REQUIREMENTS OF RULE 702

Ford argues that Defendants cannot show that Professor Keller's testimony "would be based on reliable principles and methods reliably applied" as required by Rule 702. ECF 85, Ford's Keller MIL, at 17. That is incorrect.

**Rule 702(a)** requires that Professor Keller have "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Ford does not question his expertise, which includes service as an expert witness in numerous cases involving marketing and branding issues. ECF 85, Ford's Keller MIL, at 1; ECF 85-1, Keller Report ¶ 10 & App. B. As explained in detail in Section II below, his expertise will help the jury understand how the challenged conduct supports the Blue Brand, enhances competition, and benefits the purchasers of Blue products.

**Rule 702(b)** requires that Professor Keller's testimony be based on sufficient facts or data. It is. To carry out the assignment described above, Professor Keller:

(1) [redacted]

[redacted] ECF 85-1, Keller Report ¶¶ 26–44.

(2) [redacted] *Id.* ¶¶ 114, 116, 201.

(3) [redacted] *Id.* ¶¶ 157, 165–67.

(4) [redacted] *Id.* ¶¶ 158–59, 177–178, 187–189.

Upon this fulsome record, Professor Keller applied his methodology. Far from cherry-picking, as Ford alleges, he grounds his comparisons in this full record. *See* ECF 85, Ford's Keller MIL, at 20–21.

**Rule 702(c) and (d)** require that his testimony be the "product of reliable principles and methods" and that "the expert's opinion reflects a reliable

application of the principles and methods to the facts of the case." Professor Keller's methodology is reliable because it applies the accepted principles of his field to an extensive record.

[redacted] ECF 85-1, Keller Report ¶¶ 45–77. [redacted] *Id.* ¶¶ 97–103. [redacted] *Id.* ¶¶ 108–135. [redacted]

An expert's testimony is reliable if he explains how his expertise leads to his conclusions and applies it to the facts with the intellectual rigor of his field. Fed. R. Evid. 702 advisory committee's note to the 2000 amendment; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Sixth Circuit applied this standard in *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001). There, a banker who had spent decades supervising letter-of-credit departments testified about what a prudent lender should have done when a

foreign bank dishonored a letter of credit. 268 F.3d at 325, 332–33. The lender attacked his opinions as untested, unreviewed, and unconfirmed by empirical analysis. *Id.* at 334. The court rejected that attack, finding that opinions drawn from an expert's "practical experiences" in a field "do not easily lend themselves to scholarly review or to traditional scientific evaluation," and gaps in his familiarity went to weight, not admissibility. *Id.* at 333–35.

Applying *First Tennessee* here, Professor Keller's opinions, grounded in his practical experience advising companies on brand management and his many years of academic research, and applying decades of peer-reviewed research and the field's leading texts, easily satisfy Rule 702. [redacted] ECF 85-1, Keller Report ¶¶ 45–77. [redacted] *Id.* ¶¶ 130–34, 153, 184. [redacted] *Id.* ¶¶ 150–97. Because each step names the principle, the evidence, and the inference, there is no "analytical gap." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). That is what Rule 702 requires of an expert, and it is the kind of general-principles testimony the Rule permits. *Won v. Gen. Motors, LLC*, 2022 WL 3010886, at *3–4 (E.D. Mich. July 28, 2022) (explaining that when expert testimony focuses on educating the factfinder on general principles, "application of the foundational elements in Rule

702 takes on a different cast”).

Reasoning by analogy from well-understood systems is a recognized method in Professor Keller’s field. *See Kumho Tire*, 526 U.S. at 150–52. The NFL comparison is especially apt. Like the Blue Plans, NFL teams are independently owned, and they cooperate to protect a shared league brand—cooperation the Supreme Court called “perfectly sensible.” *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 202 (2010).[1] Because Professor Keller applies the accepted principles of his field to the facts of this case with the same rigor he brings to his scholarship, his testimony is reliable under Rule 702’s preponderance standard, and Ford’s remaining disagreements with it go to weight and belong in cross-examination, not a motion in limine.

Ford nonetheless argues that Professor Keller’s “best practices” are unreliable because they come largely from his own textbooks and because his analysis lacks an “error rate.” ECF 85, Ford’s Keller MIL, at 18–19. Both points misunderstand Rule 702. An error rate measures how often a scientific test or technique produces an incorrect result. *See Daubert*, 509 U.S. at 594. Qualitative brand analysis produces no such test result, so there is no rate of error to

---

[1] Ford’s objection to Professor Keller’s organizational comparators misses the point. Ford argues that franchise rules are “vertical” and that *American Needle* treated NFL teams as separate economic actors. ECF 85, Ford’s Keller MIL, at 18. But Professor Keller does not use the comparators to classify the challenged conduct under antitrust law. [redacted] Whether a restraint is vertical or horizontal is a legal question for the Court, and whether a comparison persuades is a question for the jury.

compute.[2] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see also Kumho Tire*, 526 U.S. at 150–51; *First Tenn.*, 268 F.3d at 335; *Kumho Tire* shows where the line between reliable and unreliable expert testimony falls. There, the tire expert's method was rejected because no other expert, and no published work, validated it. 526 U.S. at 157. Professor Keller's method is the opposite.

That Professor Keller wrote the field's leading texts leans heavily in favor of admitting his testimony, not excluding it. His frameworks are the published, widely used standards of his field, and he does not rely on them in isolation—he applies them alongside peer-reviewed work from other scholars and independent sources such as Interbrand, McKinsey, EBRI, KFF, and Mercer. ECF 85-1, Keller Report nn.136–37, 141, 146, 186, 201–02. Peer review and publication are quintessential hallmarks of reliability. *Daubert*, 509 U.S. at 593–94. And courts regularly admit marketing experts who rely on marketing literature. *See, e.g.*, *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 429208, at *2 (W.D.

[2] Ford also unconvincingly alleges that Professor Keller infers causation from sequence alone. ECF 85, Ford's Keller MIL, at 19–20. Not so. [redacted] and because his methodology satisfies Rule 702 by a preponderance, any remaining quarrel with the alternatives he considered goes to weight. Keller Report ¶¶130–34, 190–97; *Scrap Metal*, 527 F.3d at 530 (affirming admission of expert testimony over objections to its factual basis, because "rejection of expert testimony is the exception, rather than the rule"). [redacted] ECF 85-1, Keller Report ¶ 43 n.71.

Tex. Jan. 28, 2017); *Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 570–72 (E.D. Mich. 2022) (admitting marketing expert's qualitative analysis of company documents, explaining that an "expert may rely on qualitative methods used for social sciences" and that Rule 702 "does not limit the subject matter of expert testimony to scientific or technical evidence").

## II. PROFESSOR KELLER'S TESTIMONY IS RELEVANT

Ford argues that Professor Keller's testimony is not relevant under either standard of review and because his opinions "measure brand awareness, trust, and affection" rather than competition, and "nothing in his report connects the health of a brand to competition." ECF 85, Ford's Keller MIL, at 1, 7–8, 12–14. In essence, Ford objects because he is not an economist measuring the precise economic impact of the challenged conduct. Indeed, Professor Keller is not an economist. Nevertheless, Professor Keller's testimony bears on multiple facts of consequence in this action and will assist the jury in understanding and evaluating what those facts mean. *See* Fed. R. Evid. 702(a).

### A. Under Any Standard of Review, Professor Keller's Testimony is Relevant to Rebut Elements Ford Must Prove.

The *per se* rule does not excuse proof of concerted action or antitrust injury, both of which Ford must prove under either standard. Defendants maintain that both elements fail as a matter of law and have moved for summary judgment on each. ECF 86, Defs.' Mot, at 12–18, 21–25. Should either issue reach the jury, Professor Keller's testimony will help the jury resolve it.

### 1. *Professor Keller Explains How the Blue Rules Support the Blues Acting as One in Managing a Shared Brand.*

If the Court does not resolve whether the Blue Plans are a single entity for purposes of governing and administering the Blue Marks as a matter of law, Professor Keller's testimony is directly relevant to that question and will aid the jury in answering it.

Section 1 of the Sherman Act reaches only concerted action among separate economic actors pursuing separate economic interests. 15 U.S.C. § 1; *Copperweld Corp. v. Indep. Tube Corp.* 467 U.S. 752, 769 (1984). The test is functional: it asks whether the challenged conduct "deprives the marketplace of independent centers of decisionmaking." *Am. Needle*, 560 U.S. at 195; *see Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 817 F.3d 934, 937 (6th Cir. 2016). Entities that pursue "the common interests of the whole rather than interests separate from those of the [group] itself" do not conspire. *Copperweld*, 467 U.S. at 770. That inquiry looks past corporate form to how the parties actually operate. *Am. Needle*, 560 U.S. at 191, 196. As the Supreme Court put it, "[r]ealities must dominate the judgment." *Copperweld*, 467 U.S. at 774. Documents and fact witnesses will show how BCBSA and the Plans govern, manage, and invest in the shared Blue Brand. [redacted]

A juror can see that thirty-one Plans use the same names and symbols.

What is less apparent is why that branding ties each Plan's fortunes to every other Plan's fortunes. Professor Keller explains that link. [redacted] ECF 85-1, Keller Report ¶¶ 72–76, 130–33. [redacted] *Id.* ¶¶ 128, 131. That makes it more probable that the Blues pursue common interests in managing the brand.

[redacted] *Id.* ¶¶ 110, 142–45. [redacted] *Id.* ¶¶ 143, 148. That testimony makes it more probable that, in governing the Blue Brand, BCBSA and the Plans function not as independent centers of decisionmaking, but as a single actor pursuing the common interest of the whole. *See Am. Needle*, 560 U.S. at 195; *Copperweld*, 467 U.S. at 770; ECF 86, Defs.' Mot, at 15–16.

Professor Keller neither supplies the underlying facts nor offers a legal conclusion on whether Defendants are a single entity. [redacted] ECF 85-1,

Keller Report ¶¶ 110, 142–45, 150–52. That testimony is probative of whether, in governing the Blue Brand, the Blues act as one, and plainly relevant.

### *2. Professor Keller Shows That Ford Would Be Worse Off in Its Own But-For World.*

Similarly, antitrust injury must be proven regardless of which standard applies; the *per se* rule determines whether a violation occurred, not whether a private plaintiff suffered antitrust injury. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341–42 (1990). The plaintiff's loss must "stem[] from a competition-reducing aspect or effect of the defendant's behavior." *Id.* at 344. The Sixth Circuit requires proof of antitrust injury in every case. *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 806–09 (6th Cir. 2025); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449–50 (6th Cir. 2007) (en banc). Professor Keller's testimony bears on that question because it counters Ford's premise: that removing the challenged conduct would result in additional Blue competitors while leaving Ford's national product intact. *See* Fed. R. Evid. 401.

Ford faults Professor Keller for not comparing the Blue System "with a world in which the rules did not exist." ECF 85, Ford's Keller MIL, at 8. Professor Keller does not construct a counterfactual world because he need not do so; Ford bears the burden of proving injury. [redacted] ECF 85-1, Keller Report ¶ 15. [redacted]

[redacted] ECF 85-1, Keller Report ¶¶ 109, 154–55. [redacted] *Id.* ¶ 155. [redacted] *Id.* [redacted][3] *Id.* ¶¶ 97, 131, 152, 156, 176, 186. His testimony thus makes it more probable that Ford

[3] Ford's reading of Professor Keller's report as conceding a purpose to divide markets misreads it. [redacted] Keller Report ¶¶ 156, 176, 184.

would be worse off, not better off, in Ford's own but-for world.

### B. Professor Keller's Testimony Makes It More Probable That the Challenged Conduct Results in Procompetitive Benefits.

Professor Keller's testimony is also relevant because it explains procompetitive benefits at the heart of Defendants' rule-of-reason defense, which are facts of consequence under Rule 401. Under the rule of reason, the default standard in this Circuit, Ford must define a relevant market and prove anticompetitive effects within it, and Defendants maintain that Ford has done neither. ECF 86, Defs.' Mot, at 18–20.[4] If Ford carries that burden, the inquiry turns to procompetitive benefits. *See NCAA v. Alston*, 594 U.S. 69, 96–97 (2021). Ford itself identifies potential benefits as those that "reduce cost, increase output or improve product quality, service, or innovation." ECF 85, Ford's Keller MIL, at 19. [redacted] Because those benefits are facts relevant to the rule of reason and Professor Keller's testimony makes them more probable, his testimony is admissible. Fed. R. Evid. 401; *see Daubert*, 509 U.S. at 587

[4] Ford contends that the *per se* rule applies and evidence on procompetitive benefits is therefore irrelevant. *See* ECF 85, Ford's Keller MIL, at 14–15 (*citing United States v. Sealy, Inc.*, 388 U.S. 350 (1967); *United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972); *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241 (N.D. Ala. 2018)). Defendants' concurrently filed Response to Plaintiffs' Motion for Summary Judgment addresses why the Rule of Reason, and presentation of evidence on procompetitive benefits, is appropriate here.

(describing Rule 401's "basic standard of relevance" as "a liberal one").

***1. The Challenged Conduct Supports a Nationwide Blue Product That No Single Plan Could Offer.***

[redacted] ECF 85-1, Keller Report ¶¶ 32, 108; ECF 86, Defs.' Mot.at 5, SOF ¶¶ 4, 15. Joint conduct that makes possible a product that might otherwise be unavailable widens consumer choice and is thus procompetitive. *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 101–02 (1984) (recognizing that the NCAA's rules "enable[] a product to be marketed which might otherwise be unavailable," and so "widen consumer choice").[5]

That the Blues sell a national product is evident; how the rules Ford challenges make it possible may not be. [redacted] ECF 85-1, Keller Report ¶¶ 24(a), 150. [redacted]

[5] Professor Keller does not opine that any one rule is indispensable to the national product; whether less restrictive means would suffice is Ford's burden. The rule of reason does not demand that a defendant prove each restraint was strictly necessary. Courts do not "calibrate degrees of reasonable necessity"; once a restraint is shown to serve a legitimate efficiency, its precise scope is a business judgment, not a legal one. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 227, 229 n.11 (D.C. Cir. 1986).

[redacted] *Id.* ¶¶ 128, 181, 197. On their face, ESAs, LBE and NBE may resemble restrictions. Professor Keller's testimony shows how in fact they function (or functioned in the case of NBE) to hold together the national network on which every Plan depends, and so makes it more probable that the challenged conduct supports the national product.

The Supreme Court has recognized this kind of benefit. In *BMI*, composers pooled their copyrights so that ASCAP, a clearinghouse which composers formed to license their works, and BMI, a nonprofit organization formed by broadcasters, could offer broadcasters a blanket license to an entire repertory. *Broad. Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 4–5, 20–21 (1979). The Court held that the blanket license was not *per se* unlawful, recognizing that it was "quite different from anything any individual owner could issue" and was, in effect, a new product. *Id.* at 21–23. The national Blue product is the same kind of product: no single Plan could offer it alone. ECF 85-1, Keller Report ¶ 32. Its existence increases choice in the market, a classic procompetitive benefit. And just as in BMI, where the Court looked past the blanket license's resemblance to price fixing to see the new product it created, Professor Keller's testimony makes it more probable that the jury will understand how rules that may resemble restrictions in fact serve to hold the national Blue product together and ultimately strengthen competition.

### *2. The Challenged Conduct Aligns Each Plan's Incentives to Invest.*

[redacted] Professor Keller explains how restraints that may facially appear to limit competition actually work to prevent free riding, encourage investment, and thus "stimulate interbrand competition." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890–92 (2007).

In *Leegin*, the Supreme Court explained that, without such restraints, discounting retailers could free ride on retailers that invest in services and reputation, and those retailers would then cut back on the investments that help a brand compete against rival brands. *Id.* at 890–91. Similarly, in *Rothery*, local moving companies operated under the Atlas Van Lines name but also hauled for their own accounts using Atlas's reputation, equipment, and services. 792 F.2d at 221. Recognizing that when others benefit from those investments without paying for them, the investing company will spend less, and "in the extreme case, the system as a whole could collapse," the court upheld the restraint as a legitimate way to stop free riding within a shared network. *Id.* at 221, 223, 229.

The Blue System presents these free-riding risks in acute form. [redacted] ECF 85-1, Keller Report ¶¶ 72–75, 130–32. [redacted] *Id.* ¶ 152. [redacted] *Id.* ¶¶ 24(d), 175–76, 183–86. [redacted] *Id.* ¶¶ 185–86. [redacted] *Id.* ¶¶ 194–95. Since free riding in a shared brand is not intuitive to a layperson, Professor Keller's testimony is relevant to help a jury understand how, as in *Leegin* and *Rothery*, conditions that promote investment and discourage free riding produce procompetitive benefits.

***3. The Challenged Conduct Promotes Consistent Quality.***

[redacted] ECF 85-1, Keller Report ¶¶

131, 136–39. Restraints that protect the quality of a branded product can enhance competition, because "[t]he availability and quality of such services affect a manufacturer's goodwill and the competitiveness of his product[.]" *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 55 (1977).

[redacted] ECF 85-1, Keller Report ¶¶ 99, 101. [redacted] *Id.* ¶¶ 87, 100, 103. [redacted] *Id.* ¶¶ 131, 136–39.

Uneven service in one State might look like a local problem. Professor Keller explains why it can have significantly broader impacts. [redacted] *Id.* ¶¶ 57–62, 72–77, 130–33, 178.

The Supreme Court has recognized exactly this kind of procompetitive benefit. In *NCAA*, independent schools marketed "a particular brand of football." 468 U.S. at 101–02. The Court explained that common rules were needed "to

preserve the character and quality of the 'product,'" and that "the integrity of the 'product' cannot be preserved except by mutual agreement." *Id.* at 102. Just as no single school could protect the college football brand alone, no single Plan can guarantee that the Blue product means the same thing in Detroit as it does in Denver. The challenged conduct, like the NCAA's eligibility rules, supports a shared brand that delivers consistent quality wherever a member, employer, or provider encounters it. [redacted] ECF 85-1, Keller Report ¶¶ 49, 99-102. [redacted]

***4. The Challenged Conduct Strengthens Interbrand Competition.***

Professor Keller also explains how the investment, consistency and quality described above strengthen the Blues' ability to compete against UnitedHealthcare, Aetna, and Cigna. Antitrust laws are designed primarily to protect this kind of interbrand competition. *State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997). While a juror can see that the Blues compete with United, Aetna, and Cigna, it is less facially apparent how the rules that bind the Plans to one brand turn their local roots into a national competitive advantage. Professor Keller's testimony explains that link, which makes it more probable that the challenged

conduct strengthens interbrand competition.[6]

[redacted] ECF 85-1, Keller Report ¶¶ 114, 116, 118, 140–41. [redacted] *Id.* ¶¶ 160, 172, 201; *see* ECF 86, Defs.' Mot. at 7, SOF ¶ 12. [redacted] ECF 85-1, Keller Report ¶¶ 25, 198.

## III. THERE IS NO BASIS FOR EXCLUSION UNDER RULE 403

Rule 403 offers Ford no better path. *See* ECF 85, Ford's Keller MIL, at 16–17. Exclusion is permitted only where probative value is "substantially outweighed" by a specified danger. Fed. R. Evid. 403; *Gaines*, 522 F. Supp. 3d at 295, 300. Ford raises three objections: that Professor Keller is cumulative of Defendants' documents and fact witnesses, that he is a conduit for BCBSA's figures, and that a jury may "equate the prominence of a brand with the lawfulness of the restraints." ECF 85, Ford's Keller MIL, at 17. None is convincing.

[6] Nor does Professor Keller offer a legal conclusion. He does not opine that the challenged conduct is lawful, reasonable, or ancillary; he explains how it functions to protect the Blue Brand.

Professor Keller's testimony is not cumulative because he brings a unique perspective which the evidence alone does not provide. While Ms. Hedges can say what the Plans did and when, [redacted] ECF 85-1, Keller Report ¶¶ 45–77, 130–34, 150–97. Testimony that reaches the same subject through a different method complements other evidence rather than duplicating it. *Cawley v. Eastman Outdoors, Inc.*, 2015 WL 4256117, at *1 (N.D. Ohio Jan. 25, 2015); *see also Brooks v. Caterpillar Glob. Mining Am., LLC*, 2016 WL 276126, at *5–6 (W.D. Ky. Jan. 21, 2016). Courts admit marketing and branding testimony of exactly this kind, including Professor Keller's own. *See U.S. v. Am. Express Co*, 2014 WL 2879811, at *8–11 (E.D.N.Y. June 24, 2014); *Agrigenetics, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 2010 WL 4683936, at *5–6 (S.D. Ind. Nov. 10, 2010).

Nor is Professor Keller a conduit for BCBSA documents. Rule 703 permits an expert to rely on the kind of business records experts in his field reasonably use. Fed. R. Evid. 703. In *SNAPP*, on which Ford relies, the court struck an expert who reformatted another consultant's figures without performing "any intellectual analysis or review" of them. *Auto Indus. Supplier ESOP v. SNAPP Sys., Inc.*, 2008 WL 5383372, at *3–5 (E.D. Mich. Dec. 23, 2008). Professor Keller did the opposite. [redacted]

[redacted] ECF 85-1, Keller Report ¶¶ 158–59, 165–68, 176–78, 186–89. Whether the underlying figures are accurate is for cross-examination. *Scrap Metal*, 527 F.3d at 529–30.

Finally, Ford's concern about the jury's inferences is no basis for exclusion. That evidence may persuade is not unfair prejudice. *Gaines*, 522 F. Supp. 3d at 300.[7] Each point Ford raises is one it may make to the jury, who will weigh the evidence in reaching its conclusions. That is what "[v]igorous cross-examination" and "presentation of contrary evidence" are for. *Daubert*, 509 U.S. at 596; *see U.S. v. Gissantaner*, 990 F.3d 457, 464 (6th Cir. 2021). Exclusion "is the exception, rather than the rule," *Scrap Metal*, 527 F.3d at 530.

## CONCLUSION

For the foregoing reasons, Ford's Motion in Limine to Exclude the Testimony and Opinions of Kevin Lane Keller, Ph.D., should be denied.

Dated: November 20, 2026 Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | BODMAN PLC |
| By: *<u>/s/ Karin A. DeMasi</u>* | By: *<u>/s/ Sarah L. Cylkowski</u>*<br>Sarah L. Cylkowski (P75952) |
| Karin A. DeMasi (Adm. in E.D. MI., NY Bar 2831303) | Alexandra C. Markel (P81705)<br>1901 St. Antoine Street |

[7] Nor does Professor Keller offer a legal conclusion. He does not opine that the challenged conduct is lawful, reasonable, or ancillary; he explains how it functions to protect the Blue Brand.

Lauren R. Kennedy (Adm. in E.D. MI., NY Bar 4932851)
Hannah L. Dwyer (Adm. in E.D. MI., NY
Bar 5711841)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000
kdemasi@cravath.com
lkennedy@cravath.com
hdwyer@cravath.com

SCHENK & BRUETSCH PLC

Brian C. Summerfield (P57514)
211 West Fort Street
Suite 1410
Detroit, MI 48226
(313) 774-1000
brian.summerfield@sbdetroit.com

Attorneys for Defendant Blue Cross Blue Shield Association

6th Floor at Ford Field
Detroit, MI 48226
(313) 392-1088
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

ALLEN OVERY SHEARMAN STERLING US LLP
Todd M. Stenerson (P51953)
Brian C. Hauser (Adm. in E.D. MI, D.C. Bar 1024406)
1101 New York Avenue, NW
Washington, D.C. 20005
(202) 508-8000
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski (Adm. in E.D. MI, TX Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777
rachel.zieminski@aoshearman.com

Susan Loeb (Adm. in E.D. MI, NY Bar 5570940)
Sophie Copenhaver (Adm. in E.D. MI, NY Bar 6004766)
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000
susan.loeb@aoshearman.com
sophie.copenhaver@aoshearman.com

Attorneys for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: /s/ *Sarah L. Cylkowski*
Sarah L. Cylkowski (P75952)